MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (SBN 211096)
adskale@mintz.com
Michael T. Renaud (*Pro Hac Vice Forthcoming*)
mtrenaud@mintz.com
Matthew S. Hurley (*Pro Hac Vice Forthcoming*)
mshurley@mintz.com
Michael R. Graif (*Pro Hac Vice Forthcoming*)
Mrgraif@mintz.com
Geoffrey A. Friedman(SBN 302496)
gafriedman@mintz.com
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
(858) 314-1500

Attorneys for Plaintiff S10 Entertainment & Media LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD.; and SAMSUNG ELECTRONICS AMERICA, INC <br> Defendants. | CIVIL CASE NO. 2:21-cv-2443 <br> **COMPLAINT FOR** <br> **(1) TRADEMARK INFRINGEMENT;** <br> **(2) UNFAIR COMPETITION UNDER THE LANHAM ACT;** <br> **(3) CONTRIBUTORY TRADEMARK INFRINGEMENT;** <br> **(4) STATUTORY AND COMMON LAW TRADEMARK INFRINGEMENT; and** <br> **(5) CAL. BUS. & PROF. CODE § 17200 VIOLATIONS** |

1

**COMPLAINT**

Case No. 21-2443

Plaintiff S10 Entertainment & Media LLC ("S10 Entertainment" or "Plaintiff"), by and through its counsel, for its Complaint against defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), alleges as follows:

## INTRODUCTION

1.     This is an action for federal trademark infringement, common law trademark infringement, contributory trademark infringement, unfair competition and violations under Cal. Bus. & Prof. Code § 17200.

2.     S10 Entertainment was founded in 2017 as a full-service talent management company for the purposes of managing, promoting, publishing and producing the music of talented and emerging artists within the music industry.

3.     Its founder and principal chose S10 as its trademark because his birthday is on September 10th.

4.     S10 Entertainment signed its first two artists in 2017, and its reputation in the music industry grew quickly.

5.     In 2018, S10 Entertainment signed two more artists and entered into a joint venture with one of the nation's premiere entertainment companies. Plaintiff, known in the music industry as S10, expanded its offering to include music publishing, promotion and event planning.

6.     That same year, 2018, Plaintiff applied for what became its United States Trademark Registration No. 5,909,315 for the mark S10 ("the S10 mark").

7.     In November 2018, Samsung, through its advertising agency, contacted S10 Entertainment because Samsung was interested in having one of S10 Entertainment's artists endorse a smartphone that Samsung was launching in early 2019.

**COMPLAINT**

8.      While no deal for an S10 Entertainment artist to promote the smartphone was ever reached, despite Samsung's knowledge of Plaintiff's mark, Samsung released its Galaxy S10, S10+, S10e, and S10 5G smartphones in February of 2019 and promoted those phones heavily in the popular music space inhabited by Plaintiff, through musical celebrity promotions, events and festivals.

9.      Samsung also partnered with music service giants like Spotify and YouTube to market its S10 smartphones.

10.     Samsung's release and targeted promotion of its S10 phones in the music space had the almost overnight effect of overwhelming Plaintiff's reputation that it had built in the S10 mark.

11.     Within a short time, record executives, artists and others who knew Plaintiff were confusing S10 Entertainment with Samsung or asking S10 Entertainment about its partnership, sale to, or arrangement with Samsung.

12.     Consumers began tagging Plaintiff's @S10 Instagram account with pictures of the Samsung S10 phones, or posting directly on Plaintiff's Instagram about the S10 phones, further eroding Plaintiff's brand identity.

13.     Plaintiff fielded and continued to field countless queries and comments about its supposed connection to or partnership with Samsung. This confusion as to connection, source and sponsorship has been rampant, and continues to this day, all but erasing the goodwill and reputation that Plaintiff had worked so tirelessly to build in the S10 mark, not to mention halting its continued growth.

14.     Samsung has, on information and belief, to date sold in the United States over 11 million units of the Galaxy S10 smartphone line, representing U.S. sales revenue of over $10 billion, and has spent hundreds of millions of dollars advertising the S10 smartphone, much of it in the music space.

**COMPLAINT**

15.    S10 Entertainment now brings this action to stop Samsung's nationwide infringement of S10 Entertainment's rights, for compensation for the significant damages arising from Samsung's unlawful conduct, and for injunctive relief to prevent Samsung from causing future harm to S10 Entertainment.

## PARTIES

16.    Plaintiff S10 Entertainment & Media LLC is a Delaware corporation with a principal place of business in Los Angeles and offices in New York and London.

17.    Samsung Electronics Co., Ltd. (referred to individually herein as "SEC") is a Korean corporation with its principal offices at 129, Samsung-Ro, Maetan-3dong, Yeongtong-Gu, Suwon-si, Gyeonggi-do, 16677 Rep. of Korea.

18.    On information and belief, SEC is South Korea's largest company and one of Asia's largest electronics companies.

19.    SEC designs, manufactures, and provides to the U.S. and world markets a wide range of products, including consumer electronics, computer components, and myriad mobile and entertainment products.

20.    Samsung Electronics America, Inc. (referred to individually herein as "SEA") is a New York corporation with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

21.    On information and belief, SEA was formed in 1977 as a subsidiary of Samsung Electronics Co., Ltd. and markets, sells, and/or offers for sale a variety of consumer electronics including mobile phones.

## JURISDICTION AND VENUE

22.    This action arises under Federal law, the provisions of the Trademark laws of the United States (the Lanham Act), as amended, 15 U.S.C. §§ 1051 *et seq.* and the common laws of the states of New York, New Jersey, and California. This

**COMPLAINT**

Court has subject matter jurisdiction under 15 U.S.C. §1121 and 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (trademark) because this action arises under the trademark laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1338(b) and 28 U.S.C. § 1367.

23.     This Court has personal jurisdiction over Samsung because Samsung (including each individual named defendant) has extensive minimum contacts with the state of California. On information and belief, Samsung sells products, including phones bearing or under the auspices of the infringing S10 mark (including the Galaxy Note S10, S10e, and S10+) nationwide, including in the state of California.

24.     On information and belief, Samsung has purposefully availed itself of the privileges and laws of California, distributes large amounts of products (including infringing products) to consumers and retailers in this state, and has continuous and systematic contacts with this state, and thus is subject to this Court's personal jurisdiction.

25.     Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district, and Samsung resides in this district by virtue of being subject to personal jurisdiction in this judicial district.

26.     Venue is additionally proper as to Defendant Samsung Electronics Co., Ltd., because SEC is a Korean corporation and, as such, venue lies with respect to SEC in any judicial district under 28 U.S.C. §1391(c)(3).

## **BACKGROUND**

27.     S10 Entertainment was founded in 2017 as a full-service talent management company for the purposes of managing, promoting, publishing and producing the music of talented and emerging artists within the music industry.

**COMPLAINT**

28. In its first year, S10 Entertainment signed two major performing artists, and in its second year, S10 Entertainment entered into a partnership with one of the world's most influential entertainment companies.

29. Prior to Samsung's launch of the Galaxy S10 smartphone, S10 Entertainment had successfully grown its reputation and clientele and now represents several world-renowned artists in the music industry.

30. S10 Entertainment and its S10 mark have become known to the public and the music industry, including through S10 Entertainment's Twitter account (@S10ent), Instagram account, (@S10), and website (S10e.com).

31. Plaintiff additionally transacts its e-mail correspondence from the "S10e.com" domain.

32. S10 Entertainment has continuously and consistently used the S10 mark since starting its use, developing substantial goodwill as the provider of goods and services under this mark across the United States.

33. S10 Entertainment has achieved recognition under its mark and the public has associated S10 with the mark, as evidenced by, for example, S10 Entertainment's tens of thousands of Instagram and Twitter followers.

34. S10 Entertainment has also received recognition for its endeavors in the music industry press, receiving coverage in *Variety and Billboard* magazines:

**COMPLAINT**



Gil Kaufman, *Fifth Harmony's Normani Kordei Signs Solo Management Deal with S10 Entertainment*, Billboard (Oct. 23, 2017), https://www.billboard.com/articles/columns/pop/8007011/fifth-harmony-normani-solo-management-deal-s10.

**COMPLAINT**



Leila Cobo, *Anitta Signs Worldwide Management Deal with Brandon Silverstein's S10 Entertainment*, Billboard (Aug. 1 2019), https://www.billboard.com/articles/business/legal-and-management/8525828/anitta-brandon-silverstein-s10-management-deal;

**COMPLAINT**



Jem Aswad, *Bazzi Signs with S10 Entertainment for Management*, Variety (Nov. 27, 2019), https://variety.com/2019/music/news/bazzi-signs-with-s10-entertainment-management-1203418747/. *See also* Chris Eggertsen, *Bazzi Adds Brandon Silverstein's S10 Entertainment to Management Team*, Billboard (Nov. 27, 2019), https://www.billboard.com/articles/business/legal-and-management/8544924/bazzi-brandon-silverstein-s10-management.

35.     S10 Entertainment likewise has become associated with the "S10" tag on the popular application Instagram within the music industry. The example below is from a music producer wearing S10 Entertainment S10-branded apparel on Nov. 25, 2019.



36.     S10 Entertainment's S10 mark is thus a strong mark.

37.     S10 Entertainment is the senior user of the S10 mark, having used it in interstate commerce since 2017.

38.     S10 Entertainment also is the owner of registered United States Trademark Registration 5,909,315 for the standard character mark "S10," which was registered to Plaintiff on November 12, 2019 for the following classes of goods and services:

- Class 025: Clothing, namely, t-shirts, hooded pullovers and sweatshirts;

- Class 035: Management of performing artists; Artist representation and artist management services, namely, management and administration of contract negotiation, and organization and execution of concert tours and appearances; Business marketing for recording and performing artists;

- Class 041: Entertainment services, namely, recording, production and post-production services in the field of music and music videos; organizing events featuring live musical performances, producing and distributing digital content in the field of music.

39.     A true and correct copy of the registration for U.S. Trademark Registration No. 5,909,315 is attached hereto as Exhibit A.

40.     Despite its success within the music industry, S10 Entertainment does not have the same commercial footprint or household name status as Samsung, a corporate behemoth whose products (and those of affiliates or subsidiaries) are found in homes—and, in the case of smartphones, pockets—across America, and whose several hundred-million-dollar advertisement campaigns are likewise ubiquitous nationwide.

11

**COMPLAINT**

## SAMSUNG USES THE S10 MARK IN ASSOCIATION WITH
## ITS FLAGSHIP SMARTPHONE

41.     In February of 2019, Samsung released its flagship smartphones, the Samsung Galaxy S10, S10e, and S10+ smartphones, despite both the preexistence of Plaintiff's S10 mark and Samsung's knowledge of that mark.

42.     Rather than seeking to minimize consumer confusion or overlap in marketing channels between its mobile phone offerings and Plaintiff's mark, Samsung instead targeted the music industry – the exact space inhabited by Plaintiff -- to promote its new smartphone, including by arranging endorsements and promotional appearances by prominent musicians.

43.     For example, Samsung entered into business partnerships with music streaming service giants, including Spotify and YouTube Premium, to promote the Galaxy                                                                                 S10. (https://web.archive.org/web/20190808205626/www.samsung.com/us/mobile/galaxy/offers/spotify/).

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





13

**COMPLAINT**

44.     Samsung further promoted its S10 smartphone line by hosting promotional tour events at music industry related events, including hosting a "Samsung Experience Tour" promotional event at the popular music and media industry event South by Southwest (SXSW) in March of 2019:



*Samsung Experience Tour*, SXSW Schedule (Mar. 8, 2019), https://schedule.sxsw.com/2019/events/OE39206.

Chloe x Halle, to promote the S10+ at the Samsung Experience Store at a-meet-and-greet on February 20, 2019 in Glendale, California. *See, e.g.*, *Chloe x Halle Host Special Meet-And-Greet For Samsung's '10 Years Of Galaxy' Celebration [Photos]*, Bossip (Feb. 22, 2019), https://bossip.com/1705733/chloe-halle-host-meet-and-greet-samsung-photos/.



*See also Samsung Meet And Greet With Chloe x Halle*, Getty Images (February 20, 2019), https://www.gettyimages.com/detail/news-photo/chloe-x-halle-take-a-selfie-on-the-all-new-galaxy-s10-at-news-photo/1126606989; *CA: Samsung Meet And Greet With Chloe x Halle*, Getty Images (February 20, 2019), https://www.gettyimages.com/search/2/image?events=775301908&autocorrect=none&family=editorial&editorialproducts=all&uiloc=view_all_more_from_this_event_adp.

15

**COMPLAINT**

Case No. 21-2443

46.     In Samsung's advertising for its Galaxy S10, S10e, and S10+ smartphones, the "S10" portion of the branding is the dominant part of the advertising used by Samsung.

47.     The photograph below reflects events and promotions from the Los Angeles area relating to the "Samsung Experience Tour" promotional events:



**COMPLAINT**

17

**COMPLAINT**

48.     Some of Samsung's advertising imitated not only the sans-serif font used by S10 Entertainment, but used a nearly identical yellow-on-black color scheme that characterizes the branding of S10 Entertainment's Twitter and Instagram Accounts and its apparel.

49.     Below is the yellow-on-black S10 mark as displayed on S10 Entertainment's website home page, Twitter and Instagram pages and apparel:



Below is the case of the Samsung Galaxy S10e's "Canary Yellow" model, as shown in XEETECHCARE, *Samsung Galaxy S10E "YELLOW MADNESS" - UNBOXING & FIRST LOOK!*, YouTube (Mar. 9, 2019), https://www.youtube.com/watch?v=DIW9Tt5hpG8:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT**

Case No. 21-2443



50.    S10 Entertainment and companies similar to it are well known to have business affiliations with consumer goods companies. (https://www.vibe.com/2018/05/lvrn-frko-rico-reebok-collaboration-feature)

### SAMSUNG'S KNOWLEDGE OF S10 ENTERTAINMENT'S MARK

51.    Samsung's took these actions despite knowing of Plaintiff's mark.

52.    On or around November 2018, Samsung and its advertising partner PMKBNC reached out to Plaintiff S10 Entertainment to discuss the possibility of one of S10 Entertainment's clients endorsing an early 2019 Samsung product launch. This correspondence included an email exchange copying the corporate email address of an employee in Celebrity and Influencer Partnerships at Defendant Samsung Electronics America, Inc.

**COMPLAINT**

53.     While Samsung and S10 Entertainment never reached a deal following these exchanges, Samsung was aware of Plaintiff's business and its S10 mark prior to the release of Samsung's Galaxy S10 smartphone line.

### SAMSUNG'S CONDUCT GENERATED ACTUAL CONFUSION BETWEEN S10 ENTERTAINMENT AND SAMSUNG

54.     As a result of Samsung's product release and associated multi-million dollar advertising blitz targeting the music industry, "S10" has become prominently associated in the public mind primarily with Samsung, so much so such that consumers confuse Plaintiff's offerings with those of Samsung and/or believe Plaintiff to be affiliated with Samsung.

55.     Plaintiff has, through the reverse confusion generated by Samsung's actions, lost a material amount of its brand identity and the consumer goodwill it had established with its S10 mark.

56.     Following the February 2019 release of the Samsung S10 line of smartphones, S10 Entertainment executives and employees experienced and continue to experience instances of confusion among S10 Entertainment's consumers, because of Samsung's saturation of the music industry to promote the S10 smartphone, confusion is rampant.

57.     For example, in communications with S10 Entertainment executives and employees, music executives have asked S10 Entertainment on numerous occasions about its "partnership" with Samsung. Those same executives and producers are the channel through which S10 Entertainment finds, develops and maintains its clients. In addition, contacts of clients, employees of clients, and others have asked S10 Entertainment whether it has a partnership with Samsung.

58.     Tweets about S10's business likewise show the confusion between S10's business and that of Samsung:





[Translation: "As a result [of the image displayed in the Tweet], the rumor that Brandon Silverstein will be Anitta's new manager is gaining strength and Anitta may soon sign with S10] (July 16, 2019 Tweet from "Acesso Anitta," a Brazilian Twitter fan account describing itself as the "Main source of information about singer Anitta")|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



(July 16, 2019 Tweet responding to the above, translation inline)

20      59.    Further, S10 Entertainment began to receive messages and inquiries on

21  its official Instagram account about Samsung's smartphone products:



22
23
24
25
26
27
28

23
**COMPLAINT**

1
2
3
4
5
6
7
8
9
10



(May 29, 2019 Instagram message to the S10 Entertainment account inquiring whether S10

Entertainment has the S10 phone available).





(Dec. 19, 2019, Instagram message to the S10 Entertainment account stating that the user is

going to "buy a Samsung Galaxy S10e").

60.     Content related to Samsung's S10 phone has been tagged with S10 Entertainment's Instagram account information. For example, the following appears on the list of S10's Instagram "tagged" content (https://www.instagram.com/s10/tagged/), showing various phone-related content intermixed with appropriately-tagged content from the music industry:



(*See, e.g.*, top row, left, second row, left and right, fourth row, right).  The tags viewable on individual photos tagging S10's entertainment account clearly point to conflation of the S10 Entertainment account with Samsung's S10 Phone ("tagging" associates a photograph with an account).  In the example below, the S10 Entertainment account has been "tagged"— that is, associated by the uploading user — with the portion of the photograph containing an S10 Phone.



(top left tagged photo from previous matrix of tagged photos, showing "S10" tagging associated with phone).

61.     As a result of confusion between Samsung's S10 phone line and S10 Entertainment's S10 mark, the value and goodwill of S10 Entertainment's Instagram and social media footprint has been severely diminished, as content relevant to or promoting of S10 Entertainment's business interests is displaced by connections that users make between Samsung's Galaxy S10 phone line and S10 Entertainment's social media accounts.

62.     A further example of such a connection is below.



63.     Additionally, Google search results for "S10"—which at the time of S10 Entertainment's first use of the S10 mark in 2017 directed users to S10 Entertainment—are now uniformly associated with Samsung:



64.     Even Google searches for "S10 Entertainment" or S10 Entertainment's website "S10e.com" have yielded advertisement material and search results associated with Samsung:



65.     In addition to direct-to-consumer sales, Samsung sold and distributed this its infringing S10 phone line to its authorized distributors, resellers, and retailers ("Prohibited Intermediaries") and monitored promotional advertising with respect to its improper use of S10.

66.     Samsung at no time directed its Prohibited Intermediaries to cease use of the S10 mark in its products.

67.     Samsung knew that the failure to do so, after telling their Prohibited Intermediaries that the trademark for their products was "S10," would result in the infringing products continuing to be offered for sale and sold under the infringing "S10" mark.

68.     Accordingly, the Prohibited Intermediaries continued to sell the infringing products under the S10 trademark.

69.     In taking the actions alleged herein and/or ratifying the actions alleged herein, Samsung acted within the scope of this authority for its own financial and individual advantage.

70.     Samsung's Prohibited Intermediaries include, but are not limited to, the following:  Verizon, AT&T, Sprint, T-Mobile, US Cellular, Best Buy, Target, Walmart, Amazon, and others.

71.     Further, Samsung instructed and controlled its brand through Prohibited Intermediaries who used the S10 mark in connection with the sale of its infringing S10 products regarding the marketing parameters of the product line, and monitored these Prohibited Intermediaries' compliance with Samsung's instructions and directions.

72.     As a result of the infringing use of the S10 mark, Samsung has made significant profits on its infringing S10 products, and its Prohibited Intermediaries have made additional profits on the products.

73.     Further as a result of Samsung's use of the product name "S10" and confusingly similar variants thereof and intentional targeting of the music industry that Plaintiff inhabited as the senior user, Samsung, as the proverbial 800-pound gorilla and a household name to consumers nationwide, has overwhelmed the value, goodwill, and recognizability of S10 Entertainment and its S10 mark, and unless enjoined, will continue to do so.

## COUNT ONE
### (Trademark Infringement under the Lanham Act in violation of 15 U.S.C. § 1114)

74.     S10 Entertainment repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

75.     S10 Entertainment is the owner of the S10 mark, which is a federally registered, valid, strong, inherently distinctive, and a protectable trademark.

76.     S10 Entertainment has priority of use of the distinctive S10 mark as to Samsung.

77.     Samsung has used, authorized and/or directed the use of the S10 mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods and/or services. The marks are identical or confusingly similar, used in the sale and advertisement through similar marketing channels, and sold and advertised to similar audiences. Samsung's adoption of "S10"

31
**COMPLAINT**

for its line of smartphone products was willful and done with reckless disregard as to the significant actual confusion and loss of brand identity that would and did occur to harm S10 Entertainment.

78.   Samsung directed the use of the S10 mark or a confusingly similar variation of the mark (such as "S10e" or "S10+") despite knowing that S10 Entertainment owns the rights to the S10 mark.

79.   Samsung's use of the S10 mark has caused actual confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive consumers or result in the belief that S10 is legitimately connected with, sponsored by, affiliated with, or licensed or approved by, Samsung, or vice versa. The marks used by Samsung are identical or substantially similar in sound, appearance and meaning to S10 Entertainment's mark. Further, the marks are promoted to overlapping distribution channels and consumers.

80.   Such use by Samsung was done willfully and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience. Samsung intentionally used S10 Entertainment's S10 trademark and promoted it heavily in the popular music space despite its knowledge of S10 Entertainment's mark and business.

81.   As a direct and proximate result of Samsung's trademark infringement, S10 Entertainment has been damaged within the meaning of 15 U.S.C. § 1114 *et seq*. Specifically, S10 Entertainment has been damaged by both forward and reverse confusion.

82.   S10 Entertainment has suffered damages in an amount to be established after proof at trial or in the statutory amount.

83.   S10 Entertainment is further entitled to disgorge Samsung's profits for its willful sales and unjust enrichment.

**COMPLAINT**

84.   This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Samsung's acts were done with knowledge that the mark was a counterfeit within the meaning of 1117(a) willful and/or reckless, entitling S10 Entertainment to its attorney's fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits.

85.   S10 Entertainment is entitled to trebled damages and attorneys' fees under 15 U.S.C. §1117(b) for such infringement as occurred after the registration of the mark because Samsung intentionally adopted and used the infringing mark despite knowing S10 Entertainment was the senior user of the mark with respect to the same services and associated promotional channels used by Samsung. Samsung was aware of S10 Entertainment's mark, and the marks are substantially indistinguishable.

86.   As a direct result of Samsung's unlawful actions, S10 Entertainment has suffered and continues to suffer irreparable harm and damages, including damage to and diminution in value of the S10 mark, necessary corrective advertising, and loss of brand control. S10 Entertainment's remedy at law is not adequate to compensate for injuries inflicted by Samsung. Thus, S10 Entertainment is also entitled to injunctive relief.

## SECOND COUNT
### (Trademark Infringement under the Lanham Act in violation of 15 U.S.C. § 1125(a))

87.   S10 Entertainment repeats and re-alleges all preceding allegations in this Complaint as if fully set forth herein.

88.   S10 Entertainment is the owner and senior user of the S10 mark.

89.   Samsung's use of the S10 mark has caused confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive

consumers or result in the belief that S10 is connected with or otherwise operates under the auspices of Samsung.

90.     The marks used by Samsung are identical or substantially similar in appearance to S10 Entertainment's trademark and promoted to overlapping consumers.

91.     Such use by Samsung was done willfully or recklessly and with knowledge that such use would and was likely to cause confusion and deceive the relevant audience.

92.     As a direct and proximate result of Samsung's trademark infringement, S10 Entertainment has been damaged within the meaning of 15 U.S.C. § 1125(a).

93.     S10 Entertainment has suffered damages in an amount to be established after proof at trial.

94.     S10 Entertainment is further entitled to disgorgement Samsung's profits for Samsung's unjust enrichment.

95.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Samsung's acts were willful and/or reckless, entitling S10 Entertainment to its attorney's fees and an enhancement of damages, including a trebling of its damages and/or disgorged profits.

96.     As a direct result of Samsung's willful and unlawful actions, S10 Entertainment has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the S10 mark, necessary corrective advertising, and loss of brand control. S10 Entertainment's remedy at law is not adequate to compensate for injuries inflicted by Samsung. Thus, S10 Entertainment is entitled to injunctive relief.

## THIRD COUNT
**(Contributory Trademark Infringement Under 15 U.S.C. §§ 1114, 1125(a))**

**COMPLAINT**

97.     S10 Entertainment repeats and re-alleges all preceding allegations in this Complaint as if fully set forth herein.

98.     S10 Entertainment is the owner of the S10 mark, which is a federally registered, valid, inherently distinctive, and a protectable trademark.

99.     S10 Entertainment has priority of use of the distinctive S10 mark as to Samsung.

100.    Samsung had knowledge of its Prohibited Intermediaries' Lanham Act violations, including trademark infringement, false designation of origin, unfair competition, and counterfeiting.

101.    Samsung intentionally induced others, including its Prohibited Intermediaries, to infringe and use the S10 mark.

102.    Samsung is able to exercise direct control and practical control over its Prohibited Intermediaries' Lanham Act violations above.

103.    Samsung monitors its Prohibited Intermediaries' actions that lead to sales of Samsung's products, including the Prohibited Intermediaries' Lanham Act violations alleged above.

104.    Samsung could take measures to prevent their Prohibited Intermediaries' Lanham Act violations alleged above, but chose not to do so.

105.    Samsung did not prevent their Prohibited Intermediaries' Lanham Act violations, but instead encouraged those actions by refusing to take take-down and recall measures to prevent the trademark infringement, false designation of origin, unfair competition, and counterfeiting actions with respect to the S10 mark.

106.    Samsung's conduct has damaged and continues to damage S10 Entertainment's business, reputation, and goodwill.

107. Samsung's conduct has been willful and intentional, and Samsung engaged in the actions alleged herein with the purpose of confusing consumers and trading on the goodwill associated with the S10 mark.

108. As a direct and proximate result of Samsung and its Affiliates' trademark infringement, false designation of origin, and unfair competition S10 Entertainment has been damaged within the meaning of 15 U.S.C. §§ 1114 and 1125(a).

109. S10 Entertainment has suffered damages in an amount to be established after proof at trial or in the statutory amount.

110. S10 Entertainment is further entitled to disgorge Samsung's profits for its willful sales and unjust enrichment, and also disgorge from Samsung the profits of its Prohibited Intermediaries.

111. This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Samsung's acts were malicious, fraudulent, deliberate and willful, and taken in bad faith, entitling S10 Entertainment to its attorney's fees and enhanced damages, including a trebling of its damages and/or disgorged profits.

112. As a direct result of Samsung's willful and unlawful actions, S10 Entertainment has suffered and continues to suffer irreparable harm, including damage to and diminution in value of the S10 mark. S10 Entertainment's remedy at law is not adequate to compensate for injuries inflicted by Samsung. Thus, S10 Entertainment is entitled to injunctive relief.

## FOURTH COUNT
### (Statutory and Common Law Trademark Infringement)

113. S10 Entertainment repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

**COMPLAINT**

114.   S10 Entertainment has federal and common law trademark rights based on its extensive use throughout the United States of the S10 mark, including but not limited to under the statutes and common laws, inter alia, of the States of California, New Jersey, and New York.

115.   Samsung has committed acts of unfair competition, including trademark infringement and related misconduct referred to in this Complaint.

116.   The infringing marks and associated promotional channels have been used in each of these states and is likely to cause confusion for the consumers in each of these states as to the source, sponsorship, and approval as to the infringing products and/or services, as further alleged above. These actions constitute unlawful or unfair business acts or practices and/or unfair, deceptive, untrue or misleading business practices. The actions cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services and were done in connection with sales or advertising. These actions were intentional, knowing and/or reckless acts of infringement through use of the S10 mark.

117.   As a direct and proximate result of Samsung's wrongful acts, S10 Entertainment has suffered and continues to suffer irreparable injury to its business reputation and goodwill. As such, S10 Entertainment's remedy at law is not adequate to compensate for injuries inflicted by Samsung. Accordingly, S10 Entertainment is entitled to and permanent injunctive relief.

118.   By reason of such wrongful acts, S10 Entertainment is, was, and will be in the future, deprived of, among other damages, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationships. Defendant's profits are awardable, at least under the common laws of the States of California and New York. Samsung has wrongfully obtained profit and benefits instead of S10 Entertainment. S10 Entertainment is

entitled to compensatory damages and past and prospective corrective advertising damages, in an amount to be proven at trial.

119.   Samsung acted with knowledge of S10's mark.

120.   S10 Entertainment is entitled to its reasonable attorneys' fees and costs of suit under the state laws of New York and New Jersey.

121.   S10 Entertainment is informed and believe, and on that basis alleges that Samsung's actions were adoptively willful, willfully blind, intentional, malicious, deliberate and in bad faith, such that punitive damages are justified and reasonable, at an amount to be proved at trial.

## FIFTH COUNT
### (Cal. Bus. & Prof. Code § 17200 et seq. Violations)

122.   S10 Entertainment repeats and re-alleges all allegations in this Complaint as if fully set forth herein.

123.   In advertising its services, Samsung further misrepresented the character of its business by suggesting a connection with S10 Entertainment.

124.   Samsung's acts and omissions alleged herein, including trademark infringement and unfair competition, harms S10 Entertainment and constitutes unlawful, unfair, or fraudulent business acts or practices, unfair, deceptive, untrue, or misleading advertising, and/or false advertising within the meaning of Section 17200 et seq. of the California Business and Professions Code and under the common law.

125.   Samsung has engaged in unfair competition by the acts alleged herein.

126.   Samsung's acts and omissions alleged herein constitute unfair business practices because the harm of these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers.

**COMPLAINT**

127.   Samsung's acts and omissions alleged herein constitute unlawful business practices because Samsung's conduct is forbidden by multiple laws, including but not limited to 15 U.S.C. § 1125(a), the common laws, the laws of the State of California, and the laws of the United States.

128.   Samsung's acts and omissions alleged herein constitute fraudulent business practices because consumers are likely to be deceived.

129.   Samsung has engaged in these activities willfully and consciously.

130.   Samsung's activities have caused and will continue to cause damage to S10 Entertainment, in an amount to be determined at trial.

131.   As a direct and proximate consequence of the infringement complained of herein, S10 Entertainment has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Samsung from committing further acts of infringement.

## PRAYER FOR RELIEF

WHEREFORE, S10 Entertainment demands the following relief for each cause of action unless otherwise noted:

1.   A judgment in favor of S10 Entertainment and against Samsung on all counts;

2.   A permanent injunction from trademark infringement and unfair business practices by Samsung;

3.   Damages in an amount to be determined at trial;

4.   Unjust enrichment and/or disgorgement of Samsung's profits, and the unjust enrichment and/or profits of Samsung's Prohibited Intermediaries, all enhanced including trebling;

5.   A reasonable royalty on Samsung's infringing sales, enhanced including trebling;

6.      Damages for corrective advertising;

7.      Trebling of damages for willful infringement;

8.      Pre-judgment interest at the legally allowable rate on all amounts owed;

9.      Costs and expenses;

10.     Attorney's fees and other fees under, among others, 15 U.S.C. § 1117(a) and (b) *et seq*. as an exceptional case, and use of a willful counterfeit Mark;

11.     Punitive damages;

12.     Restitution; and

13.     Such other and further relief as this Court may deem just and proper.

DATED: March 19, 2021                 Respectfully submitted,

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**

By:/s/ Andrew D. Skale
    Andrew D. Skale (211096)
    Michael T. Renaud (*Pro Hac Vice Forthcoming*)
    Matthew S. Hurley (*Pro Hac Vice Forthcoming*)
    Michael R. Graif (*Pro Hac Vice Forthcoming*)
    Geoffrey A. Friedman (SBN302496)

**Attorneys for Plaintiff S10 Entertainment**

**COMPLAINT**

Case No. 21-2443

## **DEMAND FOR JURY TRIAL**

S10 Entertainment hereby demands a trial by jury on all issues triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.


DATED: March 19, 2021                    Respectfully submitted,

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**

By: _/s/ Andrew D. Skale_
    Andrew D. Skale (211096)
    Michael T. Renaud (*Pro Hac Vice Forthcoming*)
    Matthew S. Hurley (*Pro Hac Vice Forthcoming*)
    Michael R. Graif (*Pro Hac Vice Forthcoming*)
    Geoffrey A. Friedman(SBN 302496*)*

**Attorneys for Plaintiff S10 Entertainment**

**COMPLAINT**

109811339v.1