1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FAEGRE DRINKER BIDDLE & REATH LLP**
David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
1950 University Avenue, Suite 450
East Palo Alto, California 94303
Telephone:  +1 650 324 6700
Facsimile:   +1 310 229 1285

**MOORE RUDDELL LLP**
Howard D. Ruddell (SBN 281510)
hruddell@mooreruddell.com
21250 Hawthorne Blvd., Suite 500
Torrance, California 90503
Telephone: +1 310 792 7010
Facsimile:  +1 323 530 1113

[*additional counsel listed on signature page*]

Attorneys for Defendants
Samsung Electronics Co., Ltd., and Samsung
Electronics America, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Case No. 2:21-cv-02443-CAS-JPRx <br><br> District Judge: Hon. Christina A. Snyder <br><br> **DEFENDANTS' CORRECTED NOTICE OF MOTION AND MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM CASSIE PETREY; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br> Date:       January 23, 2023 <br> Time:       10:00 a.m. <br> Ctrm:       8D <br><br> Counterclaim Filed: August 3, 2021 <br> FAC Filed:        July 20, 2021 <br> Complaint Filed:   March 19, 2021 |

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

CASE NO. 2:21-CV-02443-CAS-JPRX

1  TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on Monday, January 23, 2023, at 10:00 a.m., in

3  the courtroom of the Honorable Christina A. Snyder of the United States District

4  Court for the Central District of California, First Street Courthouse, Courtroom 8D,

5  350 W. First Street, 8th Floor, Los Angeles, CA 90012, or as soon thereafter as the

6  matter may be heard, Defendants Samsung Electronics Co., Ltd., and Samsung

7  Electronics America, Inc., pursuant to Federal Rule of Evidence 403 and 702, will

8  and hereby do move this Court for an order precluding Plaintiff's expert witness Ms.

9  Cassie Petrey from testifying at trial or presenting evidence on the issues of harm or

10  likelihood of confusion, as her report and the intended testimony do not meet with

11  threshold requirements under *Daubert* and Federal Rules of Evidence 403 and 702.

12        This Motion is based on this Notice of Motion and Motion, the Memorandum

13  of Points and Authorities, the Declaration of Katlyn M. Moseley ("Moseley Decl.")

14  and the Exhibit thereto, and such other written or oral argument that may be presented

15  at or before the time this motion is deemed submitted by the Court. This motion is

16  made following a conference of counsel required by Local Rule 7-3, which took place

17  on December 15, 2022. During this conference, counsel for S10 Entertainment

18  informed counsel for Samsung that S10 Entertainment opposes this motion.

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO EXCLUDE EVIDENCE AND TESTIMONY FROM CASSIE PETREY;                - 1 -                CASE NO. 2:21-CV-02443-CAS-JPRx

| | |
|---|---|
| 1 | Dated: December 23, 2022 |

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: ___/s/ Christopher J. Burrell_____

David J.F. Gross

James R. Steffen (*pro hac vice*)
james.steffen@faegredrinker.com
Lauren W. Linderman (SBN 280809)
lauren.linderman@faegredrinker.com
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402
Telephone:  +1 612 766 7000
Facsimile:  +1 612 766 1600

Christopher J. Burrell (*pro hac vice*)
christopher.burrell@faegredrinker.com
Katlyn M. Moseley (*pro hac vice*)
katlyn.moseley@faegredrinker.com
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone:    +1 202 842 8800
Facsimile:    +1 202 842 8465

Louis T. Perry (*pro hac vice*)
louis.perry@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:    +1 317 237 0300
Facsimile:    +1 317 237 1000

Attorneys for Defendants
Samsung Electronics Co., Ltd., and Samsung
Electronics America, Inc.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 2 -

CASE NO. 2:21-CV-02443-CAS-JPRx

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 2

     A.   Petrey's Qualifications and Assignment ............................................. 2

     B.   Petrey's Inadequate Investigation ...................................................... 2

III. LEGAL STANDARD .......................................................................... 5

IV.  ARGUMENT ...................................................................................... 5

     A.   Petrey's Methodology is Subjective, Unreliable and Does Not
          Address the Questions on Which She Opines ..................................... 5

     B.   The Opinions Expressed in Ms. Petrey's Report Are Unreliable,
          Conclusory, Speculative, and Unhelpful to the Trier of Fact .............. 9

          1.   *Petrey's Summary of Opinions (Paragraphs 32-35)* ............... 10

          2.   *Petrey's Opinions Regarding* Sleekcraft *Factors
               (Paragraphs 46-91)* .......................................................... 14

          3.   *Petrey's Opinions of Harm (Paragraphs 92-96)* ................... 18

     C.   Petrey's Rebuttal Report is a Cherry-Picked Factual Narrative
          Devoid of Expert Opinion ............................................................. 18

          1.   *Opinion 1: Level of Sophistication of Relevant
               Purchasing Consumers* (Paragraphs 20-33) .......................... 19

          2.   *Opinion 2: Non-Consumers* (Paragraphs 34-47) ................... 20

          3.   *Opinion 3: S10 Entertainment's Advertising and
               Marketing* (Paragraphs 48-63) ........................................... 21

          4.   *Opinion 4: Nature of S10 Entertainment's Business*
               (Paragraphs 64-74) ........................................................... 22

     D.   Petrey's Conclusions on "Confusion" and "False Associations"
          Should Be Excluded ..................................................................... 23

V.   CONCLUSION ................................................................................. 24

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM      - i -      CASE NO. 2:21-cv-02443-CAS-JPRx
CASSIE PETREY;

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*AirWair Int'l Ltd. v. Pull & Bear Espana SA*,
   2021 WL 2914082 (N.D. Cal. 2021) .................................................................. 14

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979.) ....................................................................... 15

*Beyond Blond Prods., LLC v. Heldman*,
   No. 20-5581, 2021 WL 4860376 (C.D. Cal. Aug. 13, 2021) ........................... 23

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
   666 F.2d 393 (9th Cir. 1982) ........................................................................ 15

*Claar v. Burlington Northern R Co.*,
   29 F.3d 499 (9th Cir. 1994) ........................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ...................................................................................... 5

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .............................................................................. 9, 10,12

*In Re Incretin-Based Therapies Prods. Liab. Litig.*,
   524 F. Supp. 3d 1007 (S.D. Cal. 2021) ..................................................... 10, 22

*Jinro Am. Inc. v. Secure Invs., Inc.*,
   266 F.3d 993 (9th Cir. 2001) .......................................................................... 9

*JIPC Mgmt, Inc. v. Incredible Pizza Co., Inc.*,
   No. CV 08-04310, 2009 WL 8591607 (C.D. Cal. July 14, 2009) ............. *passim*

*In re Katz Interactive Call Processing Patent Litig.*,
   No. 07-ML-01816, 2009 WL 3698470 (C.D. Cal. Mar. 11, 2009) ..................... 7

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................... 5, 6

*Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ........................................................................... 5

*Matrix Motor Co. v. Toyota*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003.) ........................................................ 14

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- ii -

CASE NO. 2:21-cv-02443-CAS-JPRx

*Oculu, LLC v. Oculus VR, Inc.*,
   2015 WL 3619204 (C.D. Cal. June 8, 2015)...................................................... 16

*Orgain, Inc. v. N. Innovations Holding Corp.*,
   No. 8:18-cv-01253, 2022 WL 2189648 (C.D. Cal. Jan. 28, 2022) ............... 9, 21

*Playboy Enters., Inc. v. Terri Welles, Inc.*,
   78 F.Supp.2d 1066 (S.D.Cal.1999), *rev'd in part on other grounds*,
   279 F.3d 796 (9th Cir.2002) ............................................................ 13, 14, 21, 23

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ................................................................................ 5

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
   Nos. CV 06-3459 ABC (PLAx), CV 07-0571 ABC (PLAx), 2012
   WL 8134012 (C.D. Cal. Apr. 27, 2012) .............................................................. 10

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   987 F. Supp. 2d 1023 (C.D. Cal. 2013.) ............................................................. 16

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) .............................................................................. 17

*Tietsworth v. Sears, Roebuck and Co.*,
   2012 WL 1595112 (N.D. Cal. May 4, 2012) ....................................................... 12

*Tortilla Factory, LLC v. GT's Living Foods, Inc.*,
   No. 17-7539, 2022 WL 3134458 (C.D. Cal. June 9, 2022) ................................. 7

*Trouble v. Wet Seal, Inc.*,
   179 F. Supp. 2d 291 (S.D.N.Y. 2001) ................................................................. 17

*United States v. Williams*,
   No. 3:13-cr-00764, 2017 WL 3498694 (N.D. Cal. Aug. 8, 2017) ....................... 9

*Walter v. Mattel, Inc.*,
   210 F.3d 1108 (9th Cir. 2000) ............................................................................ 17

**Statutes, Rules & Regulations**

Fed. R. Evid. 403 ..................................................................................................... 5

Fed. R. Evid. 702 ............................................................................................*passim*

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- iii -

CASE NO. 2:21-cv-02443-CAS-JPRx

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") respectfully submit this Memorandum of Law in Support of their Motion to Exclude Evidence and Testimony from Cassie Petrey.

## I.    INTRODUCTION

This a trademark case, and S10 Entertainment & Media LLC ("S10 Entertainment") puts forward Cassie Petrey ("Petrey") to provide opinions relating to issues of likelihood of confusion and harm. Contrary to the requirements of Federal Rule of Evidence 702, Petrey conducted no meaningful investigation or reliable analysis of the facts and data relevant to the issues on which she opines. In fact, she admitted that she spent a *total* of 15 to 20 hours investigating and preparing *both* of her reports. She did not interview or survey any of S10 Entertainment's actual or prospective clients or partners, and she did not consider core evidence of record that direct address the issues on which she opines: deposition transcripts of S10 Entertainment's witnesses, S10 Entertainment emails, S10 Entertainment's financials, Samsung marketing materials about events on which she opines, and ███████████████████████████████████████████████████████ ██████████████████████████████████—Galaxy S10 smartphones.

Compounding the unreliability of her opinions, the internet search methodology Petrey used to support her opinions is not published and does not address issues of trademark harm or confusion. It is simply what Petrey uses in her private work to determine if a company is one she or her clients want to work with. It is not a methodology for assessing brand value or consumer behavior, and Petrey admitted that it is "subjective." Petrey's reports are also replete with improper legal conclusions that either assert or assume a likelihood of confusion and a false association between S10 Entertainment and Samsung. And her rebuttal report is additionally flawed because it seeks to introduce unsubstantiated "facts," not of record, based ███████████████████████████████████████████

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;                              - 1 -                              CASE NO. 2:21-cv-02443-CAS-JPRx

█████████ Petrey relied on ███████████ despite not reviewing Silverstein's deposition transcript or the actual financials produced in this case.

Respectfully, Petrey's opinions and testimony should be excluded in their entirety.

## II.    BACKGROUND

### A.    Petrey's Qualifications and Assignment

Petrey is the co-founder and co-Chief Executive Officer of Crowd Surf, a Los Angeles-based marketing and music management firm specializing in social media campaigns for entertainers and brands. Moseley Decl. Ex. A ¶ 1. Petrey's work at Crowd Surf generally involves "strategic marketing, for musicians and brands, as well as social media monitoring and enforcement on behalf of [her] clients." *Id*. ¶ 12. Petrey has been involved in the music and social media industries since 2004, beginning her career at Warner Music Group where she oversaw social media marketing campaigns for various artists. *Id*. ¶ 4. Additionally, Petrey provides talent management services to certain influencers or artists. *Id*. ¶ 7.

In this case, Petrey offers opinions related "to the issues of confusion and harm to S10 Entertainment." *Id*. ¶ 16. Specifically, Petrey offers opinions regarding five *Sleekcraft* factors (similarity of the marks, proximity of the goods and services, strength of S10 Entertainment's trademark, the parties' marketing channels, and actual confusion) and "the impact of Samsung's unauthorized use of the S10 mark on S10 Entertainment's brand and business." *Id*. ¶¶ 16, 46-91. Petrey was also asked to evaluate the expert opinion of Samsung's music industry expert George Howard and issue a rebuttal opinion. Moseley Decl. Ex. C.

### B.    Petrey's Inadequate Investigation

In rendering her opinions, Petrey did not use published methodologies relating to brand value, consumer behavior, or any other published or generally accepted methodology. *See* Moseley Decl. Ex. B at 23:15-18, 25:25-26:7, 26:11-15; 34:3-13; 38:2-12, 52:20-53:6; 72:23-74:6 (discussing why her searching and analysis was

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM          - 2 -          CASE NO. 2:21-CV-02443-CAS-JPRx
CASSIE PETREY;

1    ███████████████████). Rather, she performed internet searching that she uses

2    to evaluate companies to determine whether she or her clients might want to work

3    with them. Moseley Decl. Ex. A ¶¶ 21, 23. Her search strategy consists of the

4    following steps:

5        1. A Google search for the company name and a review of results on the "all"

6           and "news" tabs.

7        2. If no information is found on the company, assume the company is not a

8           legitimate entity and stop research OR search the company name with the

9           additional terms "music" or "entertainment."

10       3. Search Instagram for the company name and, if no information is found,

11          search company name with additional terms "music" or "entertainment."

12          Review company's official Instagram account if found.

13       4. Search Twitter for the company name and, if no is information found,

14          search company name with additional terms "music" or "entertainment."

15          Review company's official Twitter account if found.

16       5. Potentially search other social media platforms, including Facebook,

17          YouTube, TikTok, and Reddit.

18    *Id.* ¶¶ 24-31. In this case, Petrey indicates she searched for "S10" in Google in

19    October 2022 and reviewed the results of the "all" and "news" tabs from those search

20    results. *Id.* ¶¶ 63-64. She also searched for "S10" on YouTube, "S10 Music" on

21    Instagram, and both "S10" and "S10 Music" on Twitter and Reddit. *Id.* ¶¶ 65, 85,

22    87-90. But contrary to her own stated internet search strategy, which requires

23    searching for the "company name," she did not search for "S10 Entertainment" or

24    "S10 Entertainment & Media LLC"—the actual name of the plaintiff that she uses

25    throughout her report. *E.g.*, *id.* ¶¶ 14, 16, 21, 32-35.

26        Petrey also did not conduct anything approaching an adequate investigation to

27    provide expert testimony on the questions of trademark harm and confusion on which

28    she was asked to opine. Petrey spent a combined total of 15 to 20 hours conducting

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM          - 3 -          CASE NO. 2:21-cv-02443-CAS-JPRx
CASSIE PETREY;

her investigation and preparing both reports. *Id.*, Ex. B at 10:16-20. With such a restricted investigation, it is unsurprising that Petrey did not consider substantial volumes of critical evidence addressing these questions.

Specifically, Petrey did not review the deposition transcripts of S10 Entertainment's witnesses. *See* Moseley Decl. Ex. A at Ex. B (List of Materials Considered) (not identifying these transcripts or exhibits amongst her materials reviewed); *id.*, Ex. B at 62:19-64:5 (admitting she did not review the transcript of Nicole Karpas and expressing inability to remember whether she reviewed transcripts of Brandon Silverstein and Jay Cao). Petrey also did not review a single internal email produced in this litigation by S10 Entertainment, nor did she review S10 Entertainment's interrogatory responses or financial data. *See id.*, Ex. A at Ex. B.

Petrey did not review the ███████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████ *Id.*, Ex. B at 76:20-23, 81:23-82:18, 107:11-108:21. Confronted with this evidence at her deposition, Petrey admitted, for example, that ████████████████████████████████ ██████████████████████████████████████ ██████" *Id.*, Ex. B at 106:26-107:3; *see also id.* at 110:16-20; 132:3-7. Such actual associations of course directly undermine and contradict her stated opinions in her reports of false associations and confusion.

Moreover, despite making much in her opening report over the supposed harm from mistags on S10 Entertainment's Instagram account (*Id.*, Ex. A. ¶¶ 83-84, 86), Petrey did not consider that mistags can readily and easily be removed from the "tagged" post feed and that S10 Entertainment has taken no evident steps to remove mistags since they started appearing on its account going back to 2018 in connection with Chevy S-10 pick-ups. Moseley Decl. Ex. B at 39:11-23; 54:14-55:13; Moseley

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM     - 4 -     CASE NO. 2:21-cv-02443-CAS-JPRx
CASSIE PETREY;

Decl. Ex. C ¶¶ 27-29. Nor did she consider Samsung marketing materials and discovery responses directly applicable to topics on which she opines. *Id*., Ex. A at Ex. B; *Id*., Ex. B at 76:20-23, 62:14-64:5, 138:11-13, 142:16-144:2.

## III.  <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), provide the framework governing the admissibility of expert testimony. The court has broad discretion to exclude expert testimony where the proposed expert is unqualified, the expert's conclusions or methods are unreliable, or the expert's testimony would be unhelpful to the trier of fact. *See Daubert*, 509 U.S. at 589-95; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149-52 (1999). The court must also assure "that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (internal quotation marks and citations omitted). S10 Entertainment bears the burden of demonstrating, by a preponderance of the evidence, that Petrey's testimony satisfies the requirements of Rule 702. *Lust ex rel. Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996).

Even if Rule 702 are satisfied, an expert's testimony still should be excluded if the probative value of that testimony is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

## IV.  <u>ARGUMENT</u>

### A.    Petrey's Methodology is Subjective, Unreliable and Does Not Address the Questions on Which She Opines

Petrey's opinions and testimony should be excluded because they are not based

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;                    - 5 -                    CASE NO. 2:21-cv-02443-CAS-JPRx

on reliable principles or methods and do not involve any reliable analysis of the facts, rendering her opinions improper under Rules 702(c) & (d). *See Daubert*, 509 U.S. at 592–94 (where scientific in nature, courts should consider (1) whether the expert's technique or theory can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether there is a high error rate for the expert's technique, and whether there are "standards controlling the technique's operation"; and (4) whether the expert's technique or theory is generally accepted by the relevant scientific community); *Kumho Tire*, 526 U.S. at 150 (for non-scientific testimony the reliability analysis is focused on the expert's "personal knowledge or experience" and, while certain *Daubert* factors may still be relevant, the Court has broad latitude to determine whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the relevant field" )

As discussed above, Petrey sets forth an internet search "methodology" that consists of performing searches for the company name on Google and social media platforms, such as Instagram and Twitter. Moseley Decl. Ex. A ¶¶ 24-31. This internet searching was not designed for assessing questions of harm or likelihood of confusion in the trademark context; rather, Petrey uses this methodology to assess whether she or her clients would be interested in doing business with a particular company. *Id*. ¶ 23. Indeed, Petrey admits that she did not conduct an investigation to determine the value of S10 Entertainment's brand prior to the launch of Samsung's Galaxy S10 smartphones and testified that doing so "wouldn't really fall under my jurisdiction, as far as I'm concerned." *Id*., Ex. B at 70:22-71:3.

Petrey's methodology also has not been published or subject to peer review. *Id*. Ex. B at 74:7-10. Petrey is aware of only one other company in the industry that may use a similar internet search strategy for evaluating companies as potential partners for their business or clients. *Id*. at 22:24-23:8. Worse, Petrey did not use any of the well-established or widely recognized marketing principles available to assess the value of a brand or consumer behavior when offering opinions regarding harm to

S10 Entertainment or consumer perceptions of Samsung. *See id*. at 72:23-74:6. Without assessing brand value or having a reliable measure of consumer behavior, Petrey has no basis from which to assess issues of harm or likelihood of confusion in this case beyond her own speculation.

Petrey's opinions are also unreliable because they are based on an inherently subjective and speculative analysis. *Claar v. Burlington Northern R Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (excluding expert testimony based on nothing "more than subjective belief and unsupported speculation"); *Tortilla Factory, LLC v. GT's Living Foods, Inc.*, No. 17-7539, 2022 WL 3134458, at *6 (C.D. Cal. June 9, 2022) (excluding expert testimony on "indicators of harm" where opinion was based on an opaque evaluation of evidence and methodology did not explain how the expert arrived at conclusions beyond his subjective beliefs); *In re Katz Interactive Call Processing Patent Litig.*, No. 07-ML-01816, 2009 WL 3698470, at *2 (C.D. Cal. Mar. 11, 2009) ("Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." (internal citations omitted)). Petrey acknowledged that there are objective measures available for evaluating a company's social media or online brand presence, such as the number of followers, the number of likes, the types of comments, and the engagement percentage, but she did not apply those objective measures here. *Id*. at 34:17-35:13, 36:1-23. Her analysis is entirely subjective.

Petrey herself acknowledged the subjective nature of the analysis she performed, testifying that:

> I think it depends on the person doing the Google search as to how they feel after they look at the Google search because somebody can look at the same ten listings on Google search and you could show those same ten listings to ten different people and five of them could think those listings feel negative, two could feel indifferent, and three can feel they're positive.

Moseley Decl. Ex. B. at 25:25-26:7. Petrey further agreed that "the determination whether coverage is negative depends on the subjective sense of the person doing the review of the Google Search" and that "the determination of whether companies'

efforts are effective" are subjective and dependent on the person doing the evaluation. *Id.* at 26:11-15; 34:3-13; 38:2-12.

Petrey acknowledged that whether she deems a company's social media to be effective or good is her own "subjective judgment." *Id.* at 38:2-12. Elaborating further, Petrey explained: "I think anybody making a decision about how they feel about an entity while they're looking at it on social media is a – there's some things a lot of us have in common when making that decision and process. But, yeah, there's going to be an element of that that's subjective when someone is determining, you know, how something makes them feel and if they want to look at, you know, more information or not." *Id.* at 52:20-53:6.

The subjective nature of Petrey's analysis and opinions is exacerbated by the lack of rigor employed in arriving at her opinions. By way of example, Petrey opined, on the one hand, that Samsung's February 2019 launch of the Samsung Galaxy S10 smartphone harmed S10 Entertainment's brand or business; but, on the other hand, Petry cited exclusively to articles touting S10 Entertainment's successful artist signings and partnerships *post-dating* the launch of Samsung's Galaxy S10 smartphones in support of her opinion that S10 Entertainment's brand is strong. Moseley Decl. Ex. A ¶ 56-57; *id.*, Ex. B at 91:11-94:11; 132:8-136:16. Moreover, Petrey stated that S10 Entertainment's *post-launch* signing of Anitta (a spokesperson for Samsung Brazil who promoted Galaxy S10 smartphones), ███████████ ███████████████████ *Id.*, Ex. B at 74:22-75:4.

Petrey also did not review S10 Entertainment financials, which show that revenues in 2019—the year the Galaxy S10 was released— ███████████ ███████████ *Id.*, Ex. E at 150:8-151:16. Far from a reliable opinion based on an exhaustive, objective investigation, Petrey offers *ipse dixit* that S10 Entertainment was harmed and that consumers were confused without meaningfully contemplating the implications of the robust evidence post-dating the February 2019 Galaxy S10 launch showing that S10 Entertainment's brand and business enjoyed considerable

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 8 -

CASE NO. 2:21-cv-02443-CAS-JPRx

successes *following* the launch of Samsung's Galaxy S10 smartphone.

Further undermining the admissibility of her opinions, Petrey does not actually apply the search strategy she outlined in her report to the facts of this case. Although Petrey's strategy calls for doing a Google search on the "company name," Petrey searched only "S10," not the company name, which she identifies in her report as "S10 Entertainment & Media LLC" or "S10 Entertainment." Moseley Decl. Ex. A ¶¶ 14, 62-65. Petrey's failure to follow her own search strategy further warrants exclusion. *Orgain, Inc. v. N. Innovations Holding Corp.*, No. 8:18-cv-01253, 2022 WL 2189648, at *9 (C.D. Cal. Jan. 28, 2022) (excluding expert testimony where court was skeptical of reliability of methodology and expert failed to follow his own methodology). Thus, because Petrey offers opinions based on her subjective view of limited internet searching and without an adequate investigation of the record, Petrey's analysis does not and cannot provide a tangible or objective basis from which to opine on the existence or quantum of harm attributable to Samsung's Galaxy S10 smartphone or likelihood of confusion. *United States v. Williams*, No. 3:13-cr-00764, 2017 WL 3498694, at *10 (N.D. Cal. Aug. 8, 2017) (excluding expert testimony where expert acknowledged methodology was "very subjective"); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

**B.    The Opinions Expressed in Ms. Petrey's Report Are Unreliable, Conclusory, Speculative, and Unhelpful to the Trier of Fact**

Although an expert's practical expertise or specialized knowledge in a particular field may qualify her to provide testimony, the Court must exclude expert testimony that extends beyond that expertise or specialized knowledge. *See Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001). To be clear, Samsung does not contest that Petrey has certain practical expertise and specialized knowledge relating to aspects of social media and marketing in the music industry. Moseley

Decl. Ex. A ¶¶ 3-13. The problem, however, is that her opinions are directed to issues outside of her knowledge and experience, and her investigation was fundamentally incapable of producing reliable opinions on the topics on which she was asked to opine. *Gen Elec.*, 522 U.S. at 146 ("A Court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *In Re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d 1007, 1039-40 (S.D. Cal. 2021) (excluding expert opinion relying on "cherry-picked selection of favorable data" as "unduly results-driven, not good science, and therefore inadmissible"); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, Nos. CV 06–3459 ABC (PLAx), 2012 WL 8134012, at *22 (C.D. Cal. Apr. 27, 2012) (excluding expert opinion testimony because expert "did not draw on his expertise" in rendering opinions and instead merely relied on internet search and expert's opinion was not based on sufficient facts or data).

### 1. *Petrey's Summary of Opinions (Paragraphs 32-35)*

At the outset of her opening report, Petrey offers four summary opinions. Each opinion is unreliable, conclusory, speculative, unsupported by sufficient facts and data, and otherwise unhelpful to the trier of fact.

***Paragraph 32.*** Petrey opines that "Samsung's use of 'S10' in the same marketing channels that S10 Entertainment employs and in the same industry that S10 Entertainment competes in, has deprived S10 Entertainment of the ability to control its corporate identity, reputation, and goodwill." Moseley Decl. Ex. A ¶ 32. Petrey's opinion is unsupported and unreliable, given that she conducted no meaningful investigation into the companies' respective marketing channels.

For example, when shown former S10 Entertainment employee Ms. Karpas's testimony, Petrey stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Moseley Decl. Ex. B at 140:12-13), and admitted that Ms. Karpas's testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Moseley Decl. Ex. B at 141:6:10).

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 10 -

CASE NO. 2:21-cv-02443-CAS-JPRx

Petrey also did not review deposition transcripts for Samsung's corporate designees, many of Samsung's interrogatory responses, or directly relevant Samsung marketing documents related to the Galaxy S10 smartphone. *Id.*, Ex. A at Ex. B. Rather, in forming her opinion regarding the parties' marketing channels, Petrey cherry-picked a selection of relevant facts while disregarding contrary evidence. For example, despite making much of Samsung's promotion of Galaxy S10 smartphones at SXSW and emphasizing in her report that there were 417,000 visitors to SXSW in 2019, *id.* ¶¶ 70-71, Petrey admits that she did not investigate how many people actually visited Samsung's booth, *id.*, Ex. B at 142:16-20. She also did not review Samsung's recap of that event, which showed there were only about ███ unique visitors to Samsung's booth. *Id.* at 143:12-144:2; *id.* Ex. F, Ex. 236 at SAMSUNG_00096065. Petrey was also unaware that Samsung sold ██ Galaxy S10 smartphones at the event and admitted that she had not attempted to investigate what, if any, sales Samsung made at SXSW in connection with preparing her report. *Id.* at 144:3-146:3.

Petrey's opinion is factually unsupported and is based instead on her personal observations and subjective analysis. She does not offer any specialized knowledge or insight that will assist the trier of fact in evaluating the evidence to be adduced at trial or the *Sleekcraft* factors on which she opines. Such a conclusory opinion is not helpful to the trier of fact and should be excluded. *JIPC Mgmt, Inc. v. Incredible Pizza Co., Inc.*, No. CV 08-04310, 2009 WL 8591607, at *3-7 (C.D. Cal. July 14, 2009) (excluding expert testimony on certain *Sleekcraft* factors, including proximity of the goods and marketing channels, because these issues were well within the providence of the fact finder and did not require the assistance of expert testimony).

**Paragraph 33.** Petrey opines that "[p]eople within the music industry are likely to have abandoned their research process or potential collaboration with S10 Entertainment because Samsung's S10 phone marketing has made it difficult to find information on S10 Entertainment." Moseley Decl. Ex. A. It is not clear from her report how Petrey reached this conclusion, and her investigation was entirely

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 11 -

CASE NO. 2:21-cv-02443-CAS-JPRx

inadequate to support this speculative "opinion."

Specifically, Petrey did not attempt to interview or survey any actual or potential partners or consumers for S10 Entertainment's services to determine if they abandoned a search for S10 Entertainment or were unable to locate information they sought on S10 Entertainment. *Id.*, Ex. B at 154:4-10; 151:4-152:10. Nor did she recall reviewing the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████, or the fact that Anitta herself found and signed with S10 Entertainment *following* Samsung's launch of the Galaxy S10 smartphone. *Id.* at 76:20-23; 91:1-93:5, 107:11-21. ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ Critically, Petrey admitted that in the three-and-a-half years since launch of the Galaxy S10, she is ████████ ████████████████████████████████████████████████████████████ ███████████████████████████ *Id.* at 154:20-24 (emphasis added). There is simply "too great an analytical gap" between the limited evidence Petrey reviewed and the opinion she offers. *Gen Elec.*, 522 U.S. at 146.

Further, Petrey's own report contradicts this opinion. At paragraphs 56 and 57, Petrey touts S10 Entertainment's brand recognition and successes, but *every* source she cites in support of this relates to successes and events that occurred *after* Samsung's launch of the Galaxy S10 smartphone. *Id.* at 91:11-94:11; 132:8-136:16. Simply stated, there is ample evidence of customers and partners finding S10 Entertainment following the launch of the Galaxy S10, but *no evidence* of any businesses or individual "abandon[ing] their research process or potential collaboration with S10 Entertainment" as Petrey speculates and opines. *Tietsworth v. Sears, Roebuck and Co.*, No. 5:09-cv-00288, 2012 WL 1595112, at *7-8 (N.D. Cal. May 4, 2012) (excluding expert testimony as "so fundamentally unsupported that it

can offer no assistance to the jury" where expert conceded he had not done any work to verify whether his opinion was valid).

**Paragraph 34.** Petrey opines that "[i]t is likely that an individual involved in the music industry and/or a general consumer would falsely think that S10 Entertainment is affiliated with Samsung and the Galaxy S10, as electronics companies have engaged in similar campaigns in the past, such as Sony and RCA." Moseley Decl. Ex. A. Petrey's opinion that an individual in the music industry would believe there is an affiliation between Samsung and S10 Entertainment is a legal conclusion and improper on that basis alone. *See Playboy Enterprises, Inc. v. Welles*, 78 F.Supp.2d 1066, 1082 (S.D. Cal. 1999), *rev'd in part on other grounds*, 279 F.3d 796 (9th Cir. 2002). Furthermore, Petrey does not provide any information regarding these "similar campaigns" by other electronics companies in her report. Because this opinion is conclusory *ipse dixit* and is not supported by any facts or data, it is not the proper subject of expert testimony.

**Paragraph 35.** Petrey concludes that "[t]o certain demographics of consumers, including popular musicians, Samsung smartphones are perceived as inferior and less desirable. Therefore, the false association between Samsung and S10 Entertainment could also deter potential customers of S10 Entertainment, in the highly competitive music industry." There are several problems with this opinion that require its exclusion.

First, it is not based on any actual investigation. Her opinion is entirely anecdotal and fails to contextualize this one issue (the so-called "green bubble stigma") within broader consumer perceptions for Samsung's Galaxy S10 smartphones. In rendering her opinion, Petrey did not investigate general sentiments amongst these "certain demographics of consumers" involving the Samsung brand generally or the Galaxy S10 specifically. Moreover, in opining that "popular musicians" (also undefined) perceived Samsung as less desirable, Petrey did not consider that the ███████████████████████████████████████

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;                    - 13 -                    CASE NO. 2:21-cv-02443-CAS-JPRx

1　████████████████████████████████████████████████████

2　████████████████████████ Moseley Decl. Ex. B. at 98:14-101:3, 101:8-102:5

3　106:25-107:4; 110:16-20; 132:3-7. Her opinion is therefore divorced from the

4　evidence in the record regarding musicians' feelings toward Samsung, unsupported

5　by sufficient (or any) facts and data, and entirely speculative.

6　　　　Second, this opinion depends on Petrey's assumption that a "false" association

7　exists between S10 Entertainment and Samsung, which is a legal issue that the finder

8　of fact must decide. *Playboy*, 78 F.Supp.2d at 1082.

9　　　　Third, at her deposition, after reviewing evidence of the ████████████

10　████████████████████████████ that she had not originally

11　considered in rendering her opinions—including evidence showing that ████████

12　████████████████████████████████," Moseley

13　Decl. Ex. B. at 98:14-101:3, 101:8-102:5—Petrey admitted that consumers could

14　understand there to be "actual," not false, associations between S10 Entertainment's

15　artists and Samsung. *Id*. at 106:25-107:4; 110:16-20; 132:3-7. This opinion is

16　therefore contradicted by Petrey herself, and is also conclusory, not supported by

17　sufficient facts and data, based on Petrey's speculation, and should be excluded.

### 2.　*Petrey's Opinions Regarding* Sleekcraft *Factors (Paragraphs 46-91)*

20　　　　Petrey's analysis of the *Sleekcraft* factors also consists "of personal

21　observations and conclusions respecting factual issues within the province of the lay

22　jury." *JIPC* 2009 WL 8591607, at *3-4. These opinions will not assist the trier of

23　fact and, as a matter of law, should be excluded. *Id*. (excluding purported expert

24　testimony on *Sleekcraft* factors on ground that testimony consisted merely of expert's

25　personal opinions and would not be helpful to the trier of fact).

26　　　　***Similarity of the Marks (Paragraphs 46-47).*** In judging similarity, marks are

27　considered in their entirety and as they appear in the marketplace. *Matrix Motor Co.

28　v. Toyota*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003). It is well established that

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 14 -

CASE NO. 2:21-cv-02443-CAS-JPRx

side-by-side comparisons are an improper basis of comparison when the consumers do not encounter the marks side-by-side. *AirWair Int'l Ltd. v. Pull & Bear Espana SA*, 2021 WL 2914082, at *4 (N.D. Cal. 2021) (excluding expert testimony on similarity of trade dress because "a side-by-side comparison is improper because that is not how consumers would encounter the products in the market"). Yet, Petrey opines that Samsung's use of "S10" and S10 Entertainment's S10 Mark "are similar in appearance" based on a side-by-side comparison. Moseley Decl. Ex. A ¶¶ 46-47. As a further basis for exclusion, Petrey's opinion is based on nothing more than her personal observations about the parties' respective marks and is therefore unhelpful to the factfinder. *JIPC*, 2009 WL 8591706, at *5 (excluding expert's subjective testimony regarding similarity of the marks); *see also Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 398 (9th Cir. 1982) ("[T]he similarity or dissimilarity of these two words is a matter easily evaluated by laymen within the realm of their common knowledge and experience. . . .  Certainly, it would be well within the discretion of the trial judge to exclude the expert opinion evidence under [Rule 702.]").

***Proximity of the Goods and Services (Paragraphs 48-53).*** This factor looks at (1) whether the goods and/or services are complementary; (2) whether the goods and/or services are similar in use and or function; and (3) whether the goods and/or services are sold to the same class of purchasers. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir. 1979.) Petrey conducted no meaningful investigation into these required criteria, and instead simply concludes that both S10 Entertainment and Samsung offer music-related services. Petrey's superficial analysis would compel a conclusion that *any* music-playing device is related to S10 Entertainment's fundamentally different services and reflects nothing more than improper, subjective *ipse dixit*, which again is not proper expert testimony. *JIPC*, 2009 WL 8591706, at *6 (excluding testimony like that offered here regarding relatedness of the parties'

services because "[t]he jury can compare the parties' services on its own and determine whether they are similar.").

**Strength of S10 Entertainment's Mark (Paragraphs 54-58).** Again, Petrey's opinion is not supported by an adequate investigation. Petrey did not assess any of the factors relevant to the commercial strength of S10 Entertainment's mark (i.e., advertising expenditures, the length of exclusive use, and public recognition of the mark). *See Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204, at *11 (C.D. Cal. June 8, 2015) (setting forth factors relevant to commercial strength). Rather, she simply asserts that S10 Entertainment "has a strong presence in the music industry and its S10 Mark is well known." But this opinion is not reliable or supported by adequate facts or data without having considered S10 Entertainment's █████████████ ██████████████████████ and the fact that far from having exclusive use of "S10," a number of other companies and individuals have used "S10," e.g., Chevrolet S-10, Dutch artist S10, S10 Fitness, Lenovo S10 Laptop, Canon PowerShot S10, and Nikon Coolpix S10. Moseley Decl. Ex. A ¶¶ 56-57; *id.*, Ex. B at 45:5-46:12, 181:6-25; *id.*, Ex. G (Petrey Depo Ex 242). It is also undermined by her failure to review, for example, S10 Entertainment deposition transcripts, emails, or financials, which would have shed light on these factors. Thus, her opinion is based on insufficient facts and data and is not helpful to the factfinder in evaluating the strength of S10 Entertainment's mark.

**Similarity of the Marketing Channels (Paragraphs 59-80).** This factor considers "how and to whom the respective parties' goods are sold," including the "locations of potential buyers, the price ranges of the goods and services, and the types of advertising used." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1054 (C.D. Cal. 2013.) Petrey concludes that the parties use the same marketing channels based on a conclusory, subjective analysis that does not remotely investigate the parties' full mix of marketing activities or apply any objective or marketing-based framework to guide her analysis. Rather, her analysis is a selective

recitation of facts followed by her personal opinions of what that incomplete recitation of evidence means to her. This is precisely the type of unhelpful testimony that, as a matter of law, is not the proper subject of expert testimony and that a factfinder can evaluate directly. *JIPC*, 2009 WL 8591706, at *7 ("Isaacson opines that the parties use similar marketing channels. A juror can hear evidence regarding the parties' marketing channels and decide if they are similar.").

*Actual Confusion (Paragraphs 81-91).* Petrey's investigation as to "actual confusion" evidence is again inadequate and unreliable. For example, Petrey opines that instances of individuals "tagging S10 Entertainment's Instagram account with pictures of Samsung Smartphones shows clear confusion," and that search results for "S10 Music" on Instagram "implies that users are organically thinking of the word 'music' when it comes to posting about their phone." Moseley Decl. Ex. A ¶ 83, 85. But at her deposition, Petrey testified that she would be "uncomfortable" "speculating on the consumer sentiment" behind social media posts because "it's hard to make too many assumptions off of a short sentence, unless you talk to somebody and really read them and get to the bottom of it." *Id.*, Ex. B at 157:14-19; 158:15-23. Thus, according to her own deposition testimony, Petrey's written opinions regarding actual confusion are speculative and unreliable.

As to her reliance on Josh Klein's and Tim Blacksmith's "actual confusion," *id.*, Ex. A ¶ 81, Petrey did not consider the fact that ██████████████ ███████████████████████████████████████████████ *Id.*, Ex. B at 147:20-148:15, 149:22-150:9; *id.*, Ex. H (Depo Ex. 5); *see also Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000), holding modified by *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) (holding evidence of actual confusion from "acquaintances, friends, and family insufficient"). Moreover, a factfinder can assess the underlying evidence without the assistance this testimony, which Petrey misleading calls "confusion" without actually assessing whether any of the evidence constitutes *trademark* confusion. *See JIPC*, 2009 WL 5891607, at *6 (citing *Trouble*

*v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 303 (S.D.N.Y. 2001)). Thus, Petrey's testimony here is unhelpful to the trier of fact, unreliable, and should be excluded.

### 3.    *Petrey's Opinions of Harm (Paragraphs 92-96)*

Finally, Petrey offers several opinions concerning supposed "harm to S10 Entertainment" caused by the launch of the Galaxy S10 smartphone, including:

- Paragraph 92, opining that evidence of actual confusion she reviewed and the search results she generated deprived S10 Entertainment of its ability to control its identity, reputation, and goodwill;

- Paragraph 93, opining that Samsung flooded S10 Entertainment's marketing channels and usurped the identity of the S10 Mark in the music industry;

- Paragraph 94, opining that S10 Entertainment is now falsely associated with Samsung, which could foreclose opportunities with competitive brands; and

- Paragraphs 95-96, opining that there is a "stigma" associated with Samsung and that "stigma" can now be imputed to S10 Entertainment.

Each of these opinions suffers from the same fatal deficiencies as Petrey's summary and *Sleekcraft* opinions, and are well outside the scope of subject matter on which Petrey is qualified to opine, unsupported by an adequate investigation, and contradicted by the actual evidence of record. *See supra* §§ IV(B)(1), (2).

### C.    **Petrey's Rebuttal Report is a Cherry-Picked Factual Narrative Devoid of Expert Opinion**

The opinions expressed in Petrey's rebuttal to Samsung's expert George Howard's report also will not help the trier of fact and Petrey's rebuttal testimony should be excluded in its entirety.

1.    ***Opinion 1: Level of Sophistication of Relevant Purchasing Consumers*** **(Paragraphs 20-33)**

The relevant inquiry on this issue is the sophistication of S10 Entertainment's actual or likely consumers, and, aside from the actual clients or business partners of record, Petrey admits she has no understanding of who these individuals are. Moseley Decl. Ex. B at 64:6-16. Her opinion here is based on pure speculation and reflects no investigation of the facts of record.

Petrey first opines that some inexperienced artists might be unsophisticated. Moseley Decl. Ex. D. She also opines that artists are likely to rely on social media and search engines as research tools to gather intel and are likely to be confused by supposed false associations between Samsung and S10 Entertainment on social media. Moseley Decl. Ex. D. But Petrey admits that she has ██████████████ ████████████████████████████████████████████████████████████ Moseley Decl. Ex. B at 64:6-16, and that she has no awareness of whether S10 Entertainment works with existing, sophisticated artists (as Howard suggests based on his investigation of the record) or newer, inexperienced artists. *Id*. at 171:9-172:5. Her lack of knowledge on these points is, of course, unsurprising, given the general lack of investigation and given that at his deposition ████████████████ ████████████████████████████████████████████████████████████. Mosley Decl. Ex. I at 396:9-397:24.

Petrey also did not account for the fact that with respect to S10 Entertainment's talent management consumers, the evidence of record is that S10 Entertainment's current and former talent management clients are ████████████████████ ██████ *Id*. Ex. B at 172:6-9)—all artists with a substantial degree of sophistication at the time of signing with S10 Entertainment. Thus, Petrey did not have sufficient facts or data to render her opinion and it should be excluded.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 19 -

CASE NO. 2:21-CV-02443-CAS-JPRx

## 2.    *Opinion 2: Non-Consumers* (Paragraphs 34-47)

Petrey next critiques Howard for not evaluating categories of non-consumers that Petrey asserts are relevant to the likelihood of confusion analysis, including (1) "potential consumers in the form of current artists, who are not represented by S10 Entertainment, and future artists, who are unrepresented and may not have entered the music industry yet"; (2) "non-consumers who may or may not ever purchase the services of S10 Entertainment, but show the confusion taking place on social media"; and (3) "non-consumers, who purchase or consume either the music made by S10 Entertainment's represented artists or writers or music made by potential clients of S10 Entertainment, that influence purchasing consumers' decision to purchase S10 Entertainment's services."  Moseley Decl. Ex. D ¶ 41. But whether these consumers are relevant to the likelihood of confusion inquiry in this case is a legal issue that Petrey may not opine on.

Moreover, as to potential consumers, Petrey's investigation was wholly inadequate. Petrey admitted she is unaware of who S10 Entertainment's potential consumers might be. *Id*., Ex. B at 64:6-16, 171:9-172:5. As to social media posts, Petrey admitted that she has no idea whether any such posts originated from the United States, made no effort to contact posters to determine what they meant by their posts or if they in fact held any relevant confusion, and testified that reliance on unverified social media posts is speculative. *Id*. at 129:1-19; 152:5-10; 158:1-23; *see also id.* at 157:14-19; 158:15-23 (testifying that she would not "feel comfortable" "speculating on the consumer sentiment" behind social media posts because "it's hard to make too many assumptions off of a short sentence, unless you talk to somebody and really read them and get to the bottom of it"). Finally, as to non-consumers influencing consumers for S10 Entertainment's service, Petrey again does not know who any such perspective consumers might be. Thus, Petrey's opinions regarding non-consumers are conclusory, speculative, unsupported by the actual evidence of record, and should be excluded.

### 3. *Opinion 3: S10 Entertainment's Advertising and Marketing (Paragraphs 48-63)*

Petrey next takes issue with what she characterizes as Howard's "opinion" that S10 Entertainment engages in no advertising to promote its services. She then offers a selective, counter-factual narrative setting forth her view of S10 Entertainment's marketing through its website and social media. Moseley Decl. Ex. D. But it is not proper to present expert testimony "solely for the purpose of constructing a factual narrative based on record evidence." *Orgain*, 2022 WL 2189648, at *9. And again, Petrey did not conduct an adequate investigation. ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ Moseley Decl. Ex. B at 140:12-13, 141:6-10. And Howard was not opining on this point at all; he was describing the actual facts that underlay his opinions.

Petrey's opinion that Samsung's alleged unauthorized use of an "S10" designation has deprived S10 Entertainment of its ability to control its image and goodwill, and that it likely will have long-term effects on S10 Entertainment's business, is a legal opinion on the ultimate issue of likelihood of confusion and not appropriate subject of expert testimony. *Playboy*, 78 F.Supp.2d at 1082. It is also unreliable given that Petrey failed to consider obvious tools that S10 Entertainment had available to manage its social media accounts and brand image, including to remove mistagged posts. To this day, S10 Entertainment's Instagram page reflects a number of mistagged posts—in particular relating to Chevy S-10 pick-up trucks, the Dutch musical artist S10, and other random or spam posts:

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 21 -

CASE NO. 2:21-cv-02443-CAS-JPRx



Moseley Decl. Ex. C ¶ 26-27 Thus, again, Petrey's selective and incomplete analysis of the record render her opinions fundamentally unreliable and improper. *See In re Incretin-Based Therapies Prods. Liab. Litig.*, 524 F. Supp. 3d at 1039-40 (excluding expert opinion testimony where analysis consisted "of a cherry-picked selection of favorable data").

### 4.   *Opinion 4: Nature of S10 Entertainment's Business (Paragraphs 64-74)*

In rendering this "opinion," Petrey takes issue with Howard's characterization of S10 Entertainment's business-to-business activities because his opinion purportedly fails to account for ████████████████████ ████████████ Petrey does not offer any rebuttal to Howard's actual opinion, however, and instead sets forth a counter-factual narrative that describes an incomplete view of the evidence, including new, unsubstantiated facts revealed for

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 22 -

CASE NO. 2:21-cv-02443-CAS-JPRx

1 the first time after the close of discovery ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮ Moseley Decl. Ex. B at 190:16-192:13.

3   Petrey herself does not have any particularized knowledge or experience in

4 music publishing or the relevant revenue streams that would be expected if a

5 publishing business were operational and reflected being an actual music publisher.

6 When pressed, Petrey admitted that she had not reviewed S10 Entertainment's

7 financials, had no knowledge of any S10 Entertainment ▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 190:16-192:20. Thus, again, this "opinion" reflects

11 nothing more than a selective counter-factual narrative, devoid of adequate

12 investigation or analysis, and is not the proper subject of expert testimony.

13
14   **D. Petrey's Conclusions on "Confusion" and "False Associations" Should Be Excluded**

15   Finally, Petrey's opening and rebuttal reports offer what are either improper

16 legal conclusions going to the ultimate issue or confusing lay uses of terms like

17 "confusion" and "false association." Petrey is not an attorney and does not have any

18 demonstrable expertise, knowledge, or training in trademark law. Moseley Decl. Ex.

19 A at ¶ 17. Her opinions and testimony involving this terminology require exclusion.

20 If they are meant in the legal sense, they stand for a likelihood of confusion (e.g.,

21 "confusion," "false association," and the like) and are improper legal opinions, but if

22 they are meant in the lay sense, they are confusing and misleading to the factfinder,

23 and, in all events, these opinions and testimony are not helpful to the factfinder.

24 *Beyond Blond Prods., LLC v. Heldman*, No. 20-5581, 2021 WL 4860376, at * 6 (C.D.

25 Cal. Aug. 13, 2021) (An "expert witness may not 'give her opinion on the ultimate

26 issue of trademark infringement and likelihood of confusion"); *Playboy Enters.*, 78

27 F.Supp.2d at 1082 (holding expert testimony consisting of legal conclusions

28 regarding the likelihood of confusion is inadmissible). The entirety of Petrey's

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 23 -

CASE NO. 2:21-cv-02443-CAS-JPRx

opinions and testimony should be excluded for the reasons discussed above, but in

addition, paragraphs 34-35, 73, 77, 83, 86-87, 89, 90, 92, 94, and 96 of Petrey's

opening report, Moseley Decl. Ex. A, and paragraphs 28, 31, 33, 45 and 47 of

Petrey's rebuttal report, *id*., Ex. D, all impermissibly opine on or address likelihood

of confusion, confusion generally, or false associations, and therefore require

exclusion for this additional reason.

## V.    **CONCLUSION**

For the foregoing reasons, Samsung respectfully requests that the Court

exclude the opinions and testimony of Cassie Petrey.

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM
CASSIE PETREY;

- 24 -

CASE NO. 2:21-cv-02443-CAS-JPRx

1    Dated: December 23, 2022         Respectfully submitted,

2                                     **FAEGRE DRINKER BIDDLE & REATH LLP**

3

                                      By:    */s/ Christopher J. Burrell*
4

5                                          David J.F. Gross

6                                          James R. Steffen (*pro hac vice*)
                                           *james.steffen@faegredrinker.com*
                                           Lauren W. Linderman (SBN 280809)
7                                          lauren.linderman@faegredrinker.com
                                           2200 Wells Fargo Center
8                                          90 S. Seventh Street
                                           Minneapolis, Minnesota 55402
9                                          Telephone:  +1 612 766 7000
                                           Facsimile:  +1 612 766 1600
10
                                           Christopher J. Burrell (*pro hac vice*)
11                                         *christopher.burrell@faegredrinker.com*
                                           Katlyn M. Moseley (*pro hac vice*)
12                                         *katlyn.moseley@faegredrinker.com*
                                           1500 K Street NW, Suite 1100
13                                         Washington, D.C. 20005
                                           Telephone:    +1 202 842 8800
14                                         Facsimile:    +1 202 842 8465

15                                         Louis T. Perry (*pro hac vice*)
                                           *louis.perry@faegredrinker.com*
16                                         300 N. Meridian Street, Suite 2500
                                           Indianapolis, Indiana 46204
                                           Telephone:    +1 317 237 0300
17                                         Facsimile:    +1 317 237 1000

18                                    Attorneys for Defendants
                                      Samsung Electronics Co., Ltd., and Samsung
19                                    Electronics America, Inc.

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE
& REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MOTION AND MEMORANDUM TO
EXCLUDE EVIDENCE AND TESTIMONY FROM        - 25 -        CASE NO. 2:21-CV-02443-CAS-JPRX
CASSIE PETREY;

## CERTIFICATE OF SERVICE

I, Christopher J. Burrell, declare that on **December 26, 2022**, I caused the foregoing Defendants' Corrected Notice Of Motion And Motion To Exclude Evidence And Testimony From Cassie Petrey; Memorandum Of Law In Support Thereof to be served on the interested party(ies) in this action as follows:

\*\*\*\*

☐ **BY EMAIL:** by transmitting via e-mail or secure file transfer the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Andrew D. Skale
*adskale@mintz.com*
Matthew C. Hurley
*mchurley@mintz.com*
Michael R. Graif
*Mrgraif@mintz.com*
Geoffrey A. Friedman
*gafriedman@mintz.com*
James J. Thomson
*jjthomson@mintz.com*
Oliver Ennis
*ofennis@mintz.com*
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel. (858) 314-1500

Matthew Novian
*mjnovian@mintz.com*
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
2029 Century Park East, Ste 3100
Los Angeles, CA 90067
Tel. (310) 586-3200

Executed on **December 26, 2022**.

*/s/ Christopher J. Burrell*
Christopher J. Burrell