**FAEGRE DRINKER BIDDLE & REATH LLP**
David J.F. Gross (SBN 290951)
*david.gross@faegredrinker.com*
1950 University Avenue, Suite 450
East Palo Alto, California 94303
Telephone:  +1 650 324 6700
Facsimile:    +1 310 229 1285

**MOORE RUDDELL LLP**
Howard D. Ruddell (SBN 281510)
hruddell@mooreruddell.com
21250 Hawthorne Blvd., Suite 500
Torrance, California 90503
Telephone: +1 310 792 7010
Facsimile:  +1 323 530 1113

[*additional counsel listed on signature page*]

Attorneys for Defendants
Samsung Electronics Co., Ltd., and Samsung
Electronics America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>              Defendants. | Case No. 2:21-cv-02443-CAS-JPRx<br><br>District Judge: Hon. Christina A. Snyder<br><br>**DEFENDANTS' CORRECTED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Date:         January 23, 2023<br>Time:        10:00 a.m.<br>Ctrm:        8D<br><br>Counterclaim Filed: August 3, 2021<br><br>FAC Filed:          July 20, 2021<br>Complaint Filed:   March 19, 2021 |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' CORRECTED NOTICE OF
MOTION AND MOTION FOR SUMMARY
JUDGMENT

CASE NO. 2:21-cv-02443-CAS-JPRx

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, January 23, 2023, at 10:00 a.m., in the courtroom of the Honorable Christina A. Snyder of the United States District Court for the Central District of California, First Street Courthouse, Courtroom 8D, 350 W. First Street, 8th Floor, Los Angeles, CA 90012, or as soon thereafter as the matter may be heard, Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., (collectively "Samsung") pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, will and hereby do move this Court for summary judgment that (1) no reasonable factfinder could find that Samsung infringes S10 Entertainment's S10 mark or find Samsung liable under Counts I through V of S10 Entertainment's First Amended Complaint (D.I. 37), (2) Samsung did not willfully infringe S10 Entertainment's S10 mark, and (3) S10 Entertainment is not, as a matter of law, entitled to the remedy of disgorgement and has not otherwise preserved or maintained claims for monetary remedies.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Statement of Undisputed Facts and corresponding exhibits filed contemporaneously herewith, and such other written or oral argument that may be presented at or before the time this motion is deemed submitted by the Court. This motion is made following a conference of counsel required by Local Rule 7-3, which took place on December 15, 2022. During this conference, counsel for S10 Entertainment informed counsel for Samsung that S10 Entertainment opposes this motion.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

- 1 -

CASE NO. 2:21-cv-02443-CAS-JPRx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: December 23, 2022

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/Christopher J. Burrell*

David J.F. Gross

James R. Steffen (*pro hac vice*)
james.steffen@faegredrinker.com
Lauren W. Linderman (SBN 280809)
lauren.linderman@faegredrinker.com
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402
Telephone:   +1 612 766 7000

Christopher J. Burrell (*pro hac vice*)
christopher.burrell@faegredrinker.com
Katlyn M. Moseley (*pro hac vice*)
katlyn.moseley@faegredrinker.com
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone:   +1 202 842 8800

Louis T. Perry (*pro hac vice*)
louis.perry@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:   +1 317 237 0300

Attorneys for Defendants
Samsung Electronics Co., Ltd., and Samsung
Electronics America, Inc.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

- 2 -

CASE NO. 2:21-cv-02443-CAS-JPRx

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ....................................................................................... 2

    A.      Samsung and Galaxy S-Series Smartphones ................................ 2

    B.      S10 Entertainment & Media LLC ................................................. 5

    C.      S10 Entertainment's "S10" Mark and Marketplace Presentation ........ 7

    D.      ███████████████████████████████████████████████s ............... 7

    E.      The Dispute .................................................................................. 8

III.    LEGAL STANDARD ............................................................................... 9

IV.     ARGUMENT ............................................................................................ 9

    A.      Summary Judgment Is Warranted on All Counts Because S10
           Entertainment Cannot Establish a Likelihood of Confusion ............... 9

    B.      No Likelihood of Reverse Confusion ........................................... 10

        1.      Proximity of the Goods/Services: Samsung's Galaxy S10
               Smartphone and S10 Entertainment's Services Are
               Unrelated ............................................................................ 10

        2.      Type of Good/Service and Degree of Care: S10
               Entertainment's Clients Exercise Care in Purchasing Its
               Services .............................................................................. 12

        3.      Marketing Channels Used: The Parties Use Different
               Marketing Channels ............................................................ 13

        4.      Similarity of the Marks: The Parties' Respective
               Marketplace Uses of "S10" Are Not Similar ......................... 14

        5.      Intent: Samsung's Use of "S10" in the name Samsung
               Galaxy S10 Was a Good Faith Continuation of the Galaxy
               S-Series .............................................................................. 15

        6.      Actual Confusion: S10 Entertainment's Consumers Were
               Not Confused and There is No Evidence of Actual
               Confusion Amongst Customers or Potential Customers .......... 16

               a.      Survey Evidence ...................................................... 17

               b.      Social Media, Google Search Results, and
                      Statements of Friends and an S10 Entertainment
                      Employee .................................................................. 18

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY          - i -          CASE NO. 2:21-CV-02443-CAS-JPRx
JUDGMENT

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**
(continued)

**Page**

7.    Likelihood of Expansion: There is No Evidence of Likelihood of Expansion ............................................ 20

8.    Strength of the Mark: The Strength of Samsung's Galaxy S10 Mark Does Not Suggest Confusion is Likely ................. 20

C.    S10 Entertainment's Common Law Unfair Competition Claim Fails as a Matter of Law for Additional Reasons ............................... 21

D.    Samsung Did Not Willfully Infringe .................................................. 22

E.    S10 Entertainment Preserved Only Disgorgement as a Monetary Remedy and Disgorgement is Not Available in This Case ............... 23

V.    CONCLUSION ........................................................................... 25

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*A& H Sportswear Inc. v. Victoria's Secret Stores, Inc.*,
   No. CIV.A. 94-CV-7408, 2002 WL 27735 (E.D. Pa. Jan. 9, 2002) .................. 25

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008).................................................................... 22

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979)............................................................... 10, 11, 12

*Anderson v. Liberty Lobby. Inc.*,
   477 U.S. 242 (1986) ........................................................................................... 9

*Arnold & Richter Cine Technik GmbH & Co*, No. CV 17-7605, 2018
   WL 2572853 (C.D. Cal. Apr. 4, 2018).............................................................. 19

*Beyond Blond Prods., LLC v. Heldman*,
   No. CV205581DSFGJSX, 2021 WL 4860376 (C.D. Cal. Aug. 13,
   2021) .................................................................................................................. 17

*Boost Beauty, LLC v. Woo Signatures, LLC*,
   No. 2:18-cv-02960, 2022 WL 409957 (C.D. Cal. Feb. 7, 2022) ....................... 13

*Bragi GmbH v. OnePlus Tech. (Shenzhen) Co. Ltd.*,
   C 18-2972, 2019 WL 7212320 (N.D. Cal. Jan.11, 2019) ................................. 19

*Cairns v. Franklin Mint Co.*,
   24 F. Supp. 2d 1013 (C.D. Cal. 1998)............................................................... 16

*Caryn Mandabach Productions Ltd. v. Sadlers Brewhouse Ltd.*,
   No. 20-10220, 2021 WL 2497928 (C.D. Cal. May 19, 2021) .......................... 19

*Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*,
   269 F.3d 270 (3d Cir. 2001) ............................................................................. 12

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994)............................................................................. 10

*Fabick, Inc. v. JFTCO, Inc.*,
   944 F.3d 649 (7th Cir. 2019) ............................................................................ 24

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- iii -

CASE NO. 2:21-cv-02443-CAS-JPRx

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
   778 F.3d 1059 (9th Cir. 2015) ............................................................. 22, 24

*Flushing Bank v. Green Dot Corp.*,
   138 F. Supp. 3d 561 (S.D.N.Y. 2015) ........................................................ 17

*Girl Scouts of the U.S.A. v. Boy Scouts of Am.*,
   No. 18 CIV. 10287 (AKH), -- F.Supp.3d ---, 2022 WL 1047583
   (S.D.N.Y. Apr. 7, 2022) ................................................................................... 22

*Globefill Inc. v. Elements Spirits, Inc.*,
   No. 2:10-cv-02034, 2016 WL 8944644 (C.D. Cal. Sept. 20, 2016) ................. 19

*Hasbro, Inc. v. Asus Computer Int'l Inc.*,
   No. CV 11-10437, 2012 WL 13012663 (C.D. Cal. Mar. 23, 2012) ................. 19

*Hornady Mfg. Co., Inc. v. Doubletap, Inc.*,
   746 F.3d 995 (10th Cir. 2014) ...................................................................... 18

*Icebreaker Ltd. v. Gilmar S.P.A.*,
   911 F. Supp. 2d 1099 (D. Or. 2012) ............................................................. 12

*J & J Snack Foods Corp. v. McDonald's Corp.*,
   932 F.2d 1460 (Fed. Cir. 1991) ..................................................................... 23

*J.T. Colby & Co. v. Apple Inc.*,
   No. 11 CIV. 4060 DLC, 2013 WL 1903883 (S.D.N.Y. May 8,
   2013) *aff'd*, No. 13-2227-CV, 2014 WL 4799139 (2d Cir. 2014) .................... 20

*JL Beverage Co., LLC v. Beam, Inc.*,
   No. 2:11-cv-00417, 2017 WL 3666302 (D. Nev. Aug. 24, 2017) .................... 23

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
   815 F. App'x 110 (9th Cir. May 27, 2020) ........................................... 15, 16, 21

*Kudos Inc. v. Kudoboard LLC*,
   No. 20-CV-01876-SI, 2021 WL 5415258 (N.D. Cal. Nov. 20,
   2021) ............................................................................................................. 17

*Lahoti v. Vericheck, Inc.*,
   636 F.3d 501 (9th Cir. 2011) ......................................................................... 20

*Lodestar Anstalt v. Bacardi & Co. Ltd.*,
   31 F.4th 1228 (9th Cir. 2022) ................................................................ 9, 20, 21

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY          - iv -          CASE NO. 2:21-cv-02443-CAS-JPRx
JUDGMENT

*Lodestar Anstalt v. Bacardi & Co. Ltd.*,
No. 2:16-cv-06411, 2019 WL 8105378 (C.D. Cal. July 3, 2019)
(Snyder, J.), *aff'd* 31 F.4th 1228.............................................................21

*M2 Software, Inc. v. M2 Commc'ns, L.L.C.*,
281 F. Supp. 2d 1166 (C.D. Cal. 2003)....................................................9

*M2 Software, Inc. v. Madacy Corp.*,
421 F.3d 1073 (9th Cir. 2005)..........................................................*passim*

*Machine Head v. Dewey Global Holdings Inc.*,
No. C 99-04326, 2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) ...............*passim*

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
390 F.2d 117 (9th Cir. 1968) .................................................................25

*Marketquest Grp., Inc. v. BIC Corp.*,
862 F.3d 927, cert. denied 138 S.Ct. 1988 (2018) .............................15

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
290 F. Supp. 2d 1083 (C.D. Cal. 2003).....................................11, 12, 14

*Mattel, Inc. v. MCA Recs., Inc.*,
28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir.
2002) ........................................................................................................18

*MGA Ent. Inc. v. Harris*,
No. 220CV11548JVSAGRX, 2022 WL 4596697 (C.D. Cal. July
29, 2022) .................................................................................................22

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) ................................................................12

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
No. 14-cv-04853-PSG, 2015 WL 9028123 (N.D. Cal. Dec. 16,
2015) ........................................................................................................24

*Oculu, LLC v. Oculus VR, Inc.*,
No. SACV 14-0196, 2015 WL 3619204 (C.D. Cal. June 8, 2015)........11, 23, 24

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
578 F.3d 1154 (9th Cir. 2009) ..............................................................10

*Paco Sport, Ltd. v. Paco Rabanne Parfums*,
   86 F. Supp. 2d 305 (S.D.N.Y. 2000) ................................................................. 19

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   140 S. Ct. 1492 (2020) ..................................................................................... 24

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
   251 F.Supp.3d 1288 (N.D. Cal. 2017) ............................................................... 23

*Smith v. Pac. Props. & Dev. Corp.*,
   358 F.3d 1097 (9th Cir. 2004) ........................................................................... 25

*Smith v. Wal-Mart Stores, Inc.*,
   537 F. Supp. 2d 1302 (N.D. Ga. 2008) .............................................................. 18

*Spangler Candy Co. v. Tootsie Roll Indus., LLC*,
   372 F. Supp. 3d 588 (N.D. Ohio 2019) ............................................................. 17

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
   2011 WL 13127349 (C.D. Cal. Sept. 15, 2011) ................................................. 23

*Spraying Sys. Co. v. Delavan, Inc.*,
   975 F.2d 387 (7th Cir.1992) ............................................................................... 18

*SRI Int'l, Inc. v. Advanced Tech. Labs.*,
   127 F.3d 1462 (Fed.Cir.1997) ........................................................................... 22

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   808 F. App'x 459 (9th Cir. 2020) ...................................................................... 24

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   987 F. Supp. 2d 1023 (C.D. Cal. 2013) .................................................... *passim*

*Suja, Life, LLC v. Pines Int'l Inc.*,
   No. 16CV985, 2016 WL 6157950 (S.D. Cal. Oct. 24, 2016) ............................ 15

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ........................................................................ 9, 19

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ........................................................................... 21

*Thrive Natural Care, Inc. v. Thrive Causematics, Inc.*,
   No. CV 20-9091, 2021 WL 4813257 (C.D. Cal. Oct. 6, 2021) ......................... 24

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- vi -

CASE NO. 2:21-cv-02443-CAS-JPRx

*Trovan, Ltd. v. Pfizer, Inc.*,
  CV-98-0094, 2000 WL 709149 (C.D. Cal. May 24, 2000) ..............................21

*vonRosenberg v. Lawrence*,
  413 F. Supp. 3d 437 (D.S.C. 2019) ...................................................................17

*Walter v. Mattel, Inc.*,
  210 F.3d 1108 (9th Cir. 2000) ..........................................................................19

**Statutes, Rules & Regulations**

15 U.S.C. § 1117(a) ......................................................................................23, 24, 25

Cal. Bus. and Prof. Code § 17200 et seq. .................................................................8

Fed. R. Civ. P. 26(a) ...............................................................................................23

Fed. R. Civ. P. 37(c) ...............................................................................................23

Fed. R. Civ. P. 56 ......................................................................................................9

**Other Authorities**

McCarthy on Trademarks & Unfair Competition, § 23:10 ......................................24

McCarthy on Trademarks & Unfair Competition, § 23:14 ......................................16

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- vii -

CASE NO. 2:21-cv-02443-CAS-JPRx

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA", collectively "Samsung") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## I.   INTRODUCTION

Samsung is a consumer electronics company, making well-known televisions, appliances, and mobile devices like smartphones and tablets. Samsung launched its Galaxy S-series of smartphones in 2010, and since then, has released a new generation of Galaxy S device every year. Samsung uses a sequentially increasing naming convention for its newer models that is common in the electronics industry, e.g., Galaxy S II in 2011, Galaxy S III in 2012, Galaxy S4 in 2013, Galaxy S5 in 2014, and, by 2019 (the 10th-generation), Galaxy S10.

Plaintiff S10 Entertainment was founded in 2017 and its primary business is talent management for recording artists. It currently manages two such artists: Normani and Anitta. S10 Entertainment's CEO and President Brandon Silverstein testified it has ███████████████████████████████████████████████ ████████████████████████████████ As to expansion plans generally, telling of its selective participation in this case, Silverstein testified, ████████████ ███████████████████████████████████████ Silverstein similarly ███████████████████████████████████████████.

Samsung (consumer electronics *goods*) and S10 Entertainment (music-related *services* to industry professionals) operate fundamentally different businesses, have fundamentally different marketing strategies and channels of trade, and target fundamentally different groups of consumers. There is no mistaking the companies or their offerings. Far from competing, Samsung is a customer for influencer services S10 Entertainment's artists provide. In fact, ███████████████████████ ████████████████████████████████████████████

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

In this case, S10 Entertainment accuses Samsung of trademark infringement based on Samsung's Galaxy S10 smartphones. S10 Entertainment recently confirmed it is no longer pursuing a "forward" confusion theory of infringement. Thus, this case is only about "reverse" confusion, which considers whether *consumers of S10 Entertainment's* specialized services (generally sophisticated industry professionals) would believe that they are dealing with Samsung for *S10 Entertainment's* services or falsely associate S10 Entertainment with Samsung. In the nearly four years since Samsung launched the Galaxy S10 smartphone, there is simply no evidence of actual confusion amongst such consumers, and there is no trademark infringement as a matter of law. Thus, Samsung, respectfully, requests summary judgment in this case.

## II.   BACKGROUND

### A.   Samsung and Galaxy S-Series Smartphones

SEC is an electronics company that designs, manufactures, and sells well-known consumer electronics—*e.g.*, televisions, appliances, smartphone. SUF ¶ 1. SEA is a U.S. subsidiary of SEC that sells consumer electronics manufactured by SEC under Samsung's brands, i.e., SAMSUNG and GALAXY. SUF ¶¶ 2-3.



FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 2 -

CASE NO. 2:21-cv-02443-CAS-JPRx

Since introducing the Galaxy S-series of smartphones in 2010, Samsung has released subsequent models each year using its sequentially increasing generational naming convention: SII (2011), SIII (2012), S4 (2013), etc., through S9 (2018), S10 (2019), and then S20 (2020), S21 (2021), and S22 (2022). SUF ¶ 4. The above slide is from an SEA presentation celebrating 10 years of Galaxy S-series smartphones in the context of the Galaxy S10 launch. SUF ¶ 7. In 2015, Samsung set forth updated guidelines regarding GALAXY branding, and each generation from the Galaxy S6 (2015) to the present (Galaxy S22) has used the same "Galaxy S" logo and Samsung Sharp Sans typeface. SUF ¶¶ 5-6. From 2013 to 2019, Samsung sold over ██ million units in the United States of Galaxy S through S9 smartphones, with over 100 million units sold prior to July 2017. SUF ¶ 8.

For its 10th-generation product launching in 2019, SEC began considering the name "Galaxy S10" by 2016. SUF ¶ 11. From ████████████████████ ████████████ SEC considered names for this device and officially approved "Galaxy S10" at a ████████ committee meeting. SUF ¶ 12. Samsung announced the Galaxy S10 smartphone line on February 20, 2019. SUF ¶ 15. Examples of Samsung's advertising for Galaxy S10 smartphones include, SUF ¶¶18-24:



FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 3 -

CASE NO. 2:21-cv-02443-CAS-JPRx




As with prior generations, Samsung Galaxy S10 smartphones were sold to consumers through wireless carriers (e.g., AT&T, Verizon, T-Mobile), retailers (e.g., Best Buy), and online (e.g., Samsung.com). SUF ¶ 17. Samsung also promoted the Galaxy S10 through various marketing channels: in-store (e.g., wireless carriers, retail stores), Samsung.com, Samsung's social media presence (e.g., Facebook, Instagram, YouTube), traditional media (e.g., television, print, online, radio), partnerships (e.g., other companies, celebrities, influencers), and various events (e.g., June 13, 2019 Happy Galaxy Day event in New York City). SUF ¶¶ 16, 28.

In 2019, Samsung offered promotions with YouTube and Spotify whereby purchasers of Samsung mobile devices, such as Galaxy S10 or Galaxy Note 10 devices, could receive free introductory subscriptions to YouTube premium or Spotify. SUF ¶ 24. Samsung also conducted a Samsung Experience Tour from March 8, 2019 through May 31, 2019, which consisted of pop-up locations in twelve markets across the United States, including a location in Austin, Texas, during South by Southwest ("SXSW"), at which consumers could interact with various Samsung

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 4 -

CASE NO. 2:21-cv-02443-CAS-JPRx

devices. SUF ¶¶ 25-26. The SXSW location was open for ten days and attracted ▇▇▇▇ unique visitors. SUF ¶ 27.

From the 2010 launch of the Galaxy S through the Galaxy S10 in 2019, Samsung spent over ▇▇▇▇▇▇▇ to market and advertise its Galaxy S series smartphones in the United States. SUF ¶ 29. Consistent with Samsung's marketing campaigns for prior Galaxy S-series devices, Samsung's marketing efforts for the Galaxy S10 were almost exclusively concentrated in 2019. SUF ¶ 30. SEA spent ▇▇▇▇▇▇ specifically promoting Galaxy S10 smartphones in the United States in 2019 and only ▇▇▇▇▇ in 2020, the year the Galaxy S20 launched. SUF ¶ 30.

## B.     S10 Entertainment & Media LLC

S10 Entertainment was formed in 2017 by Brandon Silverstein ("Silverstein") "as a full-service talent management company." SUF ¶¶ 32-33. Its primary business is talent management with two current clients: Anitta and Normani. SUF ¶¶ 34-38. S10 Entertainment's services are ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ SUF ¶¶ 40-43. The music industry ecosystem in which S10 Entertainment operates is complex, involving multiple participants with varying roles.[1] SUF ¶ 39. S10 Entertainment is compensated for its services ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ SUF ¶ 44. S10 Entertainment also claims to operate music publishing and recording businesses, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ SUF ¶¶ 45, 49.

Normani ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ signed with S10 Entertainment in 2017. SUF ¶¶50-51. S10 Entertainment signed Anitta in about

---

[1] Participants include talent managers, such as Silverstein; recording artists, such as S10 Entertainment clients Normani and Anitta; record labels (e.g., Warner Music Group, Universal Music Group); music publishers (e.g., Universal Music Publishing Group); and digital service/streaming providers (e.g., Spotify, Apple Music). SUF ¶ 39.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT                                           - 5 -                    CASE NO. 2:21-CV-02443-CAS-JPRx

1   July 2019 ███████████████████████████[2] SUF ¶ 56. Similarly, ███

2   ████████████████████ Bazzi signed in about November 2019 and was

3   introduced to Silverstein through his friend and colleague Josh Klein.[3] SUF ¶¶63-65.

4   At deposition, Silverstein ████████████████████████████████████████

5   ████████████████ SUF ¶ 67, and there is no evidence of record of any artist

6   declining to sign with or consider S10 Entertainment due to Samsung's use of "S10"

7   in connection with its Galaxy S10 smartphones. SUF ¶ 67.

8       S10 Entertainment maintains a website that Silverstein described as ████

9   and social media accounts (e.g., Instagram, Twitter). SUF ¶ 69. S10 Entertainment

10  ████████████████████████████████████████████████████████████

11  ██████████████████████ SUF ¶¶ 71-74. S10 Entertainment witnesses

12  admitted ████████████████████████████ SUF ¶ 73.

13      The consumers of S10 Entertainment's services are recording artists,

14  songwriters, and others in the music or entertainment industry. SUF ¶¶ 37, 47-48, 63-

15  66. S10 Entertainment also interacts with brands, ████████████████████

16  ████████████████████████████████████████████████ SUF ¶¶ 76,

17  93, 103. Samsung and S10 Entertainment are not competitors, SUF ¶¶ 77-79, and

18  S10 Entertainment admits that ████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████ SUF ¶¶ 78-79.

22

23

24

25  [2] ████████████████████████████████████████████████████████████

26  ████████████████████████████ SUF ¶ 57, 59, 95-96.

27  █

28  ████████████████████████ SUF ¶ 66.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 6 -

CASE NO. 2:21-CV-02443-CAS-JPRx

**C.    S10 Entertainment's "S10" Mark and Marketplace Presentation**

On May 18, 2018, S10 Entertainment filed an application to register the standard character mark "S10" in connection with certain clothing (Class 25), management services for artists (Class 35), and entertainment-related services (e.g., music recording and production in Class 41). SUF ¶ 81. S10 Entertainment did not seek and does not have a registration for use of "S10" in connection with smartphones or any other consumer electronic devices in Class 9. SUF ¶ 83. As used in the marketplace, S10 Entertainment's "S10" mark typically appears with a black background and yellow font, as reflected in the below images.  SUF ¶ 84-86.

 



**D.**   ████████████████████████████████████████████

Silverstein was introduced to SEA in November 2018, and it was at that time SEA became aware of S10 Entertainment. SUF ¶¶ 88-89. From 2018 through 2022,

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT                                          - 7 -        CASE NO. 2:21-cv-02443-CAS-JPRx

1        ████████████████████████████████████ SUF ¶¶ 92-93, 97, 102-106.

2        Prior to signing with S10 Entertainment, Anitta and Normani had pre-existing

3   relationships with Samsung or Samsung Brazil, SUF ¶ 94-95, and both artists

4   promoted Samsung's Galaxy S10 smartphone. Anitta performed at a "Galaxy S10

5   Party" in Brazil in April 2019, and Normani performed at Samsung's June 13, 2019

6   Happy Galaxy Event █████████████████████████████████

7   ██████████ SUF ¶¶ 97-100. ████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ██████████ SUF ¶¶ 53-54, 60-62.

11       **E.     The Dispute**

12       In the First Amended Complaint ("FAC") (D.I. 37), S10 Entertainment asserts

13  claims against Samsung for trademark infringement (Counts One (federal), Two

14  (common law), and Three (contributory)), common law unfair competition (Count

15  Four), and a violation of California's Business and Professional Code § 17200 et seq.

16  (Count Five), all based on its allegations that Samsung's use of the designation "S10"

17  in connection with Galaxy S10 smartphones is likely to cause confusion. FAC ¶¶ 74-

18  129. Despite having ongoing interactions with SEA (including in connection with

19  Normani's 2019 performance), S10 Entertainment never raised the allegations it

20  makes in this suit with Samsung prior to filing on March 19, 2021—█████████

21  █████████████████████████████████████████ SUF ¶

22  107. S10 Entertainment recently clarified that the only form of trademark confusion

23  it alleges is "reverse confusion"—meaning it contends that an appreciable number of

24  reasonably prudent actual or prospective purchasers of S10 Entertainment's

25  specialized services are likely to mistakenly believe that S10 Entertainment's

26  services are provided by, sponsored by, or affiliated with Samsung.

27       While denying any likelihood of confusion, Samsung filed a counterclaim

28  alleging that, to the extent there is a likelihood of confusion, it is S10 Entertainment

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 8 -

CASE NO. 2:21-cv-02443-CAS-JPRx

that infringes Samsung's rights in Samsung's prior Galaxy S family of marks, which was established at least as early as July 2017. Counterclaim (D.I. 45). Samsung also asserts affirmative defenses of laches and estoppel.  D.I. 45.

## III.  <u>LEGAL STANDARD</u>

To survive summary judgment in a trademark infringement action, the plaintiff "must create a genuine issue that confusion is *probable*, not simply a possibility." *M2 Software, Inc. v. M2 Commc'ns, L.L.C.*, 281 F. Supp. 2d 1166, 1169 (C.D. Cal. 2003) (emphasis added); *see also* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242 (1986). This requires showing that an "appreciable number" of reasonably prudent consumers are likely to be confused. *M2 Software*, 281 F. Supp. 2d at 1176. Where the "distribution of the *Sleekcraft* factors does not raise a material issue of fact regarding likelihood of confusion," courts have not hesitated to grant summary judgment. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (affirming summary judgment for defendant where four factors favored plaintiff, three favored defendant, and one was neutral); *see also Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1261 (9th Cir. 2022) (affirming this Court's grant of summary judgment for defendant where there was no likelihood of confusion as a matter of law); *M2 Software, Inc. v. Madacy Corp.*, 421 F.3d 1073, 1085 (9th Cir. 2005); *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1047 (C.D. Cal. 2013); *Machine Head v. Dewey Global Holdings Inc.*, No. C 99-04326, 2001 WL 1747180, at *7 (N.D. Cal. Dec. 13, 2001).

## IV.  <u>ARGUMENT</u>

### A.  **Summary Judgment Is Warranted on All Counts Because S10 Entertainment Cannot Establish a Likelihood of Confusion**

S10 Entertainment alleges "reverse confusion" in this case, which "occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one." *Surfvivor Media*, 406 F.3d at 630. Here, S10 Entertainment alleges it is the senior user and that consumers for S10 Entertainment's

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 9 -

CASE NO. 2:21-cv-02443-CAS-JPRx

specialized services encountering it in the marketplace would believe they are dealing with Samsung or falsely associate S10 Entertainment with Samsung.

To assess confusion, the Ninth Circuit considers the eight factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft* factors").[4] The *Sleekcraft* factors guide courts in assessing the question of likelihood of confusion, but "applying the *Sleekcraft* test is not like counting beans." *One Indus., LLC v. Jim O'Neal Distrib., Inc*., 578 F.3d 1154, 1162 (9th Cir. 2009). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Id*. Because all five of plaintiff's counts require at least proof of trademark infringement, S10 Entertainment's inability to show a likelihood of confusion is dispositive of all claims. *M2 Software*, 421 F.3d at 1080; *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).

Here, summary judgment is compelled because no reasonable factfinder could conclude that an appreciable number of reasonably prudent consumers for S10 Entertainment's specialized services would believe they are dealing with Samsung for those services or *falsely* associate S10 Entertainment with Samsung due to Samsung's Galaxy S10 smartphones. *M2 Software*, 421 F.3d at 1085; *Machine Head*, 2001 WL 1747180, at *13.

### B.   No Likelihood of Reverse Confusion

#### 1.   Proximity of the Goods/Services: Samsung's Galaxy S10 Smartphone and S10 Entertainment's Services Are Unrelated

Samsung's Galaxy S10 smartphones and the services S10 Entertainment offers to music industry professionals are unrelated and this factor weighs heavily, if not dispositively, in Samsung's favor. Related goods and services are those "which would be reasonably thought by the buying public to come from the same source if

---

[4] They are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id*.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT                                    - 10 -              CASE NO. 2:21-CV-02443-CAS-JPRx

1  sold under the same mark." *Sleekcraft*, 599 F.2d at 348 n.10. The focus in this reverse

2  confusion case is whether S10 Entertainment's consumers (the alleged senior user)

3  are likely to falsely associate S10 Entertainment's services with Samsung (the alleged

4  junior user). *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196, 2015 WL 3619204,

5  at *14-15 (C.D. Cal. June 8, 2015).

6  This factor evaluates whether the parties' respective goods/services are

7  complementary, similar in use or function, and/or sold to the same class of

8  purchasers. *Sleekcraft*, 599 F.2d at 350. Where the "goods [or services] are totally

9  unrelated, there can be no infringement because confusion is unlikely" as a matter of

10 law. *Id.* at 348. Even if "two products or services fall within the same general field .

11 . . [that] does not mean that the two products or services are sufficiently similar to

12 create a likelihood of confusion." *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki

13 Kaisha*, 290 F. Supp. 2d 1083, 1090, 1092 (C.D. Cal. 2003). For example, "[t]he fact

14 that both products could broadly be described as relating to music is not sufficient to

15 find that the products have a similar use or function." *Machine Head*, 2001 WL

16 1747180, at *6.

17 S10 Entertainment advances the same superficial analysis that was rejected in

18 *Machine Head* and *Matrix Motor*. Samsung uses its "S10" designation in connection

19 with Galaxy S10 smartphones—a consumer electronics product sold to general

20 consumers as an offering within its Galaxy S-series. SUF ¶¶ 1-3, 23. In contrast, S10

21 Entertainment uses its S10 mark in connection with specialized services offered to

22 recording artists, writers, and others in the music industry. SUF ¶¶ 37, 47-48, 63-66.

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████   Given their fundamentally different uses, purposes, functions, and target

26 consumers, the goods and services at issue here are unrelated as a matter of law, and

27 this factor weighs heavily, if not dispositively, in Samsung's favor. *See Machine Head*,

28 2001 WL 1747180, at *6-7 (sound design services and live and recorded music were

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 11 -

CASE NO. 2:21-cv-02443-CAS-JPRx

unrelated because they were not used in the same manner); *Matrix Motor*, 290 F. Supp. 2d at 1092 (custom racing vehicles not similar to passenger cars); *Icebreaker Ltd. v. Gilmar S.P.A.*, 911 F. Supp. 2d 1099, 1105 (D. Or. 2012) (no likelihood of confusion where plaintiff sold clothing for outdoor and sporting activities and defendant sold high-end clothing); *Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*, 269 F.3d 270, 287 (3d Cir. 2001) (no likelihood of confusion where plaintiff offered physical security services and defendant offered computer security services).

### 2.   Type of Good/Service and Degree of Care: S10 Entertainment's Clients Exercise Care in Purchasing Its Services

Courts assess "the relative sophistication of the relevant consumer, and the degree of care likely to be exercised by that consumer." *Stonefire*, 987 F. Supp. 2d at 1055. "Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015). "When the buyer has expertise in the field, a higher standard is proper." *Sleekcraft*, 599 F.2d at 353.

Here, the undisputed evidence shows that S10 Entertainment's consumers had prior experience and sophistication in the music industry when they signed or partnered with S10 Entertainment. ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ the undisputed evidence is that clients for S10 Entertainment's services are experienced consumers in the industry who exercise substantial care in

- 12 -

1  their hiring and partnership decisions.[5] Such consumers are not likely to be confused
2  or falsely associate Samsung and S10 Entertainment, *M2 Software*, 421 F.3d at 1084,
3  and this factor decidedly favors Samsung.

### 3. Marketing Channels Used: The Parties Use Different Marketing Channels

6  This factor considers "how and to whom the respective parties' goods are
7  sold," including the "locations of potential buyers, the price ranges of the goods and
8  services, and the types of advertising used." *Stonefire*, 987 F. Supp. 2d at 1054. As a
9  matter of law, this factor will not favor a plaintiff simply because both parties
10  advertise over the internet. *Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18-cv-
11  02960, 2022 WL 409957, at *11 (C.D. Cal. Feb. 7, 2022).

12  Whereas Samsung advertises its Galaxy S10 smartphones through a wide range
13  of paid media outlets, events, and sponsorships, SUF ¶¶16, ███████████████
14  ████████████████████  SUF ¶¶ 71-73. Samsung sells its Galaxy S10
15  smartphones through carriers, retailers, and online, whereas S10 Entertainment clients
16  ██████████████████████████████ SUF ¶¶ 17,
17  40-43. The only superficial similarity between the parties' marketing channels is that
18  both parties maintain a website and social media pages. Silverstein, however,
19  ████████████████████████  SUF ¶ 69. And S10
20  Entertainment's own social media expert acknowledged that, as to their social media
21  pages, the two companies "use them differently presumably because they're marketing
22  – one is marketing electronics. The other is marketing services and products that they
23  have in the music industry." SUF ¶ 70. Thus, no reasonable factfinder could conclude
24  that the marketing channels overlap in any meaningful respect, and this factor also

25  _____

26  [5] ████████████████████████████████████
27  ████████████████████████████████████
28  ████████████████████████████████████

Faegre Drinker
Biddle & Reath LLP
Attorneys at Law
Los Angeles

Memorandum of Points and Authorities
ISO Defendants' Motion For Summary
Judgment

- 13 -

Case No. 2:21-cv-02443-CAS-JPRx

decidedly favors Samsung.

> **4.    Similarity of the Marks: The Parties' Respective Marketplace Uses of "S10" Are Not Similar**

The parties' respective uses of "S10" in the market are distinct, and no reasonable factfinder could conclude that this factor creates a genuine issue of material fact as to likelihood of confusion.

In judging similarity, marks are considered in their entirety and as they appear in the marketplace. *Matrix Motor*, 290 F. Supp. 2d at 1093. Even where portions of marks or product names are superficially identical, a reasonable factfinder can conclude they are not similar based on how they appear in their entirety in the marketplace. *See M2 Software*, 421 F.3d at 1082. Moreover, the consistent use of a house mark, such as SAMSUNG or GALAXY, can reduce the likelihood of confusion when, as here, the house mark serves to indicate source of origin to the public. *See Matrix Motor*, 290 F. Supp. 2d at 1093 (finding confusion unlikely due in part to consistent use of TOYOTA house mark).

Considering the marks as they appear in the market, Samsung uses the "S10" designation under a brand architecture that consists of a housebrand (Samsung), a sub-brand (Galaxy), and a model designation ("S10"). SUF ¶ 3-10, 19-21. This brand architecture was understood by consumers prior to S10 Entertainment's formation as a company. SUF ¶ 9-10. Consumers encountering Samsung's use of "S10" in the market encounter it as "Samsung Galaxy S10," "Galaxy S10," or in connection with "Samsung," and this context communicates Samsung as the source of smartphones sold in connection with Samsung's "S10" designation. SUF ¶ 9-10.

S10 Entertainment's "S10" mark generally appears in the market in yellow font against a black background. SUF ¶ 84-86. The word "Entertainment" is often used with "S10" and the mark frequently appears near the names or pictures of the artists S10 Entertainment represents. SUF ¶ 86-87. The "1" in "S10" takes on two

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 14 -

CASE NO. 2:21-cv-02443-CAS-JPRx

different forms, and the "S" is narrower and boxier compared to Samsung's rounded "S" used in its Galaxy branding since 2015. *Compare* SUF ¶ 6-7, 19-21 *with* 84-86. Thus, considering, how the marks are encountered and understood by consumers in the market, no reasonable factfinder could conclude that any superficial similarity between the "S10" portions of Samsung's Galaxy S10 branding and S10 Entertainment's use of "S10" meaningfully favors S10 Entertainment. *See M2 Software*, 421 F.3d at 1082 (affirming summary judgment of no likelihood of confusion as between M2 and M2 Entertainment); *Suja, Life, LLC v. Pines Int'l Inc.*, No. 16CV985, 2016 WL 6157950, at *8-9 (S.D. Cal. Oct. 24, 2016) (finding identical "Mighty Green" marks dissimilar based on commercial context).

> **5.     Intent: Samsung's Use of "S10" in the name Samsung Galaxy S10 Was a Good Faith Continuation of the Galaxy S-Series**

In assessing intent in the reverse confusion context, the court looks to whether the defendant "deliberately intended to push the Plaintiff out of the market," *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 815 F. App'x 110, 113 (9th Cir. May 27, 2020); "knew of the mark, should have known of the mark, intended to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934-35, cert. denied 138 S.Ct. 1988 (2018). No such indicia exist here.

It is undisputed that SEC began contemplating using an "S10" name in connection with Galaxy S devices at least as early as 2016. SUF ¶ 11. The official process for naming the 10th-generation Galaxy S device began ████████ and Galaxy S10 was amongst the options considered ██████████████████ ██████████████████████████████████████████████ ██ SUF ¶ 12. ████████████████████ made the official recommendation to use the Galaxy S10 name based on the desire to capitalize on the existing brand equity that Samsung *itself* had created in its Galaxy S-series from launch in 2010 through the

first nine generations. SUF ¶ 12. ███████████████████████████
███████████████████████████████████████ SUF ¶ 88-89. SEC then performed trademark searches through its legal department and outside counsel and S10 Entertainment's mark was not revealed as part of this searching. SUF ¶ 13.

No part of Samsung's decision to call its 10th-generation Galaxy S smartphone the Galaxy S10 involved any intent or desire to trade on S10 Entertainment's brand recognition or goodwill. SUF ¶ 14. And far from having any intent to harm S10 Entertainment, SEA in fact *did business* with ███████████████████
██████████████████████████████████████████ ████████████████████████████ Samsung's good faith adoption of the Galaxy S10 name render this factor neutral at best for S10 Entertainment. *JL Beverage*, 815 F. App'x at 113 (affirming factor as neutral where evidence indicated defendant acted in good faith).

### 6.    Actual Confusion: S10 Entertainment's Consumers Were Not Confused and There is No Evidence of Actual Confusion Amongst Customers or Potential Customers

In considering evidence of actual confusion, courts focus on the relevant consuming public, i.e., actual or likely consumers for S10 Entertainment's specialized services. *Machine Head*, 2001 WL 1747180 at *10-11. "[A] handful of examples of anecdotal confusion are insufficient to support a finding of confusion." *Stonefire*, 987 F. Supp. 2d at 1054. Rather, the law demands "a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1042 (C.D. Cal. 1998) (quoting McCarthy of Trademarks, § 23:14).

The undisputed evidence demonstrates that actual consumers for S10 Entertainment's services were not confused. Anitta contracted for S10 Entertainment's services after the launch of the Samsung Galaxy S10 smartphone ███████████
████████████ SUF ¶ 56. ███████████████████████

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT                    - 16 -                    CASE NO. 2:21-CV-02443-CAS-JPRx

1  ███████████████████████████████████████████████

2  ████████████████████████████████   In the nearly four years since launch of the

3  Galaxy S10, there is no evidence of any actual or potential consumer for S10

4  Entertainment's services believing they were dealing with Samsung or falsely

5  associating S10 Entertainment with Samsung based on the Galaxy S10.

6        Notwithstanding this absence of real-world evidence, S10 Entertainment

7  claims actual confusion in the form of (1) a fatally flawed survey; (2) unverified

8  social media posts; (3) irrelevant Google search results; and (4) statements of three

9  friends and one employee. SUF ¶¶ 109-118. As explained below, this evidence does

10 not reflect cognizable actual confusion as a matter of law, and no reasonable

11 factfinder could find that this factor creates a genuine issue of material fact on the

12 likelihood of confusion question.

### a.    Survey Evidence

14       S10 Entertainment's survey expert offered a biased, unreliable survey that

15 measured consumer recognition of the Galaxy S10 smartphone in the United States,

16 *not* confusion over who puts out or offers S10 Entertainment's services under its S10

17 mark. As set forth in Samsung's Motion to Exclude the Expert Report and Opinions

18 of Mark Keegan, the survey should be excluded, and courts have repeatedly excluded

19 or criticized Keegan's surveys based on similar problems to those seen here.[6]

20       Keegan did not follow the well-accepted *Eveready* format he purports to use

21 and instead (i) surveyed an overly broad universe going far beyond the actual or likely

22 purchasers for S10 Entertainment's specialized services (going so far as to include

23

---

24 [6] *Kudos Inc. v. Kudoboard LLC,* No. 20-CV-01876-SI, 2021 WL 5415258, at *11
(N.D. Cal. Nov. 20, 2021) (survey excluded); *Beyond Blond Prods., LLC v. Heldman*,

25 No. CV205581DSFGJSX, 2021 WL 4860376, at *1 (C.D. Cal. Aug. 13, 2021)
(survey excluded); *vonRosenberg v. Lawrence*, 413 F. Supp. 3d 437, 454 (D.S.C.

26 2019) (survey excluded); *Spangler Candy Co. v. Tootsie Roll Indus., LLC*, 372 F.
Supp. 3d 588, 596 (N.D. Ohio 2019) (survey criticized and given little weight);

27 *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 582 (S.D.N.Y. 2015)
(survey criticized and given little weight).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY      - 17 -      CASE NO. 2:21-cv-02443-CAS-JPRx
JUDGMENT

general consumers who merely listened to popular music in the last year), (ii) did not use marketplace stimuli (i.e., did not show S10 Entertainment's actual "S10" branding and instead used a stimulus of his own making), (iii) needlessly and improperly injected the name "Samsung" into the qualification questions (which biased the results), and (iv) did not actually survey confusion involving the services S10 Entertainment puts out under the "S10" mark and instead simply asked "what company uses the [S10] name you saw?" SUF ¶¶ 127-130. Tellingly, Mr. Keegan's result (26.7%) aligns very nearly with Samsung's own internal survey results for consumer awareness of Galaxy S10 smartphones in the United States from January 2022 (24.7%). SUF ¶¶ 131-132.

If not excluded, Keegan's survey is entitled to little or no weight and creates no genuine issue of material fact. *See, e.g.*, *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1135 (C.D. Cal. 1998), *aff'd*, 296 F.3d 894 (9th Cir. 2002) (according plaintiff's flawed survey little weight and granting summary judgment in defendant's favor); *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 396 (7th Cir.1992) (finding plaintiff's survey failing to replicate marketplace conditions to be "of minimal probative value" and affirming grant of summary judgment in defendant's favor); *Hornady Mfg. Co., Inc. v. Doubletap, Inc*., 746 F.3d 995, 1005-1006 (10th Cir. 2014) (affirming summary judgment of no infringement and according plaintiff's flawed survey little weight); *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1334 (N.D. Ga. 2008) (holding that flawed survey did not create a genuine issue of material fact and granting summary judgment in defendant's favor).

### b.   Social Media, Google Search Results, and Statements of Friends and an S10 Entertainment Employee

S10 Entertainment's other evidence fares no better. As to social media posts, there is no evidence that any of the posts involve *S10 Entertainment's* actual or potential customers, which renders them not relevant to the reverse confusion inquiry here. SUF ¶¶ 122-124; *Machine Head*, 2001 WL 1747180, at *10. Courts in this

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 18 -

CASE NO. 2:21-cv-02443-CAS-JPRX

Circuit have also repeatedly found unverified, unauthenticated social media posts not materially probative of confusion. *See, e.g.*, *Stonefire*, 987 F. Supp. 2d at 1054; *Caryn Mandabach Productions Ltd. v. Sadlers Brewhouse Ltd.*, No. 20-10220, 2021 WL 2497928, at *4 n. 9 (C.D. Cal. May 19, 2021); *Arnold & Richter Cine Technik GmbH & Co*, No. CV 17-7605, 2018 WL 2572853, at *4 (C.D. Cal. Apr. 4, 2018); *Globefill Inc. v. Elements Spirits, Inc.*, No. 2:10-cv-02034, 2016 WL 8944644, at *5 (C.D. Cal. Sept. 20, 2016). Moreover, the location of the users making the posts is unclear and most appear to be from outside the United States. SUF ¶ 109, 123. For example, in the FAC, three of the posts on their face originate from users located in Brazil, Rajasthan (a state in India), and Syria. FAC ¶¶ 58, 60, 61. *See Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 320 (S.D.N.Y. 2000) (confusion of United Kingdom and French consumers irrelevant to ascertaining confusion of U.S. consumers); *see also Caryn Mandabach*, 2021 WL 2497928, at *4 n. 9 (C.D. Cal. May 19, 2021) (relevant standard is "confusion by consumers in the United States").

As to Google search results, "Google is the world's largest search engine" and "[r]easonable consumers understand that when executing a key word search, the results they are presented with originate from thousands of sources, if not more." *Hasbro, Inc. v. Asus Computer Int'l Inc.*, No. CV 11-10437, 2012 WL 13012663, at *9 (C.D. Cal. Mar. 23, 2012). Overlapping search results alone are not probative of a likelihood of confusion. *Bragi GmbH v. OnePlus Tech. (Shenzhen) Co. Ltd.*, C 18-2972, 2019 WL 7212320, at *7 (N.D. Cal. Jan.11, 2019). Here, there is no evidence of *any* consumer encountering a search result for S10 Entertainment believing it to be from or falsely associated with Samsung.

Finally, testimony of friends, family, and employees is insufficient as a matter of law to create a genuine issues of material fact as to actual confusion. SUF 119-121; *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000), holding modified by *Surfvivor*, 406 F.3d 625 (holding evidence of actual confusion from "acquaintances, friends, and family insufficient"). Samsung's marketing efforts for

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT                           - 19 -                    CASE NO. 2:21-cv-02443-CAS-JPRx

the Galaxy S10 all but ended in 2020 with the launch of the Galaxy S20, and in the nearly four years since Samsung launched the Galaxy S10, there is no actual evidence of confusion amongst consumers for S10 Entertainment's services. At the very least, no reasonable factfinder could find that this "evidence" creates a genuine issue of material fact on likelihood of confusion. *Machine Head*, 2001 WL 1747180, at *11 (absence of actual confusion evidence weighed slightly in favor of *no* confusion).

### 7. Likelihood of Expansion: There is No Evidence of Likelihood of Expansion

This factor asks whether the existence of the defendant's allegedly infringing mark is hindering the plaintiff's expansion plans. *Stonefire*, 987 F. Supp. 2d at 1056. When asked about S10 Entertainment's expansion plans, Silverstein responded, ██ ████████████████████████████████████████████████████ ████████████████ SUF ¶ 80. Because S10 Entertainment ███████████████ ████████████ there is no cognizable evidence of expansion, this factor is neutral. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011).

### 8. Strength of the Mark: The Strength of Samsung's Galaxy S10 Mark Does Not Suggest Confusion is Likely

Courts compare the conceptual strength of the senior user's mark to the commercial strength of the junior user's mark. *Lodestar*, 31 F.4th at 1261. Courts are also mindful not to punish a junior user who has invested heavily in a mark while the senior user has invested little. *See J.T. Colby & Co. v. Apple Inc.*, No. 11 CIV. 4060 DLC, 2013 WL 1903883, at *16 (S.D.N.Y. May 8, 2013) *aff'd*, No. 13-2227-CV, 2014 WL 4799139 (2d Cir. 2014) (where a senior user has invested so little that it fails to create an association in the minds of consumers there is "less reason to protect the mark").

Samsung admits that the brand architecture of its Galaxy S-series smartphone is widely known and recognized among consumers. SUF ¶¶ 9-10. Samsung also admits that S10 Entertainment's "S10" mark is arbitrary in the context of the specialized

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
- 20 -
CASE NO. 2:21-cv-02443-CAS-JPRx

services it provides. The balance of the *Sleekcraft* factors weigh decidedly in Samsung's favor, and no reasonable factfinder could conclude that there is a likelihood of confusion or that this factor creates a genuine issue of material fact on the reverse confusion question. *Lodestar*, 31 F.4th at 1261 (holding that strength of the mark and intent weighed in favor of a likelihood of confusion but were "overwhelmingly offset by the fact that consumers encounter the trademarks differently in the marketplace, the companies' marketing efforts [were] concentrated in different media, and Lodestar presented no evidence of actual confusion among consumers of its products"); *JL Beverage Co.*, 815 F. App'x at 113. Moreover, assigning limited relative weight to this factor in the overall likelihood of confusion analysis is particularly appropriate here, because S10 Entertainment has invested limited resources in developing and promoting its S10 mark, even neglecting to remove mistags involving various "S10" uses from its Instagram account (e.g., Chevy S-10, Dutch musical artist S10, New York's S10 Fitness). SUF ¶ 110.

### C.   S10 Entertainment's Common Law Unfair Competition Claim Fails as a Matter of Law for Additional Reasons

S10 Entertainment's common law unfair competition claim (Count 4) additionally fails because S10 Entertainment did not plead and cannot establish "passing off," which is not possible here given that Samsung does not offer the services that S10 Entertainment puts out. *E.g., Lodestar Anstalt v. Bacardi & Co. Ltd.*, No. 2:16-cv-06411, 2019 WL 8105378, at *16 (C.D. Cal. July 3, 2019) (Snyder, J.), *aff'd* 31 F.4th 1228; *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) ("The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another."). Moreover, common law unfair competition claims are not recognized for reverse confusion cases where, as here, the parties are not competitors. SUF ¶¶ 77-79; *Trovan, Ltd. v. Pfizer, Inc.*, CV-98-0094, 2000 WL 709149, at *7 (C.D. Cal. May 24, 2000) (holding that California unfair competition common law does not

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 21 -

CASE NO. 2:21-cv-02443-CAS-JPRx

recognize claims for reverse confusion without a showing of competition) Thus, summary judgment is additionally warranted on Count 4.

### D. Samsung Did Not Willfully Infringe

As discussed above, Samsung did not infringe S10 Entertainment's mark, and no reasonable factfinder could conclude otherwise. Moreover, Samsung's good faith conduct precludes any finding of willful infringement. Willful infringement requires "a connection between a defendant's awareness of its competitors and its actions at those competitors' expense" and carries with it a "connotation of deliberate intent to deceive." *MGA Ent. Inc. v. Harris*, No. 220CV11548JVSAGRX, 2022 WL 4596697, at *17 (C.D. Cal. July 29, 2022) (internal quotation marks and citation omitted); *see also Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074 (9th Cir. 2015) (same). The "primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1046 (D. Or. 2008) (quoting *SRI Int'l, Inc. v. Advanced Tech. Labs.*, 127 F.3d 1462, 1464–65 (Fed.Cir.1997)).

Here, Samsung and S10 Entertainment are not competitors, and there is no evidence that Samsung had any intent to trade on the goodwill of S10 Entertainment. To the contrary, Samsung's Galaxy S10 is the 10th-generation smartphone in the Galaxy S-series, and Samsung selected the Galaxy S10 name because consumers already recognized and understood Samsung's Galaxy S naming convention (including that "S10" was part of the family), *not* because of any awareness of S10 Entertainment or desire to trade on its goodwill. SUF ¶¶ 9-10, 12. *See Girl Scouts of the U.S.A. v. Boy Scouts of Am.*, No. 18 CIV. 10287 (AKH), -- F.Supp.3d ---, 2022 WL 1047583, at *9 (S.D.N.Y. Apr. 7, 2022*)* (evidence that a defendant adopted marks related to other of its marks weighs in favor of a finding of good faith). As the unrebutted report of Professor Greg Carpenter explains, United States consumers have long associated the Galaxy S-series of smartphones with Samsung, and "based

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 22 -

CASE NO. 2:21-cv-02443-CAS-JPRx

on that knowledge, consumers anticipated future yet-unannounced Galaxy S-series models, including an 'S10' model, as part of Samsung's Galaxy S-series of smartphones prior to July 2017 and years before." SUF ¶¶ 9-10. Thus, Samsung had sound—and correct—reason to believe it had the right to name the next model in the series the Samsung Galaxy S10, particularly given consumers' association of the Galaxy S-series and its sequentially increasing naming convention with Samsung. *Cf. J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463 (Fed. Cir. 1991) (discussing family of marks).

## E. S10 Entertainment Preserved Only Disgorgement as a Monetary Remedy and Disgorgement is Not Available in This Case

In responding to Samsung's interrogatory calling for the legal and factual basis for any damages theories it was pursuing, S10 Entertainment did not disclose *any* theories, facts, or computations, and instead stated it "will disclose its damages theories and calculations, in connection with expert disclosures." SUF ¶ 132. The only theory of monetary recovery and computation disclosed in expert disclosures was disgorgement based on unjust enrichment. SUF ¶ 133. Thus, all other monetary remedies have not been maintained. *See* Fed. R. Civ. P. 26(a), 37(c).[7] And any "enrichment" to Samsung from use of "S10" was based on Samsung's own investment in its Galaxy S family of marks, and disgorgement should not be available under these facts as a matter of law.

The Lanham Act authorizes an award of defendant's profits "subject to the principles of equity." *See* 15 U.S.C. § 1117(a); *Oculu, LLC*, 2015 WL 3619204, *20.

---

[7] To the extent S10 Entertainment intends to seek at trial damages relating to corrective advertising or reputational harm, as it raised on the parties' meet and confer, Samsung will file a motion *in limine* to exclude evidence or argument relating to such undisclosed and forfeited damages theories pursuant to Federal Rules of Civil Procedure 26(a) and 37(c). *See, e.g., JL Beverage Co., LLC v. Beam, Inc.*, No. 2:11-cv-00417, 2017 WL 3666302, at *3-4 (D. Nev. Aug. 24, 2017); *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 251 F.Supp.3d 1288, 1308-09 (N.D. Cal. 2017); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 2011 WL 13127349, at *10 (C.D. Cal. Sept. 15, 2011).

Disgorgement of defendant's profits is an equitable remedy, *Fifty-Six Hope Rd.*, 778 F.3d at 1075 ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal."), and is permitted only to the extent it "constitute[s] compensation and not a penalty," 15 U.S.C. § 1117(a). Moreover, "the Lanham Act does not entitle plaintiffs to windfalls," *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460 (9th Cir. 2020); *see also Fifty-Six Hope Road Music*, 778 F.3d at 1077.

As McCarthy makes clear, "Because in a reverse confusion case the infringer is not seeking to take away the plaintiff's customer through confusion, awarding the plaintiff the profits of an infringer is *not a proper basis for recovery*." McCarthy § 23:10 (emphasis added). Thus, as the 7th Circuit has recognized, reverse confusion cases, at best, "present meager justification for profit awards." *Fabick, Inc. v. JFTCO, Inc.*, 944 F.3d 649, 659 (7th Cir. 2019) (affirming summary judgment that plaintiff in reverse confusion case could not recover defendant's profits); *see also Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9028123, at *2 (N.D. Cal. Dec. 16, 2015) ("An intent to exploit an existing mark 'is necessarily absent in a reverse confusion case . . .  Novadaq correctly notes that this court's interpretation generally shields defendants in reverse confusion cases from having to disgorge their profits."); *Oculu, LLC*, 2015 WL 3619204, at *20.

Since *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020), Samsung recognizes that at least one court in this district has found disgorgement potentially available in reverse confusion cases. *Thrive Natural Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091, 2021 WL 4813257, at *5 (C.D. Cal. Oct. 6, 2021). But as that court acknowledged, *Romag* has no discussion of the propriety of disgorgement in a reverse confusion context, *id.*, and the court did not address whether allowing for the recovery of profits in a reverse confusion context was inconsistent with the underlying statutory rationale for disgorgement. Thus, this unpublished opinion is not persuasive here.

In this case, particularly given Samsung's prior investment in and creation of

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT
- 24 -
CASE NO. 2:21-cv-02443-CAS-JPRx

the Galaxy S family of marks, Samsung was not unjustly enriched by virtue of its use of "S10" in connection with promoting and selling its next generation product in the series to fundamentally different consumers in fundamentally different channels compared to the specialized services that S10 Entertainment offers. *Cf. Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004) ("[T]he remedy of disgorgement only arises where a prior relationship between the parties subject to and benefitting from disgorgement originally resulted in unjust enrichment."). Any benefit to Samsung involving the alleged wrongdoing stems from goodwill Samsung itself created, not from the goodwill or brand equity of S10 Entertainment. SUF ¶ 9-10. Where, as here, the defendant is in good faith using the next designation in a well-established series of products whose creation started seven years before the plaintiff even existed, it would be inequitable and contrary to the Ninth Circuit prohibition against "windfalls" and Section 1117(a)'s requirement that any award of damages "*shall* constitute compensation and not a penalty." (emphasis added). Disgorgement should not be allowed here as a matter of law. *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968); *A& H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, No. CIV.A. 94-CV-7408, 2002 WL 27735 (E.D. Pa. Jan. 9, 2002).

## V.   **CONCLUSION**

For the foregoing reasons, Samsung respectfully requests summary judgment on all counts of S10 Entertainment's FAC and a finding that as a matter of law Samsung was not a willful infringer and that no disgorgement or other monetary remedies are available.

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 25 -

CASE NO. 2:21-cv-02443-CAS-JPRx

1   Dated: December 23, 2022     Respectfully submitted,

2                        **FAEGRE DRINKER BIDDLE & REATH LLP**

3

4                        By:   */s/ Christopher J. Burrell*      

5                           David J.F. Gross

6                           James R. Steffen (*pro hac vice*)
                          *james.steffen@faegredrinker.com*

7                           Lauren W. Linderman (SBN 280809)
                          *lauren.linderman@faegredrinker.com*

8                           2200 Wells Fargo Center
                          90 S. Seventh Street

9                           Minneapolis, Minnesota 55402
                          Telephone:     +1 612 766 7000

10

11                           Christopher J. Burrell (*pro hac vice*)
                          *christopher.burrell@faegredrinker.com*

12                           Katlyn M. Moseley (*pro hac vice*)
                          *katlyn.moseley@faegredrinker.com*

13                           1500 K Street NW, Suite 1100
                          Washington, D.C. 20005

14                           Telephone:     +1 202 842 8800

15                           Louis T. Perry (*pro hac vice*)
                          *louis.perry@faegredrinker.com*

16                           300 N. Meridian Street, Suite 2500
                          Indianapolis, Indiana 46204

17                           Telephone:     +1 317 237 0300

18                           Attorneys for Defendants
                          Samsung Electronics Co., Ltd., and Samsung

19                           Electronics America, Inc.

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES
ISO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

- 26 -

CASE NO. 2:21-cv-02443-CAS-JPRx

# CERTIFICATE OF SERVICE

I, Christopher J. Burrell, declare that on **December 26, 2022**, I caused the foregoing Defendants' Notice Of Motion And Motion For Summary Judgment to be served on the interested party(ies) in this action as follows:

**DEFENDANTS' CORRECTED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF**

☐ **BY EMAIL:** by transmitting via e-mail or secure file transfer the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Andrew D. Skale
*adskale@mintz.com*
Matthew C. Hurley
*mchurley@mintz.com*
Michael R. Graif
*Mrgraif@mintz.com*
Geoffrey A. Friedman
*gafriedman@mintz.com*
James J. Thomson
*jjthomson@mintz.com*
Oliver Ennis
*ofennis@mintz.com*
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel.  (858) 314-1500

Matthew Novian
*mjnovian@mintz.com*
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
2029 Century Park East, Ste 3100
Los Angeles, CA 90067
Tel.  (310) 586-3200

Executed on **December 26, 2022**.

*/s/ Christopher J. Burrell*
Christopher J. Burrell