# REDACTED

## DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL COUNTERSTATEMENT OF UNDISPUTED FACT

## Redacted Version of Document Proposed to be Filed Under Seal

1  **FAEGRE DRINKER BIDDLE & REATH LLP**
David J.F. Gross (SBN 290951)
2  *david.gross@faegredrinker.com*
1950 University Avenue, Suite 450
3  East Palo Alto, California 94303
Telephone:  +1 650 324 6700
4  Facsimile:   +1 650 324 6701

5  **MOORE RUDDELL LLP**
Howard D. Ruddell (SBN 281510)
6  *hruddell@mooreruddell.com*
21250 Hawthorne Blvd., Suite 500
7  Torrance, California 90503
Telephone:  +1 310 792 7010
8  Facsimile:   +1 323 530 1113

9  *[additional counsel listed on signature page]*

10  *Attorneys for Defendant/Counterclaimant*
Samsung Electronics Co., Ltd., and *Defendant*
11  Samsung Electronics America, Inc.

12                **UNITED STATES DISTRICT COURT**

13               **CENTRAL DISTRICT OF CALIFORNIA**

14

15  | | |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC, | Case No. 2:21-cv-2443-CAS-JPR |
| Plaintiff, | **DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL COUNTERSTATEMENT OF UNDISPUTED FACT** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC., | Date: January 23, 2023 |
| Defendants. | Time: 10:00 a.m. |
| | Hon Christina A. Snyder |
| | Courtroom: 8D, 350 W. First Street |
| SAMSUNG ELECTRONICS CO., LTD., | |
| Counterclaimant/ Defendant, | Counterclaim Filed:  August 3, 2021 |
| v. | FAC Filed:  July 20, 2021 |
| S10 ENTERTAINMENT & MEDIA LLC, | Complaint Filed:  March 19, 2021 |
| Counterclaim Defendant/Plaintiff. | |

Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-2, submit this Statement of Genuine Disputes of Material Fact and Counterstatement of Undisputed Facts in support of Samsung's Opposition to Plaintiff's Motion for Partial Summary Judgment.

## STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
| --- | --- |
| 1. Plaintiff S10 Entertainment & Media, LLC ("S10 Entertainment") was formed in 2017 and began using 'S10' in commerce that year. | Undisputed.<br><br>Samsung further states that S10 Entertainment's registration for the mark "S10" claims a first use date of August 23, 2017 in connection with "Entertainment services, namely, recording, production and post-production services in the field of music and music videos; organizing events featuring live musical performances, producing and distributing digital content in the field of music" in Class 41. *See* Ex. 19 (Dkt. 91-22) at 2. |
| 2. Brandon Silverstein, S10 Entertainment's President and CEO, named the company 'S10' in reference to his birthday, September 10. | Undisputed |
| 3. S10 Entertainment is engaged in talent management services, as well as, running its own record label and production company in the music industry. | Undisputed as to "talent management services."<br><br>Disputed and immaterial as to "running its own record label and production company in the music industry." The cited document states that S10 Entertainment was founded in 2017 "**with a mission of becoming** a full-service talent management company for the purpose of managing, promoting, |

1

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | publishing and producing the music" of artists. Graif Decl. Ex. 4 (Dkt. 91-7) (emphasis added). The cited document also states that S10 Entertainment "quickly grew to represent a well-known, emerging **talent management company** in the music industry." *Id.* (emphasis added). The cited document therefore does not support the statement that S10 Entertainment is currently operating a record label or music production company or explain what S10 Entertainment means by a "record label" or a "production company" in the music industry. Thus, this statement does not materially alter the *Sleekcraft* analysis.<br><br>But even accepting this fact as true, it does not materially alter the *Sleekcraft* analysis because, insofar as there is cognizable evidence that a |

2

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
|  | reasonable factfinder could credit relating to these services, the nature of music publishing activities or recording activities as reflected in the record do not materially change the nature of S10 Entertainment's services, its marketing channels, or its target consumers as compared to such items involving its talent management business.  Therefore, this fact is immaterial to entry of summary judgment in Samsung's favor, as requested in Samsung's motion for summary judgment (Dkt. 98-1). |
| 4.  S10 Entertainment is the owner of United States Trademark Registration 5,909,315, for the standard character mark 'S10' (the "S10 Mark"). | Undisputed. Samsung admits that S10 Entertainment is the owner of U.S. Trademark Reg. No. 5,909,315, for the standard character mark 'S10' in connection with the following goods and services:<br><br>**Class 025**: Clothing, namely, t-shirts, hooded pullovers and sweatshirts;<br><br>**Class 035**: Management of performing artists; Artist representation and artist management services, namely, management and administration of contract negotiation, and organization and execution of contract tours and appearances; Business marketing for recording and performing artists;<br><br>**Class 041**: Entertainment services, namely, recording, production and post-production services in the field of music and music videos; organizing events featuring live musical performances, producing and distributing digital content in the field of music.<br>*See* Graif Decl. Ex. 19 (Dkt. 91-22) at 2. |

3

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| 5. S10 Entertainment filed its application for the S10 Mark on May 18, 2018 and on November 12, 2019, the S10 Mark was registered to S10 Entertainment. | Undisputed |
| 6. The S10 Mark is an arbitrary mark, as it does not convey any of the characteristics of the product or services provided by S10 Entertainment. | Undisputed |
| 7. Defendants Samsung Electronics America ("SEA") and Samsung Electronics Co., Ltd. ("SEC"), collectively ("Samsung") launched the Galaxy S10 phone ("S10 phone") on February 20, 2019 and began using the S10 Mark in commerce on that date. | Disputed as to the characterization of the "S10 phone" and use of the "S10 Mark." Samsung admits that it launched its Galaxy S10 line of smartphones on February 20, 2019. Samsung denies that it began using the "S10 Mark" on that date and further disputes S10 Entertainment's characterization of the device as the "S10 phone." Samsung has never marketed or sold any products using the standalone designation "S10." Moseley Decl. Ex. A at 180:9-181:1. Moreover, as set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S family of marks. D.I. 45 ¶¶ 13-19. The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an |

4

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | awareness of Samsung's Galaxy S-series brand as indicating a common source of origin in Samsung since prior to July 2017. Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of "S10" as August 23, 2017). |
| 8. The earliest date that S10 Entertainment could have been aware of Samsung's use of the S10 Mark was on February 20, 2019 at the Launch Event. | Disputed.<br><br>S10 Entertainment learned of Samsung's upcoming use of an "S10" designation in connection with a smartphone ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████ Moseley Decl. Ex. B at 45:3-52:13, and Ex. C.<br><br>Silverstein admits ███████████████ ██████████████████████ Moseley Decl. Ex. B at 51:13-21.<br><br>Samsung also does not use the "S10 Mark," as defined by S10 Entertainment. As set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S family of marks. D.I. 45 ¶¶ 13-19. The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an awareness of Samsung's Galaxy |

5

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | S-series brand as indicating a common source of origin in Samsung since prior to July 2017. Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of "S10" as August 23, 2017). |
| 9. Samsung ▮▮▮▮▮ ▮▮▮▮▮ but ultimately selected 'S10.' | Disputed. The documents cited do not support the statement that Samsung selected 'S10' as the name for its tenth generation Galaxy smartphone, but rather that Samsung selected the name "Samsung Galaxy S10" for its for its tenth-generation smartphone. Graif Decl. Ex. 1 (Dkt. 119-2) at pp. 5-7; *see also* Moseley Decl. Ex. A at 180:3-21 (testifying that Samsung selected the name "Samsung Galaxy S10" for its tenth generation of smartphones). <br><br> Samsung further notes that S10 Entertainment's own expert witnesses acknowledged that the name of the accused product is "Galaxy S10" or "Samsung Galaxy S10." Graif Decl. Ex. 14 (Dkt. 119-09) at p. 2 (opening report of Doug Bania referring to the accused product as the "Galaxy S10"); Dkt. 91-21 at ¶ 2 (opening report of Mark Keegan noting that "Samsung launched a line of smartphones using the name 'Galaxy S10'"); Graif Decl. Ex. 15 (Dkt. 119-10) at ¶ 42 (opening report of Cassie Petrey referring to the accused product as "the Samsung Galaxy S10 smartphone."). <br><br> Samsung also notes that, as set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S |

6

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | family of marks. D.I. 45 ¶¶ 13-19. The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an awareness of Samsung's Galaxy S-series brand as indicating a common source of origin in Samsung since prior to July 2017. Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of "S10" as August 23, 2017). Moreover, Samsung adopted the Galaxy S10 name in good faith. (*See infra* ¶¶ 126, 127.) |
| 10. Some media outlets speculated that Samsung would not name its tenth generation Galaxy smartphone the 'S10'. | Undisputed.<br><br>But Samsung further notes that the article cited in Exhibit 44 is dated July 16, 2018, is titled "Samsung Galaxy S10 release date, price, specs and rumors," and refers to Samsung's upcoming tenth generation smartphone as the "Galaxy S10" or "Samsung Galaxy S10" *no less than fifty times*. Ex. 44 (Dkt. 91-47). |
| 11. Samsung's business, relevant to this lawsuit, is primarily in the production and sale of consumer devices, including mobile phones. | Disputed insofar as this contention is not clear what S10 Entertainment means by "production." Samsung does not dispute that SEC designs, manufactures, and distributes smartphones, including Galaxy S-series Galaxy S10 smartphones. It is also not clear what S10 Entertainment means by "primarily" and "including mobile phones." The accused product is the Samsung Galaxy S10 smartphone, and the additional products directly relevant to this case are Samsung's additional Galaxy S-series smartphones. |

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| 12. Samsung used the S10 Mark in association with the marketing and sale of its tenth generation Galaxy phones starting on February 20, 2019. | Disputed as to use of the "S10 Mark." <br><br> The document cited does not support the statement that Samsung used "the S10 Mark" in association with the marketing and sale of its tenth generation Galaxy S smartphone. Samsung used the mark "Galaxy S10" in connection with the marketing and sale of its tenth generation Galaxy smartphone beginning on February 20, 2019. *See* Graif Decl. Ex. 1 (Dkt. 119-02). <br><br> Moreover, as set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S family of marks. D.I. 45 ¶¶ 13-19. The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an awareness of Samsung's Galaxy S-series brand as indicating a common source of origin in Samsung since prior to July 2017. Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of "S10" as August 23, 2017). |
| 13. S10 Entertainment was the first to use the S10 Mark in commerce, starting in 2017. | Disputed. As set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S family of marks. D.I. 45 ¶¶ 13-19. The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series |

8

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an awareness of Samsung's Galaxy S-series brand as indicating a common source of origin in Samsung since prior to July 2017. Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of "S10" as August 23, 2017). |
| 14. S10 Entertainment did not license or otherwise give Samsung permission to use the S10 Mark. | Disputed insofar as "otherwise give permission to use the S10 Mark" is intended to deny Samsung's affirmative defenses of laches and estoppel. Samsung's affirmative defenses of laches and estoppel bar S10 Entertainment's claims in this suit. |
| 15. In 2019 alone, Samsung spent ▉▉▉▉ marketing the S10 smartphone. | Disputed as to characterization of "S10 smartphone." Samsung promoted its Galaxy S10 smartphones using a brand architecture that incorporated the master brand, Samsung, and the Galaxy subbrand with "remarkable consistency." Graif Decl. Ex. 17 (Dkt. 119-12) ¶ 103; *see also* Moseley Decl. Ex. E. Samsung further states that the vast majority of its marketing for the Galaxy S10 smartphone occurred in 2019 and ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Moseley Decl. Ex. F, SAMSUNG 00113867. |
| 16. In marketing the S10 phone, Samsung used promotions by musical artists, music events, and music streaming platforms. | Disputed as to characterization of the "S10 phone." *See supra* ¶¶ 7, 9, 12. Samsung further states that musical artists who promoted the Galaxy S10 smartphone include S10 Entertainment's artist Normani. Specifically, |

9

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | Normani promoted the Galaxy S10 in connection with the Happy Galaxy Day event, posting a photo from the event to her social media account using a Galaxy S10 smartphone with the hashtag #teamgalaxy. Moseley Decl. Ex. G. at Ex. B. ██████████████████ Moseley Decl. Ex. H at 101:9-105:2; Moseley Decl. Ex. I. |
| 17. Starting with the Unpacked Event on February 20, 2019, in which Samsung first revealed the S10 phone to the public, Samsung emphasized the 'entertainment' and 'music' aspects of the phone. | Disputed as to "emphasized the 'entertainment' and 'music' aspects of the phone" and characterization as the "S10 phone." Samsung's announcement of the Galaxy S10 smartphone at the Unpacked Event introduced many innovations and features for Samsung's Galaxy S10 smartphones, including the "revolutionary" new Infinity O-Display on AMOLED, the embedded ultrasonic fingerprint scanner, cutting-edge camera technology, new ultra-wide camera, 5G, and many other features. Ex. 45 (Dkt. 91-48) at pp. 11-17. Samsung further disputes S10 Entertainment's characterization of Samsung's Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7, 9, 12. |

10

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| 18. The script for the Unpacked Event stated that: "[f]or ten years, our smartphones have kept you connected. They've helped you be more productive. And they've kept you entertained." The script went on to say that, "[t]en years ago, when we introduced the first Galaxy S, it had a class-leading 512MB of RAM and 16GB of internal storage. A lot has changed since then.  Now, we play console-quality games, shoot videos in 4K, and keep all of our music and photos solely on our smartphones." | Undisputed.<br><br>Samsung further states that, in context, the quoted script served to highlight the storage capacity of the Galaxy S10+, not its music playing capabilities: "Now, we play console-quality games, shoot videos in 4K, and keep all of our music and photos solely on our smartphones. So along the way, we've worked continuously to bring Galaxy users more power and more storage. And today, with the Galaxy S10+, you can get up to 12GB of RAM and one terabyte of base storage. That's laptop level storage without the laptop." Ex. 45 (Dkt. 91-48) at pg. 19. |
| 19. Samsung negotiated deals with both YouTube and Spotify for their applications to be included on the S10 phone and advertised special offers, in the form of free subscriptions to consumers, to promote the S10 phone. Samsung negotiated to make Spotify its primary music partner and pre-loaded the S10 phone with | Disputed as to S10 Entertainment's characterization of the Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7,9,12.<br><br>Samsung further states that the YouTube application has been included on Samsung's Galaxy S series smartphones since the original Galaxy S was introduced in 2010.  Graif Decl. Ex. 7 (Dkt. 119-05) at 137:10-17. |

11

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| the music streaming application prior to sale | |
| 20. S10 Entertainment's artists are featured on Spotify, and S10 Entertainment's artist Anitta, reached Spotify's number one spot for most streams. | Undisputed |
| 21. Samsung employees consider music ■■■■■ ■■■■■■■■■■ | Undisputed |
| 22. A Samsung internal document entitled 'Music Marketing December 2015' states that: ■■■■■■■■■■■■ | Undisputed |

12

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

███ NLY

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| ████████████ | |
| 23. The same document contains a slide answering the question, "███████████████████████████████████" | Undisputed |
| 24. Smartphones have become one of the primary ways that consumers access and listen to music, especially younger demographics. | Disputed but immaterial. The cited document does not support the statement that smartphones "have become one of the primary ways that consumers access to and listen to music." ████████████████████████ Graif Decl. Ex. 47 (Dkt. 119-14) at SAMSUNG_00011347. This fact, however, is not material to the dispute. Even accepting this contention as true, it does not materially alter the *Sleekcraft* analysis. In particular, it does not alter the nature of the good (Galaxy S10 smartphone) that Samsung marketed and sold involving an "S10" designation, and, because this is a reverse confusion case, the question of the relevant consumers involves the consumers for S10 Entertainment's services, not Samsung's. Thus, this contention does not affect summary judgment in |

13

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1).<br><br>. |
| 25. Samsung marketing for its S series phones, including the S10 phone, ███████████. | Disputed but immaterial. The cited evidence does not support the statement that Samsung's marketing for the Galaxy S10 smartphone ████████ ███████. However, this fact is immaterial for purposes of responding to S10 Entertainment's motion for summary judgment.<br><br>Moreover, even accepting this contention as true, it does not materially alter the *Sleekcraft* analysis. In particular, because this is a reverse confusion case, the question of the relevant consumers involves the consumers for S10 Entertainment's services, not Samsung's. Thus, this contention does not affect summary judgment in Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1).<br><br>Disputed as to S10 Entertainment's characterization of the Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7,9,12. |
| 26. Samsung has stated, however, that its marketing is intended for all consumers. | Undisputed. |

14

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| 27. Samsung ███████ ████████████████ ██████████████ █████ | Disputed as to ███████████ but immaterial. The cited document ████████████████████ ████████████████████████ ████████████ However, this fact is immaterial for purposes of responding to S10 Entertainment's motion for summary judgment.<br><br>Moreover, even accepting this contention as true, it does not materially alter the *Sleekcraft* analysis. In particular, because this is a reverse confusion case, the question of the relevant consumers involves the consumers for S10 Entertainment's services, not Samsung's. Thus, this contention does not affect summary judgment in Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1). |
| 28. From March of 2019 to March of 2022, Samsung has made ███████ in gross sales of the S10 phone in the United States with incremental profits between ███████ and ███████. | Disputed and immaterial. Even accepting these contentions as true, they are not relevant to the *Sleekcraft* analysis and do not affect summary judgment in Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1).<br><br>Disputed as to S10 Entertainment's characterization of the Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7,9,12. |
| 29. Samsung's 'S10' word Mark is identical to S10 Entertainment's 'S10' Mark. | Disputed. The cited materials do not support the statement that "Samsung's 'S10' word Mark is identical to S10 Entertainment's S10 Mark," and under the correct legal test, no reasonable factfinder could conclude otherwise. Samsung uses the designation "S10" in connection |

15

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | with the house brand SAMSUNG and the subbrand GALAXY. Exhibit 17 states that Samsung's use of "S10" appears in close proximity to both "Samsung" and Galaxy." Graif Decl. Ex. 17 (Dkt. 119-12) at ¶ 96. Additionally, Exhibit 15 refers to Samsung's smartphone as "the Samsung Galaxy S10 smartphone." Graif Decl. Ex. 15 (Dkt. 119-10) at ¶ 42.<br><br>Samsung further states that consumers understand Samsung's brand architecture as indicating source in Samsung and further understand that the "10" in "Samsung Galaxy S10" signaled that, at the time it was released, the Samsung Galaxy S10 smartphone was the latest smartphone in Samsung's Galaxy S series line of smartphones. Moseley Decl. Ex. D ¶¶ 42-44. |
| 30. S10 Entertainment uses a black background and yellow font when using the S10 Mark in its homepage. | Undisputed. |
| 31. Samsung similarly used this same colorway on the packaging of some S10 phones, which were sold abroad, but displayed and reviewed on YouTube cannels available to U.S. consumers. | Disputed as to "used this same colorway." In the United States, Samsung's Galaxy S10 line of smartphones were available to consumers in White, Black, Blue, Pink, Ceramic Black, and Ceramic White. Moseley Decl. Ex. K, SAMSUNG_00018323-SAMSUNG_00018369 at SAMSUNG_00018335-36. Samsung's Galaxy S10 line of smartphones was not sold in the United States in yellow. *Id.*<br><br>Samsung further notes that there is no evidence of |

16

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | U.S. consumers for Samsung's Galaxy S10 smartphones viewing the video to which the Opening Report of Cassie Petrey points. Thus, this contention is immaterial to the likelihood of confusion analysis and does not affect summary judgment in Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1).<br><br>Disputed as to S10 Entertainment's characterization of the Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7,9,12. |
| 32. S10 Entertainment uses the S10 Mark in connection with its social media marketing | Undisputed |
| 33. Samsung used the S10 Mark to promote its phone in connection with its promotional efforts at the South by Southwest ("SXSW") concert and convention. | Disputed as to "used the S10 Mark." Samsung states that it used the mark Samsung Galaxy S10 to promote the Galaxy S10 smartphone. *See supra* ¶¶ 7,9,12.<br><br>Samsung further states that as set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S family of marks. D.I. 45 ¶¶ 13-19. The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an awareness of Samsung's Galaxy |

17

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | S-series brand as indicating a common source of origin in Samsung since prior to July 2017. Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of "S10" as August 23, 2017).<br><br>This contention is also immaterial because it does not support a reverse confusion theory of infringement, which requires assessing whether reasonably prudent consumers for S10 Entertainment's services, encountering S10 Entertainment's mark or offerings would believe they come from or are associated with Samsung. Thus, this contention does not affect summary judgment in Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1). |
| 34. S10 Entertainment's expert, Mark Keegan, conducted an Eveready survey to assess the likelihood of confusion in this case. | Disputed. Mr. Keegan's survey did not follow the standard *Eveready* format, did not survey reverse confusion, and is not a reliable indicator of likelihood of confusion. *See* D.I. 95-4. |
| 35. The results of Mr. Keegan's survey showed a 26.7% confusion rate. | Disputed. Mr. Keegan's survey did not follow the standard *Eveready* format, did not survey reverse confusion, and is not a reliable indicator of likelihood of confusion. D.I. 95-4. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| 36. Samsung did not provide a survey on the likelihood of confusion in this matter. | Undisputed |
| 37. Samsung took the deposition of non-party witness Joshua Klein on July 8, 2022. | Undisputed |
| 38. At his deposition, Mr. Klein testified that he was confused after seeing a Samsung advertisement for the S10 phone and contacted Brandon Silverstein at S10 Entertainment. | Disputed and immaterial. At his deposition, Mr. Klein testified that he was not confused as to the source of S10 Entertainment's services.  Moseley Decl. Ex. L at 96:12-21.  Specifically, when asked if he thought "that Samsung was offering S10 Entertainments services," Mr. Klein testified that he "didn't think Samsung was offering talent management services or publishing records."  When asked why he found the question funny, he testified "it's funny because they're a tech company."  *Id.* <br><br> Samsung further states that Mr. Klein testified that he considers Silverstein a friend. *Id.* at 66:2-4. <br><br> This contention is immaterial because it does not support a reverse confusion theory of infringement, which requires assessing whether reasonably prudent consumers for S10 Entertainment's services, encountering S10 Entertainment's mark or offerings would believe they come from or are associated with Samsung. Thus, this contention does not affect summary judgment in Samsung's favor being |

19

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1).<br><br>Disputed as to S10 Entertainment's characterization of the Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7,9,12. |
| 39. Samsung took the deposition of non-party witness Tim Blacksmith on July 7, 2022. | Undisputed. |
| 40. At his deposition, Mr. Blackmsith testified that he was confused after seeing a Samsung advertisement for the S10 phone and contacted Brandon Silverstein at S10 Entertainment. | Disputed and immaterial.  Mr. Blacksmith testified that he was not confused as to the source of S10 Entertainment's services. Moseley Decl. Ex. M at 64:24-65:3. When asked if he "ever believed that Samsung was the owner or otherwise responsible for the services offered by S10 Entertainment," Mr. Blacksmith testified "No. I did not." Moseley Decl. Ex. M at 64:24-65:3.<br><br>Samsung further states that Mr. Blacksmith attended Silverstein's wedding and testified that he considers Silverstein a friend. Moseley Decl. Ex. At 259:5-6; Moseley Decl. Ex. M 35:13-16, 36:16-23.<br><br>This contention is immaterial because it does not support a reverse confusion theory of infringement, which requires assessing whether reasonably prudent consumers for S10 Entertainment's services, encountering S10 Entertainment's mark or offerings would believe they come from or are associated with Samsung. Thus, this contention does not affect summary judgment in Samsung's favor being |

20

FAEGRE DRINKER BIDDLE & REATH LLP<br>ATTORNEYS AT LAW<br>EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1).<br><br>Disputed as to S10 Entertainment's characterization of the Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7,9,12. |
| 41. S10 Entertainment maintains social media accounts, including Instagram and Twitter. S10 Entertainment's Instagram 's10' has existed since 2017. | Undisputed |
| 42. S10 Entertainment uses social media to promote its business and/or represented artists. | Undisputed that S10 Entertainment uses social media.<br><br>Samsung further responds that S10 Entertainment's purported social media expert, Cassie Petrey, when asked if she drew "any conclusions about differences between Samsung's use of its social media account compared to S10 Entertainment's use of its social media account," testified "They use them differently presumably because they're marketing – one is marketing electronics. The other is marketing services and products that they have in the music industry." Moseley Decl. Ex. N at 141:11-20. |
| 43. Followers and/or viewers of S10 Entertainment's social media accounts have responded to posts made by S10 Entertainment with pictures of Samsung phones | Disputed and immaterial. The cited evidence does not support the statement that "Followers and/or viewers of S10 Entertainment's social media accounts have responded to posts made by S10 Entertainment with pictures of Samsung phones and/or comments about Samsung." |

21

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| and/or comments about Samsung. | Exhibits 23 and 41-43 are screenshots of messages to an unidentified social media account or responses to an unidentified social media post and are indecipherable. (Dkts. 91-26, 91-44, 91-45, 91-46.)<br><br>Exhibits 24-38 are screenshots of social media posts tagging "S10." S10 Entertainment has not cited any evidence establishing that the tag "S10" was meant or intended as a reference to S10 Entertainment. Samsung also notes that Ex. 36 is a duplicative screenshot of Ex. 30. Exhibits 24, 26, 29, 35, and 37 on their face reflect users located outside of the United States, and the remaining exhibits (with the exception of Exhibit 38) contain no indication of user origin, though many include captions in a variety of languages. (Dkts. 91-27 – 91-41.)<br><br>Exhibits 39-40 are screenshots of social media users responding to Brandon Silverstein's tweet of "S10" and reference Anitta. Petrey testified that, to the extent consumers were aware of Anitta's prior partnerships with Samsung, they could have actual associations between her and Samsung. (Dkts. 91-42, 91-43.) Moseley Decl. Ex. N, Petrey Dep. Tr. 132:3-7.<br><br>Samsung further states that S10 Entertainment did not take any steps to address this purported confusion, including removing the mistags, or exploring potential mitigation options with Samsung such as a joint press release. Moseley Decl. Ex. O at ¶¶ 29, 30, 33.<br><br>Finally, Samsung notes that S10 Entertainment |

22

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | conducted no discovery on these posts, did not verify who made them or where the user making them was located, and did not obtain information on what the users meant by their posts, comments, or tags. Thus, this evidence is immaterial to the *Sleekcraft* analysis, because, based on the evidence of record that a reasonable factfinder can assess or credit, it is not probative of reverse confusion involving S10 Entertainment's actual or prospective consumers. |
| 44. Samsung used social media marketing, including Instagram and Twitter, to promote the S10 phone. | Disputed as to characterization of Samsung's Galaxy S10 smartphone as "the S10 phone." *See supra* ¶¶ 7, 9, 12. |
| 45. Samsung's authorized resellers used the S10 Mark in advertising and promotion of Samsung's S10 phone. | Disputed as to characterization of Samsung's Galaxy S10 smartphone as to "the S10 phone" and "used the S10 Mark." *See supra* ¶¶ 7, 9, 12.<br><br>Samsung further states that as set forth in SEC's counterclaim (D.I. 45), Samsung has priority of use in the designation "S10" in connection with smartphones by virtue of its ownership of a Galaxy S family of marks. D.I. 45 ¶¶ 13-19.  The unrebutted expert testimony of Professor Gregory S. Carpenter confirms that Samsung created a distinct Samsung Galaxy S-series brand at least as early as July 2017 – prior to the first use date claimed by S10 Entertainment – and that consumers in the United States evidenced an awareness of Samsung's Galaxy S-series brand as indicating a common source of origin in Samsung since prior to July 2017.  Moseley Decl. Ex. D ¶ 42-44; *see also* Ex. 19 (Dkt. 91-22) (identifying S10 Entertainment's first use date of |

23

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | "S10" as August 23, 2017). |
| 46. Samsung marketed the S10 phone using musical artists, musical events, and music streaming platforms. | Disputed as to characterization of Samsung's Galaxy S10 smartphone as "the S10 phone." *See supra* ¶¶ 7, 9, 12. |
| 47. Samsung once provided its own music streaming service called "Samsung Milk Music." | Undisputed |
| 48. Samsung promoted the Galaxy S10 phone by hiring Chloe X Halle, two popular musicians, to appear at a promotion the phone. | Undisputed |
| 49. Other musicians including Ty Dolla $ign, DJ William, and DJ Ruckus also promoted the S10 phone on behalf of Samsung. | Disputed as to characterization of Samsung's Galaxy S10 smartphone as "the S10 phone." *See supra*¶¶ 7, 9, 12.<br><br>Samsung further states that S10 Entertainment's artist Normani promoted the Galaxy S10 smartphone at an event called Happy Galaxy Day in New York City. Graif Decl. Ex. 3 (Dkt. 119-3) at p. 9. |

24

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| 50. Samsung marketed the S10 phone using the Spotify promotion, including the language "get unlimited music with Spotify premium." (emphasis added). | Disputed as to characterization of Samsung's Galaxy S10 smartphone as "the S10 phone." *See supra* ¶¶ 7, 9, 12. |
| 51. Potential customers of S10 Entertainment's services may be dissuaded by the difficulty in properly finding and vetting S10 Entertainment. | Disputed but immaterial. The cited document does not support the statement that "[p]otential consumers of S10 Entertainment's services" may be dissuaded from properly finding and vetting S10 Entertainment. The cited document refers to "people in the music industry" generally, not S10 Entertainment's "potential customers." S10 Entertainment's expert testified that she did not know who S10 Entertainment's potential customers might be and did not investigate S10 Entertainment's potential consumers. Moseley Decl. Ex. N at 64:6-16.

Silverstein, on behalf of S10 Entertainment, ███████████████████████ ███████████████████████ Moseley Decl. Ex. B at 168:6-169:18; Ex. P at 396:9-397:24.

However, this fact is immaterial to S10 Entertainment's motion for summary judgment. Even accepting this contention as true, insofar as there is cognizable evidence that a reasonable factfinder could credit relating to this contention, it does not evidence that the reasonably prudent consumers for S10 Entertainment's services would believe that S10 Entertainment's services come from or are associated with Samsung. Thus, this contention does not affect summary judgment in |

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1). |
| 52. Samsung first became aware of S10 Entertainment on or around November 2018, prior to the launch of the S10 phone. | Disputed as to S10 Entertainment's characterization of Samsung's Galaxy S10 smartphone as the "S10 phone." *See supra* ¶¶ 7, 9, 12. |
| 53. Samsung has stated that it first became aware of S10 Entertainment's S10 Mark on March 19, 2021, when this lawsuit was initiated. | Undisputed. |
| 54. Samsung did not use a successive naming convention for its eleventh, twelfth, and thirteenth generation Galaxy phones, opting instead to skip certain numbers and call them the S20, S21, and S22, respectively | Disputed and immaterial. Samsung admits that it opted to name its eleventh, twelfth, and thirteenth generation Galaxy S smartphones the Galaxy S20, Galaxy S21, and Galaxy S22 but disputes S10 Entertainment's characterization that this naming convention was not "successive," and it continued with Samsung's naming convention that increasing generation identifiers, i.e., 20, 21, or 22, signal that a model is the newer model compared to the previous generation of device. There is also no evidence that the naming convention for the Galaxy S20, Galaxy 21, and Galaxy 22 impacted consumer understandings of the Galaxy S10 naming convention, and this contention is not relevant to the *Sleekcraft* analysis in this case, which involves |

26

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | reverse confusion infringement liability.<br><br>Proof of reverse confusion theory of infringement requires showing that an appreciable number of reasonably prudent consumers for S10 Entertainment's services, encountering S10 Entertainment's mark or offerings would believe they come from or are associated with Samsung. Thus, this contention does not affect summary judgment in Samsung's favor being appropriate as requested in Samsung's motion for summary judgment (Dkt. 98-1). |
| 55. In response to Interrogatories, Samsung stated that S10 Entertainment's "delay" may have "depriv[ed] the Parties of earlier opportunities to discuss the concerns that S10 Entertainment may have had prior to or soon following the Galaxy S10 launch." Samsung also stated that it "suffered evidentiary prejudice given the turnover in its marketing and related departments from early 2019 to the present. For Example, Michelle Engel…left SEA in July 2021, and Derrin | Undisputed |

27

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| Woodhouse…left SEA in March 2019." | |
| 56. Samsung did not subpoena testimony or documents from Michelle Engel or Derrin Woodhouse. | Undisputed |
| 57. Numerous media outlets have publicized S10 Entertainment's success. | Undisputed |
| 58. Thousands of people follow S10 Entertainment's social media accounts. | Undisputed. |
| 59. S10 Entertainment's publishing division ███████ | Disputed but immaterial. There is no evidence in the record that S10 Entertainment's ███████ |

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| | But even accepting this fact as true, it does not materially alter the *Sleekcraft* analysis because, insofar as there is cognizable evidence that a reasonable factfinder could credit relating to these services, the nature of music publishing activities as reflected in the record does not materially change the nature of S10 Entertainment's services, its marketing channels, or its target consumers as compared to such items involving its talent management business. Therefore, this fact is immaterial to entry of summary judgment in Samsung's favor, as requested in Samsung's motion for summary judgment (Dkt. 98-1). |
| 60. S10 Entertainment's customers include artists, current and potential songwriters, music industry professionals, downstream consumers of popular music. ▮▮▮▮▮▮▮▮▮ Some musical artists are teenagers. | Disputed and immaterial as to downstream consumers and sophistication of consumers. The cited evidence is the expert rebuttal report of Cassie Petrey and does not support the statement that S10 Entertainment's customers include "downstream consumers of popular music." In fact, Ms. Petrey categorizes such consumers as "non-consumers." Graif Decl. Ex. 16 (Dkt. 119-11) ¶ 41. Moreover. Ms. Petrey acknowledged that she did not have any information regarding S10 Entertainment's prospective clients, Moseley Decl. Ex. N at 64:6-16; 87:6-15, and is therefore unable to offer opinions regarding the sophistication of S10 Entertainment's |

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | prospective consumers.<br><br>Samsung also disputes that S10 Entertainment's customers or prospective customers include unsophisticated consumers. The only evidence in the record establishes that consumers of S10 Entertainment's talent management services are sophisticated consumers with prior experience in the music industry.<br><br>Similarly, S10 Entertainment's former client Bazzi, whom S10 Entertainment signed in November 2019, was already established in the music industry and represented by, among others, a financial manager named Josh Klein who introduced him to Silverstein. Moseley Decl. Ex. L at 80:20-24; Ex. BB. |

30

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| Moving Party's Statement of Uncontroverted Facts and Conclusions of Law | DEFENDANTS' RESPONSE |
|---|---|
| | ████████████████████████<br>████████████████<br><br>However, this dispute is immaterial to a finding of no liability in Samsung's favor because there is no cognizable evidence that a reasonable factfinder could credit relating to these downstream consumers or unsophisticated consumers that materially alters the *Sleekcraft* analysis. |

## ADDITIONAL STATEMENT OF GENUINE DISPUTED FACTS

Samsung also contends that the following additional facts asserted in S10 Entertainment's Memorandum in Support of Motion for Partial Summary Judgment, but not the statement of facts, are in dispute:

| Fact | Response |
|---|---|
| 61. On page 17 of its brief, S10 Entertainment displays the following image, which it characterizes as "Samsung's Galaxy S10e Packaging, as displayed on YouTube." | Disputed. This image is a misleadingly cropped image of a package taken from a YouTube video and reflects packaging that was not used in the United States. |

31

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For context, a true and correct image of the front of the box for Samsung's Galaxy S10 smartphone is displayed below, along with a mock-up showing the sides, front, and back of the packaging.

Moseley    Decl.    Ex.    S, SAMSUNG_00059808.



DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO




Moseley Decl. Ex. T, SAMSUNG_00003431 at SAMSUNG_0003460.

## SAMSUNG'S COUNTER-STATEMENT OF UNDISPUTED FACTS

Samsung also sets forth the additional undisputed material facts:

| | Undisputed Material Fact | Evidence |
|---|---|---|
| 62 | S10 Entertainment owns a trademark registration for the composite mark S10 ENTERTAINMENT that it is not asserting in this litigation. | Moseley Decl. Ex. U, Silverstein Ex. 153. |
| 63 | ████████████████████████████ | Moseley Decl. Ex. P at 328:6-10. |
| 64 | S10 Entertainment is referred to as S10 Entertainment on its Twitter and LinkedIN profiles. | Moseley Decl. Ex. V at pp. 22-27. |
| 65 | Since introducing the original Galaxy S-series smartphone in 2010, Samsung has released twelve subsequent generations of Galaxy S | Moseley Decl. Ex. A at 177:18-179:23. |

33

| | | | |
|---|---|---|---|
| | | smartphones in the United States, including the Galaxy SII, Galaxy SIII, Galaxy S4, Galaxy S5, Galaxy S6, Galaxy S7, Galaxy S8, Galaxy S9, Galaxy S10, Galaxy S20, Galaxy S21, and Galaxy S22. | |
| | 66 | In 2015, Samsung set forth updated brand guidelines for its GALAXY subbrand. | Moseley Decl. Ex. W. |
| | 67 | The 2015 GALAXY brand guidelines introduced a new "Galaxy" and "Galaxy S" logo incorporating the Samsung Sharp Sans typeface, which Samsung used in connection with the Galaxy S6 smartphone and each subsequent generation of Galaxy S smartphone thereafter. | Moseley Decl. Ex. W; *see also* Ex. A at 187:24-188:10. |
| | 68 | From 2013 to 2019, Samsung sold over ▓▓ ▓▓ units of Galaxy S series smartphones, exclusive of the Galaxy S10, in the United States, with over 100 million of these sales occurring prior to July 2017. | Moseley Decl. Ex. X; Ex. D at ¶¶ 31-32. |
| | 69 | From the launch of the Galaxy S in 2010 through the launch of the Galaxy S10 in 2019, Samsung spent over ▓▓▓ marketing its Galaxy S series smartphones. | Moseley Decl. Ex. D at figure 4. |
| | 70 | By the launch of the Galaxy S8 in 2018, Samsung had spent at least ▓▓▓ marketing its Galaxy S series smartphones. | Moseley Decl. Ex. D at figure 4. |

34

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| 71 | Professor Gregory S. Carpenter reviewed Samsung's marketing efforts for its Galaxy S-series smartphones and offered the unrebutted opinion that "this evidence clearly suggests that Samsung made the necessary decisions and invested the necessary resources to create a distinct Samsung Galaxy S-series brand prior to July 2017 and years before." | Moseley Decl. Ex. D ¶ 42. |
| --- | --- | --- |
| 72 | Professor Carpenter characterized the resources Samsung devoted to advertising and establishing the Galaxy S smartphone brand as "remarkable." | Moseley Decl. Ex. D ¶ 155. |
| 73 | Professor Carpenter offered the unrebutted opinion that "consumers in the United States express an awareness of the Samsung Galaxy S-series brand and an understanding of the benefits Samsung's Galaxy S-series smartphones offer" and that "consumers in the United States recognize 'Galaxy S' or 'S' plus a number in the context of smartphones as indicating a common source of origin, *i.e.*, Samsung prior to July 2017 and years before." | Moseley Decl. Ex. D ¶ 43. |
| 74 | Professor Carpenter offered the unrebutted opinion that "consumers in the United States demonstrate an understanding of the branding convention Samsung used, including the numerical sequencing of the Samsung Galaxy S- | Moseley Decl. Ex. D ¶ 44. |

35

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| | series" and further "consumers anticipated future yet-unannounced Galaxy S-series models, including an 'S10' model, as part of Samsung's Galaxy S-series of smartphones prior to July 2017 and years before." | |
| 75 | Professor Carpenter offered the unrebutted opinion that the Samsung Galaxy S-series branding has four elements, including a "specific series or model designation, such as 'S' or 'S4'" and that consumers in the United States demonstrate an understanding of this brand architecture. | Moseley Decl. Ex. D ¶¶ 215, 234. |
| 76 | Samsung has generally promoted its Galaxy S series smartphones, including the Galaxy S10, through a variety of media channels, including in-store marketing and advertisements through wireless carriers and retail stores, online through Samsung.com and various Samsung-owned social media channels, including SEA's Facebook, Instagram, and YouTube webpages, traditional print and media advertisements, including television commercials and online video advertisements, product integrations, partnerships with select celebrities and influencers, and festivals and events. | Moseley Decl. Ex. Y, Response to Interrogatory No. 20. |

36

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| 77 | Samsung's Galaxy S series smartphones were sold to consumers through wireless carriers such as AT&T, Verizon, and T-Mobile; retailers such as Best Buy; and online through Samsung's website Samsung.com. | Moseley Decl. Ex. Y, Response to Interrogatory No. 17. |
| 78 | Since at least as early as 2012, Samsung has utilized and partnered with influencers and celebrities across many industries, including the music and entertainment industry, to promote Samsung's Galaxy S series smartphones. | Moseley Decl. Ex. Y, Response to Interrogatory No. 21. |
| 79 | Similarly, since at least as early as 2012, Samsung has promoted its consumer electronics products, including its Galaxy S lines of smartphones, at a wide variety of festivals, events, award shows, and concerts. | Moseley Decl. Ex. Y, Response to Interrogatory No. 23. |
| 80 | By way of example, Samsung has promoted its Galaxy S series smartphones at South by Southwest since at least as early as 2012, and has previously promoted Galaxy S series smartphones, such as the Galaxy S4, at the Lollapalooza music festival. | Moseley Decl. Ex. Y, Response to Interrogatory No. 23. |
| 81 | | Moseley Decl. Ex. P at 393:16-394:2; Ex. H at 41:23-42:1. |
| 82 | | Moseley Decl. Ex. R at 36:15-23. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| 83 | ███████████ | Moseley Decl. Ex. B at 186:3-9. |
| 84 | ███████████ | Moseley Decl. Ex. H at 88:15-20; Moseley Decl. Ex. R at 43:8-24. |
| 85 | The use of word of mouth and personal relationships is common in the music industry. For example, Tim Blacksmith testified that Silverstein introduced him to Anitta, and Blacksmith in turn refers Anitta to clients and other friends of his in the industry. | Moseley Decl. Ex. M at 43:23-45:10. |
| 86 | Josh Klein testified that Normani, Anitta, Jacob Banks, and Bazzi are all clients of his. Mr. Klein was introduced to Anitta through his relationships in the industry, including Silverstein, Anitta's attorney Ed Shapiro, and Anitta's agency. | Moseley Decl. Ex. L at 55:5-57:18; 69:2-14. |



38

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| 87 |  | Moseley Decl. Ex. B at 206:10-14, 206:23-207:10, 225:8-14. |
| 88 | In describing the services it provides, S10 Entertainment explained that it "acts as a liaison and representative between musical artists and publishing companies, records [sic] labels, and festival organizers" and that it "publishes music and records." | Moseley Decl. Ex. Z, Response to Interrogatory No. 14. |
| 89 | | Moseley Decl. Ex. H at 39:16-40:14; Moseley Decl. Ex. R at 41:7-42:8. |
| 90 | | Moseley Decl. Ex. B at 159:1-2, 179:11, 228:3-8. |
| 91 | S10 considers other full-service talent management, music publishing, and record labels to be its competitors. | Moseley Decl. Ex. Z, Response to Interrogatory No. 12. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| 92 | According to Professor Howard, "music publishing" is a term of art in the music industry involving placing a written work with a recording artist who will create a recording of the writer's song. | Moseley Decl. Ex. J at 46:16-48:13. |
|----|------|------|
| 93 | ███████████████████████ | Moseley Decl. Ex. P at 410:2-411:13, 412:13-22. |
| 94 | S10 Entertainment enjoyed considerable success both before and after the launch of Samsung's Galaxy S10 smartphone, signing high-profile artists, ████████████ and entering into partnerships with other well-known brands and individuals in the music industry. | *See infra* ¶¶ 95-104. |
| 95 | ███████████████████████ | Moseley Decl. Ex. P at 335:24-336:13; Moseley Decl. Ex. H at 84:16-85:23, 86:3-87:14. |

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| 96 | In July 2019, S10 Entertainment began providing talent management services to Brazilian artist Anitta ████████████████████ ████████████████████ ████████████ | Moseley Decl. Ex. Q ¶¶ 1-2 and Ex. A; Moseley Decl. Ex. R at 31:22-33:1 |
| 97 | Anitta has enjoyed significant success since signing with S10 Entertainment, becoming the first Brazilian star and the first solo Latin female artist to reach number one on Spotify's Global Chart in 2022. | Moseley Decl. Ex. AA. |
| 98 | ████████████████████ ████████████████████ ████████████ | Moseley Decl. Ex. Q at Ex. A. |
| 99 | In November 2019, Bazzi signed with Brandon Silverstein's S10 Entertainment for management services. | Moseley Decl. Ex. BB. |
| 100 | ████████████████████ ██████████ | Moseley Decl. Ex. CC. |
| 101 | In late 2019 or early 2020, S10 Entertainment entered into a partnership with publishing company Avex. | Moseley Decl. Ex. H at 37:16-38:6,     84:13-15; Moseley Decl. Ex. DD. |
| 102 | S10 Entertainment also entered into a partnership with Ryan Tedder in connection with its publishing venture. | Moseley Decl. Ex. EE (noting S10 Entertainment's business and publishing ventures with Ryan Tedder). |

41

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| 103 | In mid-2022, S10 Entertainment entered into a partnership with Simon Fuller – creator of the "American Idol" format – to develop new entertainment content. | Moseley Decl. Ex. EE. |
| 104 | Silverstein has won several awards recognizing the success of S10 Entertainment, including Billboard's *40 Under 40*, Forbes' *30 Under 30*, and Variety's *Hollywood's New Leaders of 2021*. | Moseley Decl. Exs. FF, GG, & HH. |
| 105 | | Moseley Decl. Ex. G ¶ 15 |
| 106 | | Moseley Decl. Ex. G ¶ 16. |
| 107 | | Moseley Decl. Ex. Q ¶ 18. |
| 108 | | Moseley Decl. Ex. Q ¶ 19. |
| 109 | | Moseley Decl. Ex. Q ¶ 20. |

42

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO



| 110 | ████████████ | Moseley Decl. Ex. P at 389:24-391:6. |
| 111 | ████████████ | Moseley Decl. Ex. H at 73:23-75:10; Moseley Decl. Ex. R at 54:22-55:23. |
| 112 | ████████████ | Moseley Decl. Ex. R at 55:24-56:10. |
| 113 | ████████████ | Moseley Decl. Ex. P at 407:11-409:1; 409:10-410:1. |
| 114 | ████████████ | Moseley Decl. Ex. G ¶ 12. |
| 115 | In June 2019, Normani performed at Samsung's private Happy Galaxy Day Event, ████ | Moseley Decl. Ex. B at 113:8-18; Ex. P at 414:5-415:11; 478:9-11. |
| 116 | ████████████ | Moseley Decl. Ex. B at 113:8-15. |

43

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| 117 | ▬ | Moseley Decl. Ex. P at 419:23-420:3 |
| 118 | ▬ | Moseley Decl. Ex. P at 414:5-415:11. |
| 119 | ▬ | Moseley Decl. Ex. P at 369:10-370:15 and Moseley Decl. Ex. II. |
| 120 | ▬ | Moseley Decl. Ex. P at 453:23-454:5; Moseley Decl. Ex. R at 50:24-52:9. |
| 121 | ▬ | Moseley Decl. Ex. Q ¶ 16. |
| 122 | ▬ | Moseley Decl. Ex. JJ. |



44

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | |
|---|---|---|
| | ████████████████████<br>████████████████ | |
| 123 | ████████████████████<br>████████████████████<br>████████████████████<br>████████████████████<br>████████████████████<br>████████████████████<br>█████████████ | Moseley Decl. Ex. P at 372:15-376:3 and Moseley Decl. Ex. KK. |
| 124 | ████████████████████<br>████████████████████<br>████████████████████<br>████████████████████<br>████████████████████<br>████████████████ | Moseley Decl. Ex. P at 451:10-454:5; Moseley Decl. Ex. LL. |
| 125 | ████████████████████<br>████████████████████<br>████████████████████<br>███████████ | Moseley Decl. Ex. P at 380:21-381:21 and Moseley Decl. Ex. MM, Ex. 161 |
| 126 | ████████████████████<br>████████ SEC considered names for its tenth-generation Galaxy S device. The committee ████████████<br>████████████ officially approved and recommended "Galaxy | Graif Decl. Ex. 1 (Dkt. 119-2); Moseley Decl. Ex. A at 56:1-16. |

DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | | S10" ███████████████<br>because it felt the name would highlight the success and legacy of Samsung's flagship Galaxy S family of smartphones and build upon the existing brand equity in the Samsung Galaxy S series. | |
| 7<br>8<br>9<br>10 | 127 | SEC performed trademark searches through its legal department and outside counsel, and S10 Entertainment's mark was not revealed as part of this searching. | Moseley Decl. Ex. NN, Response to Interrogatory No. 3. |
| 11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | 128 | S10 Entertainment's social media expert testified she would not be comfortable "speculating on the consumer sentiment" behind certain comments on S10 Entertainment's Instagram posts. She further testified that "it's hard to make too many assumptions off of a short sentence, unless you talk to somebody and really read them and get to the bottom of it." | Moseley Decl. Ex. N at 157:14-19, 158:15-23. |
| 19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 129 | S10 Entertainment filed this lawsuit on March 19, 2021, ██████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>███████████████ | Moseley Decl. Ex. P at 384:19-386:7; Moseley Decl. Ex. OO. |

FAEGRE DRINKER BIDDLE &<br>REATH LLP<br>ATTORNEYS AT LAW<br>EAST PALO ALTO

| | | |
|---|---|---|
| 130 | ████████████████████████ | Moseley Decl. Ex. P at 419:17-22. |
| 131 | During the time between Samsung's launch of the Galaxy S10 smartphone and the time S10 Entertainment brought this lawsuit, multiple employees left Samsung including Michelle Engel, the primary contact involved with Samsung's partnerships with musicians such as Normani, and Derrin Woodhouse, the former head of influencer partnerships at Samsung. | Moseley Decl. Ex. PP, Response to Interrogatory No. 13. |
| 132 | By the time S10 Entertainment brought this lawsuit, the vast majority of Galaxy S10 smartphone sales had been completed. | Moseley Decl. Ex. PP, Response to Interrogatory No. 13. |
| 133 | By the time S10 Entertainment brought this lawsuit, Samsung had already released the Galaxy S20 in 2020 and the Galaxy S21 in 2021. | Moseley Decl. Ex. PP, Response to Interrogatory No. 13 |
| 134 | ████████████████████████ | Moseley Decl. Ex. P at 419:23-420:3, 418:7-11. |
| 135 | ████████████████████████ | Moseley Decl. Ex. B at 58:13-15, 60:10-14, 68:23-69:2, 69:3-6, 71:22-72:2, 72:3-6, 75:5-8, 75:13-17, 77:14-17, |

47

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | 78:4-9, 78:14-19, 78:22-79:4, 79:5-9, 79:10-14, 79:15-18, 79:23-80:4, 80:5-8, 80:9-12, 80:24-81:3, 81:4-7, 81:8-10, 81:11-16, 82:7-12, 113:8-10, 113:16-18, 117:15-19, 125:11-12, 126:12-15, 155:14-15, 155:16-19, 156:15-20, 156:23-157:2, 157:3-6, 157:14-19, 157:20-158:1, 158:2-7, 158:8-14, 158:15-19, 159:13-24: 160:1-7, 160:12-15, 160:16-20, 160:21-161:2, 165:10-14, 167:23-168:5, 175:1-3, 181:7-10, 181:11-14, 181:15-17, 181:18-19, 208:6-11, 208:18-21, 209:11-13, 213:2-13, 226:24-227:2, 233:7-9, 237:1-4, 239:6-19, 239:24-240:3, 257:13-15, 257:16-17, 260:4-8, 260:15-16, 260:17-18, |
|---|---|---|

DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | 260:20-24, 261:15-17, 275:14-19; Moseley Decl. Ex. P at 286:6-11, 296:11-21, 300:20-23, 301:5-8, 301:9-13, 301:14-20, 301:21-302:1, 303:9-12, 306:1-2, 306:3-19, 313:12-17, 313:18-23, 331:6-8, 333:1-5, 333:6-9, 362:14-20, 362:21-363:1, 363:6-10, 363:23-364:2, 364:24-365:2, 365:14-19, 371:1-6, 372:2-6, 375:11-12, 376:4-6, 378:3-4, 378:5-6, 378:7-8, 379:17-20, 382:7-9, 382:10-17, 382:18-20, 382:21-22, 385:23-386:3, 386:12-387:8, 389:24-390:3, 390:4-7, 390:8-11, 392:12-21, 418:7-11, 419:7-11, 419:12-16, 419:17-22, 419:23-420:3, 436:12-15, 436:16-18, 436:19-20, 436:21-22, |

49

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

| | | | 441:7-10, 449:6-9, 455:24-456:4, 458:19-20, 461:1-3, 469:6-8, 470:4-7, 470:11-14, 470:15-19, 470:20-471:1 |
|---|---|---|---|
| 136 | | | Moseley Decl. Ex. G ¶ 10 and Exhibit A. |
| 137 | | | Moseley Decl. Ex. Q. ¶¶ 8-10, 14-15. |



50

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

1
2

**FAEGRE DRINKER BIDDLE & REATH LLP**

3   Dated: January 3, 2023

By: */s/ Katlyn M. Moseley*

4

David J.F. Gross

5
6

James R. Steffen (*pro hac vice*)
*james.steffen@faegredrinker.com*
Lauren W. Linderman (SBN 280809)
*lauren.linderman@faegredrinker.com*
2200 Wells Fargo Center
90 S. Seventh Street
Minneapolis, Minnesota 55402
Telephone:     +1 612 766 7000

7
8
9
10

Christopher J. Burrell (*pro hac vice*)
*christopher.burrell@faegredrinker.com*
Katlyn M. Moseley (*pro hac vice*)
*katlyn.moseley@faegredrinker.com*
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone:     +1 202 842 8800

11
12
13

14

Louis T. Perry (*pro hac vice*)
*louis.perry@faegredrinker.com*
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:     +1 317 237 0300

15
16

17
18

*Attorneys for Defendant/Counterclaimant*
Samsung Electronics Co., Ltd., and
*Defendant* Samsung Electronics America, Inc.

19
20
21
22
23
24
25
26
27
28

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO

51

1

## CERTIFICATE OF SERVICE

2     I, Christopher J. Burrell, declare that on **January 3, 2023**, I caused the
3  foregoing Defendants' Statement of Genuine Disputes of Material Fact and
   Counterstatement of Undisputed Facts to be served on the interested party(ies) in this
   action as follows:

4

5                                         ****

6

7     ☐   **BY EMAIL:**  by transmitting via e-mail or secure file transfer the
8          document(s) listed above to the person(s) at the e-mail address(es) set
           forth below.

9

10  Andrew D. Skale                              Matthew Novian
    *adskale@mintz.com*                          *mjnovian@mintz.com*
    Matthew C. Hurley                            **MINTZ LEVIN COHN FERRIS**
11  *mchurley@mintz.com*                         **GLOVSKY AND POPEO, P.C.**
    Michael R. Graif                             2029 Century Park East, Ste 3100
12  *Mrgraif@mintz.com*                          Los Angeles, CA 90067
    Geoffrey A. Friedman                         Tel.   (310) 586-3200
13  *gafriedman@mintz.com*
    James J. Thomson
14  *jjthomson@mintz.com*
    Oliver Ennis
15  *ofennis@mintz.com*
    **MINTZ LEVIN COHN FERRIS**
16  **GLOVSKY AND POPEO, P.C.**
    3580 Carmel Mountain Road, Suite 300
17  San Diego, CA 92130
    Tel.  (858) 314-1500

18

19
    Executed on **January 3, 2023**.
20

21

22                                     */s/ DRAFT*
                                       Christopher J. Burrell
23

24

25

26

27
                                         52
28  ─────────────────────────────────────────────────
    DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
    CASE NO. 2:21-CV-02443-CAS-JPR

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
EAST PALO ALTO