MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (SBN 211096)
adskale@mintz.com
Matthew S. Hurley (Admitted *Pro Hac Vice*)
mshurley@mintz.com
Michael R. Graif (Admitted *Pro Hac Vice*)
Mrgraif@mintz.com
3580 Carmel Mountain Road
Suite 300
San Diego, CA 92130
(858) 314-1500

*Attorneys for Plaintiff*
*S10 Entertainment & Media LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC,<br><br>                              Plaintiff,<br><br>        vs.<br><br>SAMSUNG ELECTRONICS CO., LTD.; and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>                              Defendants. | Case No. 2:21-cv-2443-CAS-JPR<br><br>**PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 23, 2023<br>Time:  10:00 a.m.<br>Hon. Christina A. Snyder<br>Courtroom:  8D, 350 W. First Street |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................1

II.    FACTUAL BACKGROUND ...............................................................1

III.   ARGUMENT ........................................................................................3

    a.   Legal Standard ...........................................................................3

    b.   Samsung Has Infringed S10 Entertainment's S10 Mark and
        Caused Reverse Confusion .......................................................5

    c.   Samsung's Has Created a False Association, Connection, or
        Suggested Sponsorship with S10 Entertainment and Its Services...........6

        i.    Defendants Misappropriation of S10's Mark Was Likely
            to Cause and Has Caused Reverse Confusion ............................7

        ii.   The Sleekcraft Factors Prove There is a Likelihood of
            Confusion .................................................................................9

    d.   The Unfair Competition Claims Should Not Be Dismissed.................22

    e.   Disgorgement And Other Damages are Available in This Case. ..........24

IV.    CONCLUSION ...................................................................................25

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
   2019 WL 4546897 (C.D. Cal. Aug. 2, 2019) ....................................................25

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 .....................................................................................................3

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) .....................................................................*passim*

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062 (9th Cir. 2006) .....................................................................4

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ..............................................................8, 12, 19

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ...................................................................23

*D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*,
   No. CV 20-9770-MWF (KSX), 2022 WL 4596548 (C.D. Cal. Aug.
   26, 2022) .....................................................................................24, 25

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
   448 F.3d 1118 (9th Cir. 2006) ...................................................................5

*Dreamwerks Prod. Grp., Inc. v. SKG Studio*,
   142 F.3d 1127 (9th Cir. 1998) ..............................................................14, 20

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
   741 F. Supp. 2d 1165 (C.D. Cal. 2010) .........................................................18

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) .........................................................8, 15, 16, 19

*Glob. Apogee v. Sugarfina, Inc.*,
   2018 WL 4945305 (C.D. Cal. Oct. 10, 2018) ...................................................23

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ....................................................................10, 15

*Grey v. Campbell Soup Co.*,
  650 F. Supp. 1166 (C.D. Cal. 1986), *aff'd,* 830 F.2d 197 (9th Cir.
  1987) ........................................................................................................23

*HM Elecs. v. R.F. Techs.*,
  No. 12- CV-2884-MMA (WMC), 2013 WL 120074966 (S.D. Cal.
  Oct. 3, 2013) .............................................................................................16

*Ironhawk Techs., Inc.v. Dropbox, Inc.*,
  2 F.4th 1150 (9th Cir. 2021) ...................................................................4

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ...........................................................8, 10

*Juul Labs, Inc. v. Chou*,
  557 F. Supp. 3d 1041 (C.D. Cal. 2021) .........................................21, 22

*Leisek v. Brightwood Corp.*,
  278 F.3d 895 (9th Cir. 2002) ...................................................................4

*M2 Software, Inc. v. Madacy Entm't*,
  421 F.3d 1073 (9th Cir. 2005) .......................................................*passim*

*Mach. Head v. Dewey Glob. Holdings Inc.*,
  No. C 99-04326 CW, 2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) ..........11, 12

*Marketquest Grp., Inc. v. BIC Corp.*,
  862 F.3d 927 (9th Cir. 2017) ...........................................................20, 21

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
  290 F. Supp. 2d 1083 (C.D. Cal. 2003) .........................................11, 12

*Microsoft Corp. v. Buy More, Inc.*,
  703 Fed. App'x 476 (9th Cir. 2017) .........................................22, 23, 24

*Monster Energy Co. v. BeastUp Ltd. Liab. Co.*,
  395 F. Supp. 3d 1334 (E.D. Cal. 2019) ...............................................22

*Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*,
  809 F.2d 601 (9th Cir. 1987) .................................................................18

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) ................................................................11

*Playboy Enters., Inc. v. Baccarat Clothing Co.*,
   692 F.2d 1272 (9th Cir. 1982) ...........................................................22

*Rearden LLC v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ........................................5, 8, 17, 20

*Romag Fasteners, Inc v. Fossil, Inc.*,
   140 S. Ct. 1492 (2020)..................................................................24, 25

*Skydive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ...........................................................24

*Slep-Tone* Ent. *Corp. v. Wired for Sound Karaoke & DJ Servs.*, LLC,
   845 F.3d 1246 (9th Cir. 2017) .............................................................6

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) .............................................................19

*Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*,
   No. CV 20-9091 PA (ASX), 2021 WL 4813257 (C.D. Cal. Oct. 6,
   2021) ............................................................................................24, 25

*Trovan, Ltd. v. Pfizer, Inc.*,
   No. CV-98-0094 LGB MCX, 2000 WL 709149 (C.D. Cal. May
   24, 2000) ....................................................................................23, 24

*Walter v. Mattel, Inc.*,
   210 F.3d 1108 (9th Cir. 2000) ...........................................................22

**State Cases**

*Bank of the W. v. Superior Ct.*,
   2 Cal. 4th 1254, 833 P.2d 545 (1992)................................................23

**Federal Statutes**

15 U.S.C. § 1114.....................................................................................5

15 U.S.C. § 1117(a) ..............................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................22, 23

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Defendants Samsung[1] seek the extraordinary remedy of a finding of summary judgment as to Plaintiff S10 Entertainment's trademark infringement and unfair competition claims (and their related damages), based on a scattershot of arguments and ancillary issues not properly presented in such a motion.[2] In moving for summary judgment, Samsung asks the Court to ignore evidence of actual confusion, including the ***only*** survey evidence in this action, which demonstrates a likelihood confusion (Samsung produced no competing survey). Samsung also ignores witness testimony regarding confusion and social media responses showing widespread consumer confusion. This evidence alone at least creates a factual question as to infringement, if not justifying summary judgment in Plaintiff's favor.

As shown in S10 Entertainment's own Motion for Partial Summary, ECF No. 91, summary judgment on the issue likelihood of confusion is warranted instead in S10 Entertainment's favor. A proper analysis of the *Sleekcraft*[3] factors, against the undisputed evidence of record, shows that Samsung intentionally used the S10 Mark without permission, which has caused confusion in the marketplace. Despite the weight of this evidence, and the harm that Samsung has caused S10 Entertainment, Samsung also asks the Court to deny S10 Entertainment from recovering any damages.  Samsung's motion must fail.

## II.     FACTUAL BACKGROUND

S10 Entertainment is a full-service management, music publishing, record label, TV/Film and investment company. Its customers include recording artists,

---

[1] Defendants Samsung Electronics Co, Ltd. and Samsung Electronics America, Inc. (collectively "Samsung" or "Defendants").

[2] Defendants December 26, 2022 Corrected Notice of Motion and Motion for Summary Judgement, ECF No. 115, (the "Motion").

[3] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), *abrogated by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

music writers, and consumers of the popular music it records and produces.  S10 Entertainment is also engaged in the promotion of its artists, including collaborations with brands.  In this regard, S10 Entertainment acts as a broker between the artists it represents and other brands who wish to hire these artists. As admitted by Samsung, S10 Entertainment interacts with these brands ███████████████████████ ███████████████████████████████████████████████.  Motion at 6. S10 Entertainment also operates a record label and publishing company engaged in the production of music to consumers of popular music.  ECF No. 91-2, Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law ("S10 SUF"), ¶3; Graif Decl. Ex. 4, (S10 Entertainment's Response to Samsung's Interrogatory No. 4).

S10 Entertainment is the owner of United States Trademark Registration 5,909,315, for the word mark "S10," (the "S10 Mark"). (ECF No. 91-2, S10 SUF, ¶4).  S10 Entertainment was founded in 2017 and began using the S10 Mark that same year.  It filed its application for the S10 Mark on May 18, 2018 and the S10 Mark registered on November 12, 2019.  (ECF No. 91-2, S10 SUF, ¶5).

Samsung's first infringing use of the S10 Mark in commerce was on February 20, 2019—nine months after S10 Entertainment applied for the mark in the United States and two years after S10 Entertainment's first use of the mark. (ECF No. 91-2, S10 SUF, ¶7).  Samsung argues that it has a "Galaxy S family of marks" and that consumers "anticipated future yet-unannounced…models, including an 'S10' model," but these assertions are still in dispute, contradicted by material evidence, and should be put to the jury to decide.  Motion at 8-9, 22-23; *see also* Plaintiff's January 3, 2023 response to Defendants' Statement of Uncontroverted Facts and Conclusions of Law at ¶10 (citing media report predicting that Samsung would skip the 'S10' name). This argument is further belied by Samsung's subsequent decision to skip the names S11 through S19 in its Galaxy S phone lineup.

In 2019 and 2020, Samsung spent nearly ████████████ marketing the S10

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

smartphone. Motion at 5.  Much of Samsung's advertising for the S10 phone was done in the music industry; including the use of musicians as promoters, music events, and free subscriptions to music streaming platforms on the S10 phone to increase awareness of the phone.  (ECF No. 91-2, S10 SUF, ¶19). From March 2019 to March 2022, Samsung made ███████ in sales of the S10 smartphone in the U.S. alone. (ECF No. 91-2, S10 SUF, ¶28). Samsung's massive marketing efforts targeted to the music industry, coupled with use of an S10 logo to promote the phone that is strikingly similar to S10 Entertainment's logo developed in 2017, resulted in widespread confusion in the marketplace.  That confusion still persists to this day in the form of recent instances of actual confusion, and S10 Entertainment's survey showing 27% confusion almost three years after Samsung released the S10 phone.

| S10 Entertainment's Website[4] | Samsung's Galaxy S10e Packaging, as displayed on YouTube[5] |
|---|---|
|  |  |

## III.    ARGUMENT

### a.  Legal Standard

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

[4] ECF No. 91-2, S10 SUF, ¶30.

[5] ECF No. 91-2, S10 SUF, ¶31.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247(1986) (citing Fed. R. Civ. P. 56). "The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). "When assessing reverse confusion on summary judgment, we ask whether a genuine dispute of material fact exists as to the likelihood of confusion.  Specifically, whether a reasonable jury could conclude that consumers would believe [defendant] is the source of, or a sponsor of, [plaintiff's goods or services]." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021).

Cases involving reverse trademark confusion present different issues and different considerations for summary judgment.

> Affiliation with a popular well-known brand may seem beneficial, but reverse confusion carries consequences.  Reverse confusion can foreclose the senior user from expanding into related fields and could place the senior company's goodwill in the hands of the junior user…. the result of reverse confusion is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.  The doctrine of reverse confusion is designed to prevent the calamitous situation where a larger, more powerful company usurps the business identity of a smaller senior user.

*Id.*

The Ninth Circuit has not been shy about its dislike of these type of motions – "[b]ecause the likelihood of confusion is often a fact-intensive inquiry, courts are generally reluctant to decide this issue at the summary judgment stage.  However, in cases where the evidence is clear and tilts **heavily in favor of a likelihood of confusion**, we have not hesitated to affirm summary judgment on this point." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(internal citation omitted) (emphasis added).

    **b.**   **Samsung Has Infringed S10 Entertainment's S10 Mark and Caused Reverse Confusion**

To prevail on a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114, a party "must prove:  (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  "[F]ederal registration of the marks is prima facie evidence of its ownership of the marks." *Id.*  Similarly, to establish a claim under common law trademark infringement in California, a plaintiff must demonstrate, "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause customer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012).

The evidence in this case establishes that S10 Entertainment is the owner of the S10 Mark, that it registered the mark and used the mark in commerce prior to Samsung, and that Samsung's use of the S10 Mark was likely to cause confusion, and did cause confusion in the market. (ECF No. 91-2, S10 SUF, ¶¶1, 7, 38, 40, 43). S10 Entertainment has offered the only survey evidence assessing likelihood of confusion in this case.  (ECF No. 91-2, S10 SUF, ¶34, 36). That survey showed that 26.7% of respondents still associated the S10 Mark with Samsung, three years after the phone was released and after Samsung began heavily marketing its newer flagship smartphones.[6]  (ECF No. 91-2, S10 SUF, ¶35).  Further, S10 Entertainment has put forward additional evidence of actual confusion in the form of witnesses involved in the music industry and responses to S10 Entertainment's social media

---

[6] Samsung improperly attacks the admissibility of this evidence, based on its faulty *Daubert* motion to strike the testimony of Mark Keegan. ECF No. 94. Regardless, Samsung, has offered no survey evidence of its own.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

posts from the general public. (ECF No. 91-2, S10 SUF, ¶38, 40, 43).  Samsung offers no rebuttal evidence to this, attempting instead to artificially narrow S10 Entertainment's customers to try and avoid the obvious conclusion that broad confusion has occurred and continues to occur.

   **c.   Samsung's Has Created a False Association, Connection, or Suggested Sponsorship with S10 Entertainment and Its Services**

The Lanham Act's provision on unfair competition, section 43, provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— (A) is likely to cause confusion, or to cause mistake, *or to deceive as to the affiliation, connection, or association of such person with anot her person*, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Slep-Tone* Ent. *Corp. v. Wired for Sound Karaoke & DJ Servs.*, LLC, 845 F.3d 1246, 1249 (9th Cir. 2017) (quoting Lanham Trade–Mark Act, § 43(a)).

   Samsung's offering of co-branded music promotions to sell its S10 phones, such as six months of free Spotify and its use of musical artists to promote its S10 phone, was likely to cause confusion as an affiliation, connection, or association with S10 Entertainment. As seen below, Samsung hosted a meet and greet with musicians Chloe X Halle to promote the S10 phone.



(ECF No. 91-2, S10 SUF, ¶48 (citing S10ENT_0000031).

Samsung, however, also engaged in other music marketing efforts, including the promotion its S10 phone at the South by Southwest ("SXSW") concert and convention. *See* Samsung's Statement of Uncontroverted Material Facts and Conclusions of Law ("Samsung SUF"), ECF 115-1, ¶26; *see also* ECF No. 91-2, S10 SUF, ¶16 (citing S10 Entertainment's Response to Interrogatory No. 23). This marketing in the music space, created a high likelihood of confusing S10 Entertainment's purchasing and non-purchasing consumers into thinking that S10 Entertainment was affiliated with Samsung or that Samsung was a sponsor of S10 Entertainments goods or services in the music industry.

Partnerships or sponsorships between brands and music management companies is not uncommon, a fact that Samsung ignored in invading S10 Entertainment's music space to market its S10 phone.  Indeed, LVRN, a music talent management competitor of S10 Entertainment's, entered into a promotional partnership with Reebok (a clothing and shoe company).  *See* First Amended Complaint ("FAC"), ECF No. 37, at ¶ 50; See also, Graif Decl. Ex. 1, S10ENT_0000024. S10 Entertainment's customers and potential customers readily assume that S10 Entertainment and Samsung had also entered into a partnership, and witnesses have testified that they made this mistaken assumption. (ECF No. 91-2, S10 SUF, ¶38, 40).

>   i.   *Defendants Misappropriation of S10's Mark Was Likely to Cause and Has Caused Reverse Confusion*

The evidence shows that confusion is persistent, and that potential customers are likely to falsely associate S10 Entertainment with Samsung.  "The ultimate question in a reverse confusion case is whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." *M2 Software, Inc., a Delaware corporation v. Madacy Ent., a corporation*, 421 F.3d

1073, 1089 (9th Cir. 2005). "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden*, 683 F.3d at 1209. "Eight factors, sometimes referred to as the *Sleekcraft* factors, guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers . . . ." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *Sleekcraft*, 599 F.2d at 348-49). "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a 'rote checklist.'" *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (quoting *Rearden*, 683 F.3d at 1209). "Moreover, the foregoing list does not purport to be exhaustive, and non-listed variables may often be quite important." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

In this case, there is ample evidence that actual confusion has occurred and consumers now associate the S10 Mark with Samsung. This confusion is so pervasive that 26.7% of respondents associated the mark with Samsung, in an *Eveready* survey conducted nearly three years after the S10 phone launched. (ECF No. 91-2, S10 SUF, ¶35) (citing October 7, 2022 Expert Report of Mark Keegan ("Keegan Report") at ¶6). Sophisticated players involved in the music industry contacted S10 Entertainment after seeing Samsung advertisements for the S10 phone to "congratulate" S10 Entertainment on its partnership. (ECF No. 91-2, S10 SUF, ¶38, 40). Confusion is also so widespread amongst general consumers that when S10 Entertainment's founder (Brandon Silverstein) tweeted 'S10' as recently as September 10, 2022 – three and a half years after the phone's launch – he received the reply below: "S10 = Samsung …"

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT



(ECF No. 91-2, S10 SUF, ¶43)(citing Ex. 39, Bates No. S10ENT_0013751).

Here it is clear that a significant portion of the population and potential customers of S10 Entertainment, including those in the music industry, assume that they are dealing with Samsung (the junior user of the mark) when S10 Entertainment (the senior user) approaches them or these customers attempt to research S10 Entertainment. *M2 Software, Inc., a Delaware corporation v. Madacy Ent., a corporation*, 421 F.3d 1073, 1089 (9th Cir. 2005).

### ii.    *The Sleekcraft Factors Prove There is a Likelihood of Confusion*

While the evidence of actual confusion alone justifies denying Samsung's motion, a review of the *Sleekcraft* factors solidifies the denial of this motion.

#### a.    <u>Strength of The S10 Mark</u>

Samsung gives short shrift to the strength of the S10 Mark and its argument on this factor is unclear. Motion at 20-21.  Samsung appears to admit that its use of the S10 Mark has led to commercial strength, but Samsung attempts to muddy the water, rather than admitting that S10 Entertainment's S10 Mark has conceptual strength. Both are true. *Id.*

Here, Samsung saturated the market to promote its S10 phone, ███████

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

██████████████████████████████████ in advertising. "[I]n reverse confusion cases, the inquiry focuses on the strength of a junior mark. The strength of the junior mark is closely related to how much the market is saturated by the junior mark." *M2 Software, Inc., a Delaware corporation v. Madacy Ent., a corporation*, 421 F.3d 1073, 1089 (9th Cir. 2005).  The result of that saturation is that 26.7% of survey respondents associate the S10 Mark with Samsung and that music industry professionals, as well as the music consuming public, do too.  (ECF No. 91-2, S10 SUF, ¶35, 38, 40, 43). Samsung's ubiquitous use of the S10 Mark has saturated the market and lead to its overwhelming *commercial* strength.

If Samsung is also arguing that S10 Entertainment's S10 Mark lacks *conceptual* strength or should not be protected because, according to Samsung, "[it] has invested limited resources in developing and promoting its S10 Mark"; that argument is without merit. Motion at 20.  S10 Entertainment's S10 Mark is strongly distinctive as an arbitrary mark, and should be afforded greater protection.  "The more distinctive a mark, the greater its conceptual strength; in other words, a mark's conceptual strength is proportional to the mark's distinctiveness." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005).  "The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).

"To determine a mark's conceptual strength, we classify a mark along a spectrum of five categories ranging from:  arbitrary, fanciful, suggestive, descriptive, and generic." *JL Beverage Co.*, 828 F.3d at 1107.  "Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and 'trigger the highest degree of trademark protection.'" *Id.* (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)).  "An arbitrary mark consists of common words

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

arranged in an arbitrary way that is non-descriptive of any quality of the goods or services[.]". *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993).

Here, the trademark "S10" is an arbitrary mark, as it does not convey any knowledge of the characteristics of the product or service.   In fact, Brandon Silverstein, the founder of S10 Entertainment, chose "S10" as his company's name and trademark because his birthday was on September 10th.  (ECF No. 91-2, S10 SUF, ¶2).  "Arbitrary marks are often called 'strong' marks, entitled to a greater degree of protection than common or 'weak' marks, because the stronger a mark, the more likely it is that consumers will think that a product or service comes from a particular source." *Id.* at 1392.

S10 Entertainment's S10 Mark has also achieved notoriety and association with its products and services. Numerous media outlets have covered S10 Entertainment's business successes.  (ECF No. 91-2, S10 SUF, ¶57).  Two of S10 Entertainment's artists are nationally and/or internationally known and have helped promote public awareness of the brand. (ECF No. 91-2, S10 SUF, ¶20). In addition, thousands of people follow S10 Entertainment's social media accounts. (ECF No. 91-2, S10 SUF, ¶58).

For the reasons above, this factor heavily favors S10 Entertainment.

### b.   Proximity/Relatedness of the Goods or Services

Samsung's argument that the parties' goods and services are unrelated omits several material facts.  Motion at 10-12. Samsung relies on *Mach. Head v. Dewey Glob. Holdings Inc.*, No. C 99-04326 CW, 2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) and *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083 (C.D. Cal. 2003) to argue that the parties in this case are similarly situated to those cases and that this case warrants a similar outcome. Motion at 10-12. Samsung's reliance on *Mach. Head* and *Matrix*, however, is inapposite. For example, *Mach. Head* did not involve the use the plaintiff's services to promote the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

defendant's products. In that case, the senior user of the Machine Head mark, promoted sound design services, while the junior user simply named its band 'Machine Head.' That is different situation than a consumer device company (Samsung) advertising its products using musicians (like those represented by S10 Entertainment), where the parties goods and services are often seen together in promotions. *Mach. Head* also bears no mention of a likelihood of confusion survey, let alone one showing 26.7% of respondents being confused.

The facts in *Matrix* are similarly incongruent because the plaintiff in that case "never sold a race car bearing the MATRIX mark in the United States," "provided no evidence that it advertises its cars in the U.S.", and did not have a "federal trademark registration," but sued Toyota for releasing an economy passenger vehicle. *Matrix Motor Co.*, 290 F. Supp. 2d at 1085; 1092 (C.D. Cal. 2003). Additionally, the plaintiff's only customers were "experts in the racing field." *Id.* at 1092. Conversely, S10 Entertainment's consumer base—which consists of musical artists, potential artists, music writers, others involved in the music industry—overlaps with Samsung's customers (and engage in collaborations with Samsung), (ECF No. 91-2, S10 SUF, ¶60).  Some of these consumers are sophisticated and some are not, but the vast majority cannot be described as "experts" in the field. *Matrix Motor Co.*, 290 F. Supp. 2d at 1092 (C.D. Cal. 2003). S10 Entertainment has also provided evidence that there was actual confusion among even some of these sophisticated consumers. (ECF No. 91-2, S10 SUF, ¶¶38, 40).  A fact lacking in *Matrix*.

In addressing the proximity or relatedness of goods and services, the Ninth Circuit focuses on whether the consuming public is likely to somehow associate defendant's products or services with plaintiff's. *Brookfield Commc'ns*, 174 F.3d at 1056.  "The ultimate question in a reverse confusion case is whether consumers doing business with the senior user might mistakenly believe that they are dealing

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

with the junior user." *M2 Software, Inc., a Delaware corporation v. Madacy Ent., a corporation*, 421 F.3d 1073, 1089 (9th Cir. 2005). And that is what S10 Entertainment has experienced based on Samsung's release of its S10 phone.

Samsung admits that it has 6-7 employees dedicated to ███████████. Graif Decl., Ex. 2, Seungmok Lee Deposition Tr. at 140-142.  Samsung also admits that it marketed the S10 smartphone in the music space.  (ECF No. 91-2, S10, ¶49). Indeed, Samsung marketed its Galaxy S10 phone using musicians as promoters, at music events, and via music streaming platforms.  (ECF No. 91-2, S10, ¶¶33, 49, 50).  In fact, Samsung has become a sponsor, or partner, of many music events and its products are now heavily intertwined with the music industry and music consumption.  (ECF No. 91-2, S10, ¶33). In addition, Samsung once offered, or still offers, its own music streaming service called "Milk Music."[7]

From the outset, Samsung emphasized music in its advertising for the S10 phone, as well as its music related features.  Starting with the Unpacked Event on February 20, 2019, Samsung emphasized the 'entertainment' and 'music' aspects of the phone.  (ECF No. 91-2, S10, ¶17).The script for the Unpacked Event stated that: "[f]or ten years, our smartphones have kept you connected.  They've helped you be more productive.  And they've kept you ***entertained.***"  (SUF, ¶17) (emphasis added). The script went on to say that, "[t]en years ago, when we introduced the first Galaxy S... A lot has changed since then.  Now, we play console-quality games, shoot videos in 4K, and ***keep all of our music*** and photos ***solely on our smartphones***."  (ECF No. 91-2, S10 SUF, ¶17) (emphasis added).

Samsung also marketed and sold the S10 phone using music streaming services, including Spotify and YouTube Premium:  two of the most popular music streaming platforms in the United States.  (ECF No. 91-2, S10 SUF, ¶19).  Samsung

---

[7]  https://www.samsung.com/us/showcase/milk-music/ (last accessed December 27, 2022); see also, Graif Decl., Ex. 2, Seungmok Lee Tr. at 136:21-137:6.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

negotiated deals with both YouTube and Spotify for their applications to be included on the S10 phone and advertised special offers, in the form of free subscriptions to consumers, to promote the S10 phone.  (ECF No. 91-2, S10 SUF, ¶19).  In addition, Samsung pre-loaded the S10 phone with the music streaming application prior to sale.  (ECF No. 91-2, S10 SUF, ¶19).  This connection alone was highly likely to confuse potential S10 Entertainment customers, as S10 Entertainment's artists are featured on Spotify, and S10 Entertainment's artist Anitta reached Spotify's number one spot for most streams.  (ECF No. 91-2, S10 SUF, ¶20).

In addition, smartphones have now become one of the primary ways that consumers access music.  (ECF No. 91-2, S10 SUF, ¶24).  Once divergent services or product lines can become related via marketing or promotional efforts. *See, e.g., Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) ("Twenty years ago DreamWorks may have had an argument that making movies and promoting sci-fi merchandise are different businesses promoting different products.  But movies and sci-fi merchandise are now as complementary as baseball and hot dogs.  The main products sold at Dreamwerks conventions are movie and TV collectibles and memorabilia; the lectures, previews and appearances by actors which attract customers to Dreamwerks conventions are all dependent, in one way or another, on the output of entertainment giants like DreamWorks.")  So too do smartphones and music now go hand-in-hand.

As Samsung's ██████████████████, for its mobile division, Emilio Cartier testified in his deposition, ████████████████████████████ (ECF No. 91-2, S10 SUF, ¶21). Because of Samsung's marketing in, and use of, the music space, this factor favors S10 Entertainment.

### c.   *Similarity of the Marks*

Samsung's "S10" mark is identical to S10 Entertainment's S10 Mark.  What is more, Samsung's use of "S10" in the marketplace are nearly identical.  "[T]he

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

similarity of the marks . . . has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com*, 202 F.3d at 1205. "Three general principles help determine whether the marks are similar. First, [s]imilarity is best adjudged by appearance, sound, and meaning. Second, the marks must be considered in their entirety and as they appear in the marketplace. Third, similarities are weighed more heavily than differences." *Fortune Dynamic*, 618 F.3d at 1032.

Here, the word marks are identical and Samsung's "S10" logo is strikingly similar to S10 Entertainment's. (ECF No. 91-2, S10, ¶29).

| S10 Entertainment's Website[8] | Samsung's Galaxy S10e Packaging, as displayed on YouTube[9] |
|---|---|
|  |  |

Samsung employed a similar sans-serif font and emphasizes 'S10' when displaying other relevant information to consumers. For example, S10 Entertainment uses a black background and yellow font for its homepage. Samsung similarly used this same colorway on the packaging of some S10 phones, which were sold abroad but displayed and reviewed on YouTube channels available to U.S. consumers. (ECF No. 91-2, S10 SUF, ¶31). Further, one of the four models of the S10 phone was called the S10e, which exactly matches S10 Entertainment's website www.s10e.com. Graif Decl., Ex. 3, (S10ENT_0013924 at 13928).

---

[8] (ECF No. 91-2, S10, ¶30).

[9] (ECF No. 91-2, S10, ¶31).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Samsung similarly used the S10 Mark on its own website and to promote its phone in connection with its promotional efforts at the South by Southwest ("SXSW") concert and convention, as seen in the flyer below. (Samsung's Statement of Uncontroverted Material Facts and Conclusions of Law ("Samsung SUF"), ECF 115-1, ¶26).

| SXSW Flyer | Samsung Newsroom[10] |
|---|---|
|  |  |

The examples above refute Samsung's argument that its use of the "S10" name is always in the uniform context of its brand architecture (the Samsung or Galaxy names are not always present nor uniformly displayed), Motion at 14. Any subtle differences in the parties' use of "S10" are inconsequential as, "similarities are weighed more heavily than differences." *Fortune Dynamic*, 618 F.3d at 1032. (emphasis added). This factor strongly favors S10 Entertainment.

> ### d.   *Evidence of Actual Confusion*

In its Motion, Samsung attempts to sweep the overwhelming evidence of actual confusion in this case under the rug. Motion at 14. "In the Ninth Circuit, district courts often rely on three types of evidence to demonstrate actual confusion: (1) evidence of actual instances of confusion; (2) survey evidence; and (3) inferences arising from judicial comparison of the conflicting marks and the context of their use in the marketplace." *HM Elecs. v. R.F. Techs.*, No. 12- CV-2884-MMA (WMC), 2013 WL 120074966, at *5 (S.D. Cal. Oct.   3, 2013).   "[E]vidence of actual

---

[10]       https://news.samsung.com/global/samsung-raises-the-bar-with-galaxy-s10-more-screen-cameras-and-choices (last accessed January 2, 2023).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

confusion, at least on the part of an appreciable portion of the actual consuming public, constitutes strong support for a likelihood of confusion, finding." *Rearden*, 683 F.3d at 1210.  Moreover, "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352 (citing *Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963)).

Here, there is overwhelming evidence of actual confusion.  An *Eveready* survey—used to assess likelihood of confusion—showed that 26.7% of the surveyed population associates the S10 Mark with Samsung.  (ECF No. 91-2, S10 SUF, ¶35). Samsung attempts to paint this evidence as unreliable because it "measured consumer recognition of the Galaxy S10 smartphone."  Motion at 17.  But, "in reverse confusion cases, the inquiry focuses on the strength of a junior mark. The strength of the junior mark is closely related to how much the market is saturated by the junior mark." *M2 Software, Inc.,* 421 F.3d at 1089 (9th Cir. 2005). Additionally, Samsung offers **_no_** competing survey.

Samsung also tried to denigrate the testimony of witnesses that were confused by Samsung's advertisements by calling them mere "friends, family, and employees."  Motion at 19.  But many times the evidence of confusion is going to most likely come from a client, customer or business associate, otherwise it is not likely to be reported to the plaintiff to express their confusion.  Here, the evidence is from business associates (some of which could be called a "friend" in the general sense).  Samsung's characterization is not entirely accurate, however, and this evidence should go to the jury.

Nevertheless, there are continuing examples of general consumers—not friends or family—wrongly associating Samsung products with S10 Entertainment's social media posts, and responding in ways that evidence ongoing confusion in the market.  These responses include tagging S10 Entertainment's Instagram with pictures of Samsung phones and responding to S10 Entertainment's post with

comments related to Samsung.  (ECF No. 91-2, S10 SUF, ¶43).  Samsung similarly disparages this evidence without much diligence; asserting that these social media users are foreign (seemingly based on the language used or Samsung's subjective impression of the user's profile). Motion at 19.

These instances of actual confusion weigh in favor of S10 Entertainment.

### e.  *Marketing Channels Used*

Samsung's argument that the parties engage in different marketing channels minimizes the outsized use of social media marketing in the modern era, as well as, Samsung's use of the music space (where S10 Entertainment competes and markets itself) as a marketing channel.  "Convergent marketing channels increase the likelihood of confusion."  *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).  "In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products."  *Pom Wonderful LLC*, 775 F.3d at 1130 (citing *Nutri/Sys., Inc.*, 809 F.2d at 606).  "The greater the degree of overlap, the more likely there is to be confusion."  *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1180 (C.D. Cal. 2010) (citing *Sleekcraft*, 599 F.2d at 353).

S10 Entertainment uses its own website and social media accounts to market its products and services.  (ECF No. 91-2, S10 SUF, ¶32).  Samsung similarly uses its own website and social media accounts to market its products.  (ECF No. 91-2, S10 SUF, ¶44).  The particular presentation of the marketing done on social media will vary for every company—as explained by S10 Entertainment's social media marketing expert—but both parties are still using the same social media platforms to market their offerings.  Motion at 13.  Samsung also marketed the S10 phone using musical artists (like those represented by S10 Entertainment); musical events (like those S10 Entertainment's artists perform at), and; music streaming platforms (like those that S10 Entertainment's artists appear on).  (ECF No. 91-2, S10 SUF,

¶¶33, 48, 49, 50).

The evidence unequivocally shows that the parties share similar marketing channels. Therefore, this factor favors S10 Entertainment.

### f.   *Types of Goods and Degree of Care*

In its Motion, Samsung artificially narrows S10 Entertainment's consumers to its current and former recording artist clients. Samsung's characterization omits several categories of S10 Entertainment's current customers, prospective customers, as well as, relevant non-purchasing consumers who may influence S10 Entertainment's customers. "In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media*, 406 F.3d at 634 (citing *Brookfield*, 174 F.3d at 1060). Courts look both to the "relative sophistication of the relevant consumer," *Fortune Dynamic*, 618 F.3d at 1038, and the cost of the item, *Brookfield*, 174 F.3d at 1060, in determining the degree of care likely to be exercised by the purchaser.

S10 Entertainment's customers and potential customers are musical artists, aspiring artists, music writers, others involved in the music industry who may wish to collaborate and the consumers of popular music, brands who may wish to hire S10 Entertainment's artists, and patrons of popular music.  (ECF No. 91-2, S10 SUF, ¶¶59, 60).  Some of these consumers are sophisticated and some are not.  And, in fact, there was actual confusion among even some sophisticated consumers. (*Id.* at ¶¶38, 40). Even focusing just on musicians seeking talent management services, these potential consumers are not always highly sophisticated shoppers. (*Id.* at ¶60). Some bourgeoning musicians are teenagers, or music students, and many others have little understanding of how the music industry operates.  *Id.*

In addition, non-consumers of popular music are relevant to the evaluation of likelihood of confusion.  The Ninth Circuit has recognized three categories of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

potentially relevant non-consumers, including (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers are likely to be confused; and (3) non-consumers whose confusion could influence consumers. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1214 (9th Cir. 2012). S10 Entertainment's social media marketing expert, Cassie Petrey, analyzed the impact of relevant non-consumers in the music space on S10 Entertainment's customers and potential customers. (ECF No. 113-4, November 15, 2022 Rebuttal Expert Report Cassie Petrey at pgs. 7-11).

Here, a reasonable customer may assume Samsung has formed a partnership with S10 Entertainment (given Samsung's use of artists to promote its products) and/or producing music (given Samsung's use of music streaming platforms and music events to promote its products). Indeed, as shown by the example of LVRN and Reebok, music talent management companies have entered into partnerships with consumer product companies. (ECF No. 37, FAC, at ¶ 50; See also Graif Decl. Ex. 1, S10ENT_0000024). Indeed, smartphones and music "are now as complementary as baseball and hot dogs." *Dreamwerks,* 142 F.3d at 1131.

The evidence shows that relevant consumers and non-purchasing consumers, exercising reasonable care in considering S10 Entertainment's goods and services, are likely to assume that Samsung is associated with or the source of S10 Entertainment's goods and services. This weighs in S10 Entertainment's favor.

g. *Samsung Intentionally Selected and Willfully Infringed the S10 Mark*

Samsung knew of S10 Entertainment's mark, failed to conduct a reasonable trademark search, and/or culpably disregarded the risk of reverse confusion in this case. All of this shows willful infringement. *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 934–35 (9th Cir. 2017) ("Intent could also be shown by evidence that, for example, the defendant knew of the mark, should have known of the mark,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

intended to copy the plaintiff, failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded the risk of reverse confusion. The tenor of the intent inquiry shifts when considering reverse confusion due to the shift in the theory of confusion, but no specific type of evidence is necessary to establish intent, and the importance of intent and evidence presented will vary by case.")

Samsung admits that it first became aware of S10 Entertainment on or around ██████████████████ months prior to the launch of the S10 phone.  (ECF No. 91-2, S10 SUF, ¶52).  Therefore, Samsung knew about or had reason to know about the S10 Mark prior to its launch of the phone, yet still used the S10 Mark without seeking approval and/or a license to use the mark from S10 Entertainment. Samsung also alleges that it conducted trademark searches, but fails to detail the searches performed or the dates of the searches.  Motion at 16. What is clear, however, is that these searches were inadequate in their scope and/or timing prior to the launch of the 'S10' phone or they would have revealed S10 Entertainment's S10 Mark. Therefore, Samsung either knew about the S10 Mark, and used it anyway, or failed to adequately clear its use in complete disregard of the risk of reverse confusion in this case. *Marketquest Grp., Inc.*, 862 F.3d at 934–35 (9th Cir. 2017).

Samsung's argument that its use of the "S10" mark and related conduct was in "good faith" is hollow. Motion at 15, 22-23.  As described above, Samsung knew of S10 Entertainment prior to launch its S10 phone, but disregarding the risk.  Worse yet, Samsung actively marketed the phone in the music space in which S10 Entertainment competes. None of Samsung's conduct evidences good faith.

At minimum, Samsung's conduct presents triable issues of fact on willfulness, for the jury to decide. "Generally, a determination as to willfulness requires an assessment of a party's state of mind, a factual issue that is not usually susceptible to summary judgment." *Juul Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1055 (C.D. Cal. 2021) (citing *UMG Recordings, Inc. v. Disco Azteca Distribs.*, 446 F. Supp. 2d

1164, 1174 (E.D. Cal. 2006)). "[W]illfulness is generally a question of fact for the jury." *Juul*, 557 F. Supp. 3d at 1056 (citing *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 784 (N.D. Cal. 2013)).

### h.   Likelihood of Expansion of Product Lines

This factor has little relevance to this matter. Although, there is evidence that S10 Entertainment is continuing to expand its offerings, at present it does not intend to enter the consumer device space. Regardless, the likelihood of expansion factor is irrelevant when the parties' services are already related. *See Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982). Indeed, in such cases, even if neither party plans to expand, the factor is neutral. *See Monster Energy Co. v. BeastUp Ltd. Liab. Co.*, 395 F. Supp. 3d 1334, 1360 (E.D. Cal. 2019).

### i.   Evaluation of Factors

The foregoing analysis of the relevant *Sleekcraft* factors shows that there are, at minimum, disputes of material facts that preclude summary judgment or warrant a grant of summary judgment in S10 Entertainment's favor.

### d.   The Unfair Competition Claims Should Not Be Dismissed

S10 Entertainment's claims under California Common Law Unfair Competition (count 4) and Cal. Bus. & Prof. Code § 17200 (claim 5) stem from Samsung's trademark infringement, require the same test, and should go to the jury. The Ninth Circuit has made this clear in cases of trademark infringement. *See, e.g., Microsoft Corp. v. Buy More, Inc.*, 703 Fed. App'x 476, 479 (9th Cir. 2017) ("The analysis for [unfair competition under California common law] is therefore ***identical*** to the analysis for [Plaintiff's] trademark infringement claim.") (emphasis added); *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) ("The test for false designation under the Lanham Act, as well as the common-law and statutory unfair competition claims, is whether there was a "likelihood of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

confusion.") (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)).

"Because Plaintiff has sufficiently alleged trademark infringement under the Lanham Act, Plaintiff has also sufficiently alleged its fourth claim for California common law unfair competition." *Glob. Apogee v. Sugarfina, Inc.*, 2018 WL 4945305, at *5 (C.D. Cal. Oct. 10, 2018). "The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same: whether confusion is likely." *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), *aff'd,* 830 F.2d 197 (9th Cir. 1987) (citing *New West Corp. v. NYM Co. of Val., Inc.,* 595 F.2d 1194, 1201 (9th Cir. 1979)). "This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent" to claims made under the Lanham Act….under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Cleary*, 30 F.3d at 1262–63.

Samsung relies on two cases, neither change the analysis.  First Samsung says that common law unfair competition is limited to passing off – this is not true.  The claim merely ***includes*** the situation of passing off, but it is by no means limited to such a situation.  The California courts have made this clear.  *Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1263 (1992) (noting that a California unfair competition claim covers trademark infringement and "***also*** includes acts analogous to 'passing off.'") (emphasis added).  Defendants fail to tell the Court that passing off is just one way to show common law unfair competition, not the only way.  This is why the Ninth Circuit has held that "[c]laims for false designation of origin under the Lanham Act and unfair competition under California common law both share a ***single*** test: likelihood of confusion.") *Microsoft*, 703 Fed. App'x at 479 (citing *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) (emphasis added)).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Samsung also cites to a 2000 district court case, *Trovan*, inventing a prohibition on reverse confusion being grounds for unfair competition without competition (Motion at 21).  That district court case has not been cited favorably in the last 20 years and goes against clear Ninth Circuit authority.  *See, e.g., Microsoft*, 703 Fed. App'x at 479.  Regardless, there is competition here, making the point moot.  Further, that case was issued prior to the Supreme Court's decision in *Romag* and its subsequent application in cases involving reverse confusion.[11]

### e.   Disgorgement And Other Damages are Available in This Case.

On damages, the Lanham Act allows a plaintiff who establishes a violation of § 43(a) of that act "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).  "In assessing profits the plaintiff shall be required to prove defendant's sales only[.]" *Id.*  It is undisputed that between March 2019 and March 2022, Defendants sales for the S10 phone totaled more than ███████.  (ECF No. 91-2, S10 SUF, ¶28).

Samsung incorrectly argues that S10 Entertainment's only damages claim is disgorgement. S10 Entertainment has only provided a mathematical ***computation*** of damages that could be quantified by its expert, disgorgement.  There are, however, other forms of damages that can and should go to the jury, including the value of reputational harm to S10 Entertainment based on Samsung's infringement. The Ninth Circuit has made it clear that the Lanham Act "demands neither empirical quantification nor expert testimony to support a monetary award of actual damages; many sources can provide the requisite information upon which a reasonable jury

---

[11] Compare *Trovan, Ltd. v. Pfizer, Inc.,* No. CV-98-0094 LGB MCX, 2000 WL 709149, at *4 (C.D. Cal. May 24, 2000) to *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492 (2020); see also *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257, at *5 (C.D. Cal. Oct. 6, 2021) and *D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*, No. CV 20-9770-MWF (KSX), 2022 WL 4596548, at *12 (C.D. Cal. Aug. 26, 2022).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

may calculate damages." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012)

Here, there is evidence of reputational harm that is difficult to quantify. Graif Decl. Ex. 4 at Response No. 2; ECF No. 91-15, Petrey Opening Expert Report, ¶¶ 32, 84, 92. "The Ninth Circuit has emphasized that 'many sources can provide the requisite information upon which a reasonable jury may calculate damages' under Section 1117." *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2019 WL 4546897, at *4 (C.D. Cal. Aug. 2, 2019) (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993), *abrogated* by *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ("damages are not rendered uncertain because they cannot be calculated with absolute exactness")).

Samsung also incorrectly asserts that disgorgement damages are not available in this case because S10 Entertainment is only pursuing claims for reverse confusion. "[D]isgorgement of profits in reverse confusion cases is now possible as a result of the holding [in *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492 (2020)]." *Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257, at *5 (C.D. Cal. Oct. 6, 2021). "[I]ntent is no longer a prerequisite to disgorgement of profits." *Id.* Other courts in this district have also found that disgorgement damages are available in reverse confusion cases. *See, e.g., D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*, No. CV 20-9770-MWF (KSX), 2022 WL 4596548, at *12 (C.D. Cal. Aug. 26, 2022) ("disgorgement of profits" is an available remedy in reverse confusion cases). Therefore, disgorgement and other damages are still available in this case.

## IV.   CONCLUSION

S10 Entertainment respectfully requests that Samsung's Motion be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DATED:  January 3, 2023                    Respectfully submitted,

                                           **MINTZ, LEVIN, COHN, FERRIS,**
                                           **GLOVSKY & POPEO, P.C.**

                                           By: /s/ *Andrew D. Skale*
                                                Andrew D. Skale (211096)
                                                Matthew S. Hurley
                                                (Admitted *Pro Hac Vice)*
                                                Michael R. Graif
                                                (Admitted *Pro Hac Vice* )
                                                James J. Thomson
                                                (Admitted *Pro Hac Vice*)
                                                Oliver Ennis
                                                (Admitted *Pro Hac Vice*)

                                           **Attorneys for Plaintiff S10**
                                           **Entertainment**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on January 3, 2023, a true and correct copy of the

3

foregoing was filed electronically using the Court's CM/ECF system, which shall

4

send notifications of such filing to all counsel of record.  Any counsel of record who

5

has not consented to electronic service through the Court's CM/ECF system will be

6

served by electronic mail.

7

8

By:  /s/ *Andrew D. Skale*

Andrew D. Skale (SBN 211096)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT