Andrew D. Skale (SBN 211096)
adskale@mintz.com
Matthew S. Hurley (Admitted *Pro Hac Vice*)
mshurley@mintz.com
Michael R. Graif (Admitted *Pro Hac Vice*)
Mrgraif@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
   AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
(858) 314-1500

*Attorneys for Plaintiff*
*S10 Entertainment & Media LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD.; and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | Case No. 2:21-cv-2443-CAS-JPR<br>**REDACTED**<br>**PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN**<br><br>Date:  January 23, 2023<br>Time:  10:00 a.m.<br>Hon. Christina A. Snyder<br>Courtroom:  8D, 350 W. First Street |

1

# **TABLE OF CONTENTS**

2

**Page**

3

4
**I.**  INTRODUCTION ......................................................................................... 1

5
**II.**  LEGAL STANDARD .................................................................................. 2

6
    **A.**  The Bar to Exclude a Confusion Survey in the Ninth Circuit is High ................................................................................................ 2

7
    **B.**  Samsung's District Court Cases Regarding Keegan are Unavailing ........ 4

8
    **C.**  Samsung's Other Citations to District Court Cases are Unavailing ........ 6

9
**III.**  ARGUMENT ............................................................................................... 9

10
    **A.**  Keegan Surveyed an Accurate Universe .................................................... 9

11
    **B.**  Keegan's Survey Questions Were Not Leading ..................................... 13

12
    **C.**  Keegan's Survey Conformed to the *Eveready* Survey Design ............... 17

13
    **D.**  Keegan's Survey Measured Confusion .................................................... 21

14
**IV.**  DEFENDANTS FAILED TO CITE CONTROLLING CASES ...................... 25

15
**V.**  CONCLUSION ........................................................................................... 25

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Beyond Blond Prods., LLC v. Heldman,*
 No. CV 20-5581, 2021 WL 4860376 (C.D. Cal. Aug. 13, 2021), *aff'd sub nom.  Beyond Blond Prods., LLC v. ComedyMX, LLC,* No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022)...........................................5

*Brighton Collectibles, Inc. v. RX Tex. Leather Mfg.*
 923 F. Supp. 2d. 1245 (S.D. Cal. 2013) .......................................6, 16

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.,*
 No. SACV 04-725, 2006 WL 5187497 (C.D. Cal. Mar. 2, 2006) ............17—18

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
 251 F.3d 1252 (9th Cir. 2001) ....................................................3, 15

*Combe Inc., v. Dr. Aug Wolff GmBH &Co. KG Arzneimittel*
 382 F. Supp. 3d 429 (E.D. Va. 2019), *aff'd,* 851 F. App'x 357 (4th Cir. 2021)....................................................................................20

*CSL Silicones, Inc. v. Midsun Grp. Inc.*
 No. 3:14-CV-1897 (CSH), 2017 WL 6055380 (D. Conn. Dec. 7, 2017) ...........................................................................................8

*Daubert v. Merrell Dow Pharms., Inc.,*
 509 U.S. 579 (1993)...................................................................3

*E & J Gallo Winery v. Gallo Cattle Co.*
 967 F.2d 1280 (9th Cir. 1992) ....................................................2

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
 618 F.3d 1025 (9th Cir. 2010) ................................................*passim*

*Gucci Am., Inc. v. Guess,*
 831 F. Supp. 2d 723 (S.D.N.Y. 2011), *on reconsideration in part,,*No. 09 CIV. 4373 SAS, 2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011) ..........7, 8, 20

*Kargo Global Inc. v Advance Magazine Publishers, Inc.*
 No. 06 Civ. 550 (JFK), 2007 BL 78876, at *9 (S.D.N.Y. Aug. 6, 2007) ...........................................................................................15

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.,*
 285 F.3d 848 (9th Cir. 2002) ....................................................11

*KT AMC Co. v. LWC Cap., LLC,*
 No. 2:17-CV-04289, 2017 WL 7171719 (C.D. Cal. Nov. 6, 2017)..................25

*Kudos Inc. v. Kudoboard LLC,*
 No. 20-CV-01876-SI, 2021 WL 5415258 (N.D. Cal. Nov. 20, 2021).......4, 5, 16

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

*Kwan Software Eng'g. Inc v. Foray Techs., LLC.*
No. C 12-03762 SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) .........6, 20—21

*M2 Software, Inc., a Delaware corporation v. Madacy Ent., a
corporation* 421 F.3d 1073 (9th Cir. 2005) ................................................15, 22

*MacDougall v. Am. Honda Motor Co.,*
No. 20-56060, 2021 WL 6101256 (9th Cir. Dec. 21, 2021) ..............................3

*Medisim Ltd. v. BestMed LLC,*
861 F.Supp.2d 158 (S.D.N.Y. 2012) ..................................................................21

*Nelson v. Patel,*
No. CV 09-07722, 2010 U.S. Dist. LEXIS 44497 (C.D. Cal. Mar. 26,
2010) ..................................................................................................................25

*Oracle America, Inc. v. Google Inc.*
No. C 10-03561, 2016 WL 1743116 (N.D. Cal. May, 2 2016).......................6, 7

*Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of California,*
694 F.2d 1150 (9th Cir. 1982) ............................................................................2

*Rearden LLC v. Rearden Commerce, Inc.,*
683 F.3d 1190 (9th Cir. 2012) ..........................................................................11

*Reinsdorf v. Sketchers U.S.A.*
922 F. Supp. 2d 866 (C.D. Cal. 2013) ................................................................6

*Shannon Fabrics, Inc. v. Jo-Ann Stores, Inc.,*
No. CV 13-9509, 2015 WL 12752445 (C.D. Cal. Jan. 6, 2015).........................9

*Simon Prop. Grp. LP v. MySimon, Inc,*
104 F. Supp. 2d 1033 (S.D. Ind. 2000)..............................................................16

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997)....................................................................*passim*

*Steak Umm Co., LLC v. Steak 'Em Up,*
68 F. Supp. 2d 415 (E.D. Pa. 2012)...................................................................20

*Surfvivor Media, Inc. v. Survivor Prods.,*
406 F.3d 625 (9th Cir. 2005) ............................................................................11

*Tokidoki, LLC v. Fortune Dynamic, Inc.,*
No. CV 07-1923, 2008 WL 11338772 (C.D. Cal. Sept. 29, 2008) ...................17

*Tortilla Factory, LLC v. GT's Living Foods, Inc.,*
No. CG 17-7539, 2022 WL 3134458 (C.D. Cal. June 9, 2022).........................17

*Universal City Studios, Inc. v. Nintendo Co*
746 F. 2d. 112 (2d. Cir. 1984) ..........................................................................16

*vonRosenberg v. Lawrence,*

iii

1

413 F. Supp. 3d 437 (D.S.C. 2019) ........................................................5

2

*Wendt v. Host Int'l, Inc.,*
125 F.3d 806 (9th Cir. 1997) ............................................................2, 3

3

**Other Authorities**

4

Eric D. DeRosia, *Fixing Ever-Ready: Repairing and Standardizing the
Traditional Survey Measure of Consumer Confusion,* 53 GA. L. REV.
613 (2019)..................................................................................17, 22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

**TO THE COURT AND ALL PARTIES OF RECORD:**

PLEASE TAKE NOTICE that on January 23, 2023, at 10:00 a.m. in Courtroom 8D of the of the United States District Court for the Central District of California, located at 350 West First Street in Los Angeles, California, Plaintiff S10 Entertainment & Media LLC ("S10") will and hereby does move in opposition to Defendant's Corrected Motion To Exclude Evidence And Testimony From Mark Keegan.

This motion is based upon the Motion and the Declaration of Michael R. Graif, filed concurrently herewith, all pleadings and papers on file in this matter, and oral argument.

Plaintiff has complied with Local Rule 7-3. See Declaration of Michael R. Graif in Support of Plaintiff's Opposition Motion to Defendant's Corrected Motion To Exclude Evidence And Testimony From Mark Keegan at ¶ 8.

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

## I.    INTRODUCTION

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively "Samsung") motion notably failed to address the very high threshold in the Ninth Circuit to exclude a consumer confusion survey.  Samsung repeatedly ignored on-point Ninth Circuit law, instead citing to out-of-Circuit cases that directly contradict the relevant law in the Ninth Circuit.  In the Ninth Circuit, all of the issues they raise with Keegan's Survey only go to the weight of the survey, not exclusion.  In fact, Samsung does not cite any on-point Ninth Circuit law that directly addresses the exclusion of surveys.  Samsung's attempt to hide the ball should be viewed for what it is:  an attempt to mislead the Court.

Further, Samsung's motion is simply wrong on the facts, as Samsung mischaracterized the Keegan Survey and requirements under the *Eveready* format.  Contrary to what Samsung alleged, Keegan's report is reliable, as he:  (1) surveyed an accurate universe; (2) did not use leading questions; (3) used a stimulus that conformed to the *Eveready* format; and (4) employed survey questions that measured confusion.

The Court should keep three additional points in mind as it considers the numerous deficiencies in Samsung's motion.  *First*, Samsung's argument that the Keegan Survey in this case should be excluded because three of Keegan's surveys in other cases have been excluded, is unavailing.  *See* Defendant's Corrected Motion To Exclude Evidence and Testimony From Mark Keegan ("Defendant's Motion"), ECF No. 111, at 10.  Those cases were all decided under out-of-Circuit law and obviously involved factually different surveys, which were criticized for reasons not present here.  Regardless, he is a widely-known survey expert whose surveys have been admitted in hundreds of cases.  *See* Exhibit A, Mark Keegan Deposition Testimony ("Keegan Deposition Samsung Transcript"), November 22, 2022, 19:14—22.  Nevertheless, this survey should be viewed independently of what a few courts (out of the hundreds that considered his work) did with other surveys unrelated to anything done here.

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

*Second*, Samsung's attempt to connect an internal survey apparently showing ▮▮▮▮ recognition of the S10 phone to the results of the Keegan Survey is baseless. Regardless, this is a cross-examination issue that goes to weight in the Ninth Circuit. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("[c]hallenges to survey methodology go to the weight given the survey, not its admissibility.")

*Third*, and perhaps most glaring, Samsung failed to offer **_any_** competing affirmative or rebuttal likelihood of confusion surveys. 26.7% of respondents in the Keegan Survey were confused, far exceeding the 15% minimum threshold to demonstrate a likelihood of confusion. Expert Report of Mark Keegan ("Keegan Report"), October 7, 2022, ECF No. 111-2, ¶ 6 & n.7. The Court, therefore, should view Samsung's motion to exclude the Keegan Survey for what it is: an attempt to sidestep their own lack of any survey data to counter the overwhelming evidence of confusion shown by the Keegan Survey.

## II.  LEGAL STANDARD

The Court should disregard the legal standard that Samsung attempts to establish. *See* Defendant's Motion, ECF No. 111 at 9—11. Their mischaracterizations about the state of the law in the Ninth Circuit and citations to irrelevant, out-of-Circuit case law that is directly contradicted by on-point Ninth Circuit law, are clear attempts to hide from the Court controlling law that Samsung must know dooms their motion.

### A.  The Bar to Exclude a Confusion Survey in the Ninth Circuit is High

"[S]urvey evidence should be admitted as long as it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010); *see also E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992). Any "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility." *Wendt*, 125 F.3d at 814; *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of California*, 694 F.2d 1150, 1156 (9th Cir. 1982) ("Technical unreliability goes to the weight accorded to a survey,

1  not its admissibility").  "Unlike novel scientific theories, a jury should be able to

2  determine whether asserted technical deficiencies undermine a survey's probative

3  value." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir.

4  1997).  Thus, while the "threshold question [of admissibility] may be determined by

5  the judge…follow-up issues of methodology, survey design, reliability, the experience

6  and reputation of the expert, critique of conclusions, and the like go to the weight of

7  the survey rather than its admissibility….[which] are issues for a jury." *Clicks Billiards,*

8  *Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).  Indeed, "[v]igorous

9  cross-examination, presentation of contrary evidence, and careful instruction on the

10  burden of proof are the traditional and appropriate means of attacking shaky but

11  admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596

12  (1993).

13       Strikingly, Samsung ignores all of this controlling Ninth Circuit precedent that

14  makes clear how high the bar is to exclude a survey in this Court.  Samsung does not

15  cite to ***even one*** Ninth Circuit case throughout their entire motion that addresses the

16  admissibility of survey evidence.  Instead, Samsung chooses to cite to irrelevant,

17  improperly-decided, and clearly distinguishable district court cases.  They also cite to

18  a number of out-of-Circuit cases that do not follow the high standard in the Ninth

19  Circuit, making the cases also irrelevant at best, and misleading at worst.  The Ninth

20  Circuit recently reversed an exclusion of expert testimony in a Central District of

21  California case when the "district court relied on numerous cases that do not analyze

22  the admissibility of conjoint analysis under Rule 702 or *Daubert… ." MacDougall v.*

23  *Am. Honda Motor Co.*, 2021 WL 6101256, *1 (9th Cir. Dec. 21, 2021). ("Honda's

24  challenges—*inter alia*, the absence of market considerations, specific attribute

25  selection, and the use of averages to evaluate the survey data—'go to the weight given

26  the survey, not its admissibility.'"  (citing *Wendt*, 125 F.3d at 814)).  All of Samsung's

27  (incorrect) criticisms of the Keegan Survey go to weight, not admissibility.

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

**B.**      <u>Samsung's District Court Cases Regarding Keegan are Unavailing</u>

Similarly, Samsung asks the Court to commit reversible error by citing to numerous district court cases that do not properly assess the question their motion raises:  whether the Keegan Survey should be excluded based on on-point, Ninth Circuit law (it should not).  A review of the three cases Samsung points to where Keegan's surveys, none of which were *Eveready* surveys, were "excluded" is revealing.  *See* Defendant's Motion, ECF No. 111 at 10—11.

First, Samsung points to *Kudos Inc. v. Kudoboard LLC*, a case from the Northern District of California, because he "surveyed the wrong universe and improperly presented leading questions." *See* No. 20-cv-01876, 2021 WL 5415258 (N.D. Cal. Nov. 20, 2021).  But that case relied on out-of-Circuit case law for that holding and ignored the well-established Ninth Circuit rule that challenges to survey methods "go to the weight of the survey rather than its admissibility." *Fortune Dynamic*, 618 F.3d at 1038.  In fact, the *Kudos* court did not cite a single Ninth Circuit case (or any case for that matter) to reach its conclusion that Keegan presented respondents with "leading stimuli." 2021 WL 5415258 at *12.  Instead, it merely stated – without any analysis – that the display of the stimuli "constitute[d] a lead-in that departs from simulated market conditions by substantively describing the products that followed." *Id*.

Notably, this was precisely the reason why the Ninth Circuit reversed the district court's exclusion of a survey in *Fortune Dynamics*.  There, the district court supported its reasoning by citing to unpublished district court decisions, only one of which was within the Ninth Circuit.  *See Fortune Dynamics*, 618 F.3d at 1037.  The Ninth Circuit noted that such "technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." *Id*. at 1036.  This is a holding the Ninth Circuit has made repeatedly. *See Southland*, 108 F.3d at 1143 (defendants' objection to a survey based on leading questions "go[es] only to the weight, and not the admissibility, of the survey").

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

1    That case also involved a *Squirt* study which "exposes [survey respondents] to

2  sequential "stimuli showing the contested marks". *Kudos*, 2021 WL 5415258 at *11

3  (citing Keegan's report). This is different from the single-stimulus *Eveready* survey

4  that the Keegan employed in the case at hand.

5    Next, Samsung points to *Beyond Blond Prods., LLC v. Heldman,* a case from the

6  Central District of California, for the notion that surveys can be excluded "due to failure

7  to measure whether the confusion was specifically attributable to the design elements

8  at issue". S*ee* No. CV 20-5581, 2021 WL 4860376, at *1 (C.D. Cal. Aug. 13, 2021),

9  *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC,* No. 21-55990, 2022

10  WL 1101756 (9th Cir. Apr. 13, 2022); Defendant's Motion, ECF No. 111 at 10. But

11  Samsung is wrong. In that case, the survey ***wasn't*** excluded, it was just disregarded by

12  the court when a defendant tried to introduce new evidence to reargue an issue it had

13  previously lost on a motion for preliminary injunction. *Id*. at *5. This is not an

14  exclusion, and Samsung's reference to it as such is troubling. The court doesn't cite to

15  any case law at all concerning excluding surveys, not even district court cases, much

16  less Ninth Circuit cases. As such, this was at best just a refusal to consider new

17  evidence. Additionally, that case also involved a *Squirt* survey which utilized the

18  sequential presentation of contested marks. *Id*. at *4 (citing Keegan's report). This,

19  again, involves an *Eveready* survey.

20    Third, Samsung points to *vonRosenberg v. Lawrence*, a case from the District of

21  South Carolina., for the notion that Keegan's survey was excluded because it "surveyed

22  the wrong universe and improperly excluded highly relevant respondents." S*ee* 413 F.

23  Supp. 3d 437, 454 (D.S.C. 2019); Defendant's Motion, ECF No. 111 at 10. This South

24  Carolina case obviously does not follow the Ninth Circuit. Further, this was a

25  genericness (*Teflon*) study, not an *Eveready* survey measuring likelihood of confusion.

26  *Id*. at 452 (citing Keegan's report).

27

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

1

## C.    <u>Samsung's Other Citations to District Court Cases are Unavailing</u>

2

Samsung then cites to five district court cases, not citing any controlling Ninth

3

Circuit law.   Defendant's Motion, ECF No. 111 at 10—11.   Samsung first cites to

4

*Reinsdorf v. Sketchers U.S.A.*, a Central District of California case, for the notion that

5

surveys can be excluded due to improper universe and leading design.   *See* 922 F. Supp.

6

2d 866, 878 (C.D. Cal. 2013).   In *Oracle America, Inc. v. Google Inc.*, a Northern

7

District of California case, the court refused to rely on *Reinsdorf* to exclude a survey

8

after distinguishing *Reinsdorf's* egregious issues.   No. C 10-03561, 2016 WL 1743116,

9

*6 (N.D. Cal. May, 2 2016).   Its description of the *Reinsdorf* survey is instructive:

10
11
12
13

> [t]he survey provided no basis to indicate how its sample was selected, or why its respondents were representative of the relevant population.   The survey format used images that produced biased, unreliable results, and provided respondents with no basis for meaningful brand comparison.   The proffering party made "virtually no attempt to defend [the expert's] methods"…

14

As noted below, Keegan's Survey did nothing similar to what occurred in *Reinsdorf*,

15

as Keegan surveyed an accurate universe and explained his rationale.

16

Samsung next cites to *Brighton Collectibles, Inc. v. RX Tex. Leather Mfg.*, a

17

Southern District of California case, for the notion that a survey can be excluded due

18

to a leading design.   *See* 923 F. Supp. 2d 1245 (S.D. Cal. 2013).   The obviously leading

19

design in *Brighton* is abundantly clear from the court's description.

20
21
22
23

> Participants were first shown four authentic products.   In that display, two of Brighton's products were black and red, and all four had large heart ornaments. [citations omitted].   Next, Frazier showed participants four similar handbags made by other manufacturers.   Yet, only the Defendants' handbag was two-color (black and brownish-red) with heart decorations.   [citations omitted].

24

*Id.* at 1257.   As will be discussed below, the Keegan Survey is nothing like the survey

25

in *Brighton*, which was not reviewed by the Ninth Circuit.

26

Lastly, Samsung cites to *Kwan Software Eng'g, Inc. v. Foray Techs., LLC,* a

27

Northern District of California case, for the notion that a survey can be excluded for

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

using the incorrect universe.  *See* No. C 12-03762 SI, 2014 WL 572290, at *4 (N.D. Cal. Feb. 11, 2014).  The court in *Oracle* also refused to rely on this case, again providing an instructive description of the case:

> the survey did not focus on potential users of the software; its respondents were not even people who would see the alleged misrepresentations, much less potential purchasers of the software.  The proffering party "made no attempt to show" the survey's probative value despite its unrepresentative sample.

2016 WL 1743116 at *5.  As will be discussed below, Samsung cannot make a credible argument that Keegan's Survey suffered from such issues because both population segments that Keegan surveyed are clearly relevant to the issue of confusion.[1]

The last two cases Samsung cites were out-of-Circuit district court cases that should be disregarded, as they do not follow Ninth Circuit law.  Additionally, these out-of-Circuit cases are the only two that Samsung specifically note excluded an *Eveready* survey.  S10 Entertainment has looked and has not been able to find any case where the Ninth Circuit affirmed the exclusion of an *Eveready* survey.  However, these cases are nonetheless readily distinguishable.

Samsung points to *Gucci Am., Inc. v. Guess,* from the Southern District of New York, to say a survey can be excluded if it substantially fails to reflect marketplace conditions.  *See* 831 F. Supp. 2d 723, 745 (S.D.N.Y. 2011), *on reconsideration in part,* No. 09 CIV. 4373 SAS, 2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011).  In this case:

> [T]he Guess name was left on the product, albeit in a way that one is unlikely to find if not directed to look for it.  Guess's argument, however, was not simply that the Mantis test bag failed to include the Guess name.  Instead, Guess argued that the Mantis test bag was unrepresentative because it lacked permanent fixtures bearing the Guess name present on the vast majority of allegedly infringing bags that the Mantis test bag was to represent.  Because Gucci provides no answer to this criticism, and because I find it to be convincing, I find

---

[1] While S10 Entertainment cited to some of these cases in its motion to exclude Samsung's expert Dr. Keith A. Botner, who ran a purchasing survey (which is different from a likelihood of confusion survey), it cited them for general propositions and issues much different than noted herein. *See* ECF No. 85 at 7, 15, 18, and 23.

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

that the Mantis test bag failed substantially to reflect actual marketplace conditions.

*Id*. at 744—45.  As is detailed below, the facts in the case at hand are clearly distinguishable from the facts in *Gucci* as the stimulus Keegan used (the letters "S10" followed by a description of the services S10 Entertainment provides) accurately reflected the marketplace.

Samsung lastly points to *CSL Silicones, Inc. v. Midsun Grp. Inc.,* a case from the District of Connecticut, where an *Eveready* survey was excluded because "[t]he errors in selecting the universe of participants for the survey are sufficient to render the survey inadmissible as it pertains to any evidence of market recognition or likelihood of confusion" with respect to one of several marks at issue.  *See* No. 3:14-CV-1897 (CSH), 2017 WL 6055380, at *8 (D. Conn. Dec. 7, 2017).  However, Samsung fails to note the egregious missteps of the survey expert in that case.

Indeed, there is no sign from Fusco's expert report, deposition testimony, or Midsun's memorandum in opposition to the instant motion that the survey screened for the relevant potential consumers of the parties' respective products bearing the 579 mark.  To the contrary, all indications are that Fusco was under the erroneous belief that both the products bearing the 570 mark and the 579 mark are applied in conjunction with high voltage electrical equipment.

*Id*.  The opinion goes on to note deposition testimony where the survey expert admits that he didn't understand that the two marks applied to different universes and that his survey studied the wrong universe in connection with one of the marks.  Notably, his survey was only excluded as it pertained to the mark that he was mistaken about; it was allowed for the other mark.

In sum, the Ninth Circuit is loath to exclude surveys that pass the minimum threshold tests of reliability and relevance because challenges to survey methods "go to the weight of the survey rather than its admissibility." *Fortune Dynamic*, 618 F.3d at 1038.  Hence, the Court should deny Samsung's motion.

### III.    ARGUMENT

Besides being proper under controlling Ninth Circuit law, the Keegan Survey should be admitted because it:  (a) surveys an accurate universe; (b) did not use leading questions; (c) utilized a stimulus that conformed to the *Eveready* survey design; and (d) measured confusion.  Simply put, Samsung is wrong on the facts, and even if they were right (they aren't), Ninth Circuit case law does not support exclusion.

### A.    <u>Keegan Surveyed an Accurate Universe</u>

Samsung argues that the Keegan Survey utilized an improper universe. Defendant's Motion, ECF No. 111 at 12—15.  They are incorrect.

First, whatever survey universe Keegan used is irrelevant to the issue of exclusion in the Ninth Circuit, as universe composition simply goes to the weight of the survey.  *Southland*, 108 F.3d at 1142-43 (refusing to exclude survey based on universe); *Shannon Fabrics, Inc. v. Jo-Ann Stores, Inc.*, No. CV 13-9509, 2015 WL 12752445, at *2 (C.D. Cal. Jan. 6, 2015) (the wrong universe of potential consumers "go[es] to the weight of that evidence, and not its admissibility").

Second, even if the Ninth Circuit did look at the survey universe, Keegan's Survey universe was proper.  The Keegan Survey qualified respondents if (a) they were "currently primarily employed in either entertainment or entertainment management," or (b) were "likely to have exposure to [S10 Entertainment's] mark via their interest in the types of music produced by S10 Entertainment." Keegan qualified respondents who, within the prior year, had listened to music in the genres of modern pop, modern R&B, modern rap and/or Latin.  *See* Keegan Report, ECF No. 111-2, ¶ 22—23.

Concerning the first group, those who work in entertainment services or entertainment management, Samsung cited to Keegan's deposition to try and discredit his universe.  Defendant's Motion, ECF No. 111 at 13.  But, immediately following this deposition testimony Samsung misleadingly cited, Keegan reiterated that each of the respondents could be "a likely purchaser of S10 Entertainment's services," with

1  detailed explanations as to why.  Ex. A, Keegan Deposition Transcript, 34:19—35:24.
2  The Court should see through this poorly veiled attempt to mischaracterize what
3  Keegan said.

### 1. <u>Samsung's Claims Concerning Keegan's Universe are Wrong</u>

5  Samsung argued that Keegan surveyed the incorrect universe because some
6  participants in Keegan's Survey included:  (i) two customer service agents; (ii) an adult
7  entertainer; (iii) a human resources officer; (iv) a twitch streamer; (v) a videogame
8  streamer; (vi) an "assistant to the assistant manager"; (vii) a data analyst; (viii) an
9  assistant; and (ix) an executive assistant.  Defendant's Motion, ECF No. 111 at 13.
10  First, it should be noted that Samsung only takes issue with nine job titles, a total of
11  ten people, out of 334 respondents to the survey, or less than 3%.  Regardless, Samsung
12  is wrong that these survey respondents cannot be relevant to the survey universe.  In
13  Keegan's deposition, he more than convincingly answered the only two questions
14  about specific job positions that he was asked.  Ex. A, Keegan Deposition Transcript,
15  34:19—35:24.  Specifically, Keegan expressed the idea that individuals employed in
16  the many and varied areas of the entertainment industry would potentially be in the
17  market for the types of artist management services provided by S10 Entertainment.

18  Despite Samsung's propositions to the contrary, the music entertainment
19  industry has many interconnected facets.  Data analytics and social media are clearly
20  relevant to the purchasing customers.  And as Samsung is well-aware from their
21  numerous collaborations with musicians in their efforts to promote their products,
22  including the S10 smartphone, musicians are often surrounded by large teams of people
23  who help manage their business affairs, *e.g.* customer service, human resources,
24  assistant, and executive assistant, and social media presence, *e.g.* Twitch or videogame
25  streamers.  Some of these teams even use an "assistant to the assistant."

### 2. <u>Samsung Ignores the Non-Purchasing Consumers</u>

27  Samsung also ignored non-purchasing consumers, those who listen to the type

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

of music produced by S10 Entertainment.  Samsung themselves admit that non-purchasing consumers can be relevant in the Ninth Circuit.  Defendant's Motion, ECF No. 111 at 14 n.4. S10 Entertainment agrees.  *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 633 (9th Cir. 2005) (courts "may consider whether … non-purchasing members of the public, as well as actual consumers, were confused"); *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir. 2002) ("The law in the Ninth Circuit is clear that 'post-purchase confusion,' *i.e.,* confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can establish the required likelihood of confusion under the Lanham Act.").  Yet, Samsung acts as if these consumers are irrelevant.  They are not.

Samsung attempted to qualify the use of non-purchasing consumers, however, by noting that their use "'depends on how the groups are situated in relation to one another' and on demonstrating that such non-consumers would actually impact the purchasing decisions of the relevant consumers.  *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1214 (9th Cir. 2012)."  Defendants' Motion, ECF No. 111 at 14 n.4. However, R*earden* is not nearly as narrowing as Samsung makes it out to be.

> [I]t appears to be a matter of basic common sense to recognize the very real possibility that confusion on the part of at least certain non-consumers could either:  (1) turn into actual consumer confusion (i.e., potential consumers); (2) serve as an adequate proxy or substitute for evidence of actual consumer confusion (i.e., non-consumers whose confusion could create an inference of consumer confusion); or (3) otherwise contribute to confusion on the part of the consumers themselves (i.e., ***non-consumers whose confusion could influence consumer perceptions and decision-making***).

*Rearden,* 683 F.3d at 1216 (emphasis added).  The perceptions of people who listen to the music of artists that S10 Entertainment provides services to, certainly may "influence [their] perceptions and decision-making." *Id.*

Further, the Court should disregard Samsung's attempt to conflate the testimony of ███████████████████████████████████████

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

██████████████████████████ Defendant's Motion, ECF No. 111 at 1. ██

████████ is not a lawyer, and non-purchasing consumers is a term of art that S10 Entertainment clearly addressed in its interrogatory responses, where S10 Entertainment made it clear:

> [t]he types of persons and entities to whom S10 Entertainment's goods and services are marketed or offered for sale under or in connection with the S10 Mark include, but are not limited to, musical artists, managers, executives, publishing companies, record labels, festival organizers, and ***consumers of popular music***, in any form and through any media (print, electronic, social media, live music, streaming music, etc.).

Exhibit B, Responses and Objections to Defendants' First Set of Interrogatories to Plaintiff, November 29, 2021, Objections to Interrogatory No. 4 at 9—10 (emphasis added).  Additionally, "S10 provides full-service talent management, music publishing, and acts as a record label to musical artists and their various managers.  S10 acts as a liaison and representative between musical artists and publishing companies, records labels, and festival organizers.  Acting on behalf of its artists, S10 also publishes music and records ***sold to consumers of popular music***." Exhibit C, Plaintiff's Responses and Objections to Defendants' Fourth Set of Interrogatories, June 30, 2022, Response to Interrogatory No. 14 at 6 (emphasis added).  S10 Entertainment's relevant customer base is much more expansive than Samsung purports it to be.

Next, Samsung's complaint that that "Keegan provided no explanation or basis to include 'non-consumers' in the same test cell as consumers, rendering his inclusion of these two distinctly different sets of consumers in the same test cell fundamentally problematic," is somewhat confusing.  Defendants' Motion, ECF No. 111 at 14 n.4.  Samsung did not present any evidence as to why testing for these two groups in the same survey is an issue, nor did Samsung point to any support for why this is an improper survey design.  Additionally, Keegan clearly provided a basis for including non-purchasing consumers in this survey in his deposition testimony.

Q:  Why are those -- the second category of consumers, those who have an

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

interest in types of music produced by S10 Entertainment, an appropriate part of the survey universe?

A. Because their voice is relevant. They are the ultimate consumers of the product, the music, and they participate in the market and are relevant to the success of my client's business.

Q. But they are in no way likely purchasers of S10 Entertainment's services, correct?

A. I wouldn't say that. S10 is a media company, so their clients that they're dealing with are artists, people associated with artists. They're marketing that product to end consumers who consume that product. So they are highly relevant to S10 Entertainment's business.

Ex. A, Keegan Deposition Transcript, 30:22—31:13. Non-purchasing consumers, the ultimate consumers of the music made by artists that use S10 Entertainment's services, are clearly relevant to those artists. Artists court them on social media, on music streaming platforms, and on concert tours. Thus, they are relevant to the analysis.

The Court should evaluate the admissibility of the Keegan Survey by relying on relevant, on-point, Ninth Circuit law noted above, and ignore Samsung's rote recitation to the numerous irrelevant, improperly decided, and clearly distinguishable district court cases they rely on, several of which are out-of-Circuit. Any concerns about the survey universe goes to weight. *Southland*, 108 F.3d at 1143, n.8.

### B.   Keegan's Survey Questions Were Not Leading

Samsung next argues that Keegan's use of screening questions that reference smartphones and Samsung, are leading and bias the results. Defendant's Motion, ECF No. 111 at 15—16. This is wrong for several reasons.

First, again, it is well established in the Ninth Circuit that any objection to leading questions go to the weight not admissibility. *See, e.g.*, *Fortune Dynamic*, 618 F.3d at 103 ("technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility"); *Southland*, 108 F.3d at 1143 (objection that the survey asked leading

13

1  questions "go[es] only to the weight, and not the admissibility, of the survey").

2      Keegan made it clear that there is no evidence that his results were influenced
3  by the screening questions. Ex. A, Keegan Deposition Transcript, 48:4—50:1
4  (explaining that referencing Samsung did not lead to any demand effects and why,
5  including the mitigating presence of the test control design). Apple and Google are
6  even more well-known that Samsung in the US market, yet those companies barely
7  appear in the respondents' answers. The results make clear that the Keegan Survey
8  design ***did not*** produce any demand effects.

9      Further, the control cell measures and accounts for any demand effects (which,
10  as Keegan explained, there is no evidence of). Keegan Report, ECF No. 111-2, ¶ 35—
11  36. The Keegan Survey's control cell respondents were exposed to the same stimulus
12  as those in the test cell, except "S10" was modified to read "J10". *Id*. at ¶ 52. The
13  purpose of the control cell is to measure consumer confusion not associated with
14  trademark similarity, which amounted to 4.9 percent mentioning Samsung. *Id*. at ¶ 56.
15  The control cell establishes baseline confusion of 4.9 percent and deducts that from the
16  gross likelihood of confusion measure of 31.6 percent observed in the test cell. The
17  remainder - 26.7 percent - is the net confusion attributable to the contested trademark
18  issue outside of confounding factors (demand effects, etc.) *Id*.

19      Second, cell phones are ubiquitous, and it is highly likely that a significant
20  percentage of respondents took this survey on cell phones or had a cell phone nearby
21  while taking the survey. Further, cell phones are relevant to the survey's inquiry, as
22  Keegan explained. Ex. A, Keegan Deposition Transcript, 26:12—27:4. The survey
23  questionnaire was purposeful, did not present anything to respondents that was
24  unnecessary or out of line with accepted standards, and was not in any way leading.

25      Similarly, Samsung is one of the most recognizable brands in the world. In 2021,
26  the global consulting firm Interbrand ranked Samsung as a top-5 brand in the world,
27  with a total brand value of $74.6 billion dollars. Exhibit D, *Samsung Electronics*

28
PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

*Solidifies Its Brand Value With Top-Five Ranking in Interbrand's Best Global Brands 2021.* A brand of this magnitude is not being "introduced" to anyone and the screening questions were not leading. Further, the questionnaire was purposeful.

When asked about the issues his survey addressed, Keegan noted "evaluating the market, the type of people in the market for my client's services, and then measuring confusion." Ex. A, Keegan Deposition Transcript, 46:1—3. "[T]he purpose of the study was to measure the extent to which, if at all, people were associating my client's mark with Samsung." Ex. A, Keegan Deposition Transcript, 47:22—25. To that end, "demographic information and others in this survey were used by me to evaluate the market among this relevant universe. The ultimate conclusions here related to -- relate to likelihood of confusion, but they're certainly formed by all of the results of this study." Ex. A, Keegan Deposition Transcript, 46:18—23.

Further, asking questions about smartphones, which again were made in screening questions, were needed. This inquiry is relevant because "in reverse confusion cases, the inquiry focuses on the strength of a junior mark. The strength of the junior mark is closely related to how much the market is saturated by the junior mark." *M2 Software, Inc., a Delaware corporation v. Madacy Ent., a corporation*, 421 F.3d 1073, 1089 (9th Cir. 2005) (discussing jury instructions).

Again, even if the Court took issue with these questions, the Ninth Circuit has made clear that "issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility….[which] are issues for a jury." *Clicks Billiards,* 251 F.3d at 1263. Samsung has not presented any evidence, nor controlling law, that could lead this Court to question the Keegan Survey's admissibility. Therefore, these issues should be raised at trial, but do not justify exclusion.

Once again, Samsung's case citations are unhelpful. First, they cited to *Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, an out-of-Circuit case from the

Southern District of New York, for the proposition that respondents should "not [be] made 'artificially aware' of the other party's trademark". S*ee* No. 06 Civ. 550 (JFK), 2007 BL 78876, at *9 (S.D.N.Y. Aug. 6, 2007); Defendant's Motion, ECF No. 111 at 15.   Putting aside that Samsung does not have a trademark for "S10", only S10 Entertainment does, this out-of-Circuit case has no relevance here.

Next, Samsung cited to the out-of-Circuit case *Simon Prop. Grp. LP v. MySimon, Inc.,* a Southern District of Indiana case, for the proposition that demand effects bias the survey.  *See* 104 F. Supp. 2d 1033 (S.D. Ind. 2000).  Putting aside that there were no demand effects here, this contravenes well-established Ninth Circuit law.  *See Fortune Dynamic*, 618 F.3d at 1036.

Samsung then cited to *Universal City Studios, Inc. v. Nintendo Co.,* a Second Circuit case. S*ee* 746 F.2d 112, 118 (2d Cir. 1984); Defendant's Motion, ECF No. 111 at 16.  Here, respondents to a telephone survey were asked "[t]o the best of your knowledge, was the Donkey Kong game made with the approval or under the authority of the people who produce the King Kong movies?" *Id.*  Again, this was nothing like the Keegan Survey.  Regardless, it is irrelevant here in the Ninth Circuit.

Samsung then cited to *Kudos*, which, as previously described, was likely erroneously-decided because it did not cite to **_any_** relevant Ninth Circuit case law, relying instead on Second Circuit law.  Finally, Samsung cited to *Brighton Collectibles, Inc*., a Southern District of California case, where respondents were shown four authentic handbags of the plaintiff's that were black and red and had large heart ornaments.   Next, participants were shown four similar handbags made by other manufacturers.   Yet, only the defendants' handbag was two-colored (black and brownish-red) with heart decorations.  Participants were then asked which, if any, item was "made, sponsored, or endorsed" by the same company that made the first set of handbags. 923 F. Supp. 2d at 1257.  This, again, is clearly different than the Keegan Survey, where any references to smartphones (which are ubiquitous) and Samsung

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

1  (which is a top-5 brand in the world) were made in the screening questions.

2      Putting aside that the Ninth Circuit does not permit exclusion on this issue,

3  Keegan utilized sound, well-considered, and purposeful questions in his survey.  The

4  Court should disregard Samsung's argument to exclude based on leading questions.

5      **C.    Keegan's Survey Conformed to the *Eveready* Survey Design**

6      Next, Samsung argued that Keegan made an improper choice of stimulus and

7  that he did not ask the questions in a very precise way (alleged to be the one and only

8  *Eveready* survey format).  Defendant's Motion, ECF No. 111 at 16—19.  Once again,

9  Samsung is wrong; Keegan followed the *Eveready* survey format.  Further, as noted in

10  an academic article that Samsung cite to in their motion, *Fixing Ever- Ready:*

11  *Repairing and Standardizing the Traditional Survey Measure of Consumer Confusion*,

12  there isn't one and only *Eveready* acceptable survey format.  "[I]n practice, the *Ever-*

13  *Ready* method has splintered into many variants.  In that sense, it is proposed here that

14  no single, uniform '*Ever-Ready* method' currently exists." 53 GA. L. REV. 613, 632

15  (2019).  Keegan's methods fall well within the accepted *Eveready* variations.

16      **1.    Issues Regarding the Stimuli Go to Weight**

17      Again, issues concerning the survey stimuli is not a ground for exclusion, as it

18  just goes to the weight.  *See Fortune Dynamic*, 618 F.3d at 1037.  In *Fortune Dynamic*,

19  the Ninth Circuit noted the failure to replicate real word conditions "go to the weight

20  of the survey, rather than its admissibility." *Id.* at 1037-38.  Courts in this District have

21  held similarly.  *See, e.g., Tortilla Factory, LLC v. GT's Living Foods, Inc.*, No. CG 17-

22  7539, 2022 WL 3134458, at *7 (C.D. Cal. June 9, 2022) ("criticism of how [product]

23  labels were presented [citation] may affect the survey's persuasiveness, but it does not

24  render the survey inadmissible"); *Tokidoki, LLC v. Fortune Dynamic, Inc.*, No. CV 07-

25  1923, 2008 WL 11338772, at *2 (C.D. Cal. Sept. 29, 2008) (defendant's contention

26  that the goods compared in the survey were not presented in their real world context is

27  a "technical deficienc[y] that go[es] to weight, not admissibility"); *Classic Foods Int'l*

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

*Corp. v. Kettle Foods, Inc.*, No. SACV 04-725, 2006 WL 5187497, at *7 (C.D. Cal. Mar. 2, 2006) (flaws, including the failure to test real world conditions, "may be elucidated on cross-examination, so that the finder of fact can appropriately adjust the weight it gives to the survey's results.").

### 2.    Keegan's Stimulus was Not Improper

Samsung next took issue with the lettering and font Keegan used in the survey's stimulus, saying that it did not properly reflect how S10 uses its trademark in the marketplace. Respondents were presented with the following stimulus, consisting of the lettering "S10" followed by a description of the services S10 Entertainment provides.

> # S10
>
> This name is used for a range of services related to music and entertainment, including management of performing artists, artist representation and marketing, production of music and music videos, organizing live musical performances, producing and distributing digital music content, and other related services.

Keegan Report, ECF No. 111-2, ¶ 51. Below is an example of how S10 Entertainment has used its mark on social media and on its website, next to an example of how Samsung have utilized "S10" in some marketing and advertising.




S10 Entertainment Branding        Samsung S10 Phone Branding

Exhibit B, Responses and Objections to Defendants' First Set of Interrogatories to Plaintiff, November 29, 2021, Answer to Interrogatory No. 2 at 8. The similarities between the color schemes and fonts are obvious. Yet, Samsung argues that Keegan's Survey should be excluded because the stimulus used in the survey does not replicate

market conditions.  However, Keegan explained in his deposition testimony that the stimulus was proper.  Ex. A, Keegan Deposition Transcript, 54:18—55:12.

Concerning the description of the services provided below the "S10" in the stimulus, Keegan explained:

> I was concerned that the website at the time I was designing to survey was lacking in some of those specifics.  It would more easily, in my estimation, be confused with Samsung.  I wanted clients to be crystal clear -- clients -- I wanted respondents to be crystal clear about what my client did.  And to the extent that's the differentiator to the mark, I wanted that reflected in their results, again, to be conservative in this estimate of confusion.

Ex. A, Keegan Deposition Transcript, 55:13—22.  It should be noted that this explanation of S10 Entertainment's services is not required by the *Eveready* format (of which there is no single format, as the academic article Samsung cited to notes), is not forbidden by any law or rule, and was only used to help clarify what services S10 Entertainment provides in association with its use of its "S10" trademark.  Samsung somehow attempts to argue that Keegan's use of lettering that was deliberately chosen to **_not_** so closely emulate Samsung's use of "S10" in the market place, as well as a description of its services that make it clear what the service is referring to, are somehow inappropriate.  Keegan's conservative presentation of these two stimulus components, if anything, led to a lower rate of confusion.  Ex. A, Keegan Deposition Transcript, 92:20—94:6.

Keegan did Samsung a favor by using a more conservative stimulus.  A counter-survey using a stimulus that Samsung suggest, *i.e.* using the logo as presented on Samsung's social media and without the explanation below the 'S10", likely would have shown a higher rate of confusion.

### 3.    <u>Samsung's Legal Citations are Unavailing</u>

Again, as Samsung has repeatedly done in this motion, they attempted to mislead the Court through their characterization of the law.  Despite their claim that "Keegan made a fundamentally improper choice of stimulus and then sought to justify that choice with hollow rhetoric that is contrary to well-settled law around the proper

19

*Eveready* survey format," Samsung does not cite to any controlling Ninth Circuit precedent, or even a relevant district court case from within the Ninth Circuit. Defendant's Motion, ECF No. 111 at 19. Instead they, once again, cite to numerous irrelevant and distinguishable out-of-Circuit cases.

For example, Samsung cited to *Steak Umm Co., LLC v. Steak 'Em Up, Inc.,* an Eastern District of Pennsylvania case, to say showing an accused mark without an accompanying logo "undermines the effectiveness of the survey." S*ee* 868 F. Supp. 2d 415, 435 (E.D. Pa. 2012); Defendant's Motion, ECF No. 111 at 17. Even if considered, this out-of-Circuit case shows this objection goes to weight, not exclusion. *Id*. at 437.

Samsung also cited to the out-of-Circuit case of *Gucci America, Inc.* to justify exclusion based on the stimulus. S*ee* 831 F. Supp. 2d at 745; Defendant's Motion, ECF No. 111 at 17. In Gucci, a handbag made by Guess was shown with the Guess name "in a way that one is unlikely to find if not directed to look for it." *Id*. at 744. But in addition, the bag was "unrepresentative because it lacked permanent fixtures bearing the Guess name present on the vast majority of allegedly infringing bags that the Mantis test bag was to represent…Gucci provides no answer to this criticism..." *Id.* Besides not being in the Ninth Circuit, this has nothing to do with the facts of this case. Here, there are clear indicators as to the source of the product. S10 Entertainment uses a logo that only has the lettering "S10" in it. The stimulus provided that "S10" lettering. Further, the stimulus shows a description of S10 Entertainment's services. This is materially different from the survey that was excluded in *Gucci.*

Samsung also cited to the out-of-Circuit case of *Combe Inc. v. Dr. Aug. Wolff GmBH & Co. KG Arzneimittel,* again trying to exclude a survey based on market conditions. S*ee* 382 F. Supp. 3d 429, 463 (E.D. Va. 2019), *aff'd*, 851 F. App'x 357 (4th Cir. 2021); Defendant's Motion, ECF No. 111 at 19. But this case relates to a trademark registration proceeding, not a trademark infringement case, and does not deal with exclusion, but again weight. *Id*. at 463, 465.

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

The one district court case from within the Ninth Circuit that they did cite, *Kwan*, is also not relevant here. Defendant's Motion, ECF No. 111 at 17. Samsung cited this case for the proposition that failure of a survey to "approximate actual marketplace conditions can provide grounds for inadmissibility." *Kwan Software Eng'g,* 2014 WL 572290, at *4 (quoting *Medisim Ltd. v. BestMed LLC,* 861 F.Supp.2d 158, 166 (S.D.N.Y. 2012)). Samsung, however, failed to note that the very next sentence following that quote states, "[h]ere, [the plaintiff] has failed to show that the survey examined the proper universe of consumers." *Id*. Moreover, Samsung even noted in their motion that the quote they cite to is in fact a quote from a Southern District of New York case. Therefore, besides relying on out-of-Circuit law, the case it not even relevant to stimuli. Regardless, the Ninth Circuit does not allow exclusion based on the stimuli. *See Fortune Dynamic*, 618 F.3d at 1037.

The Court, again, should give no weight to Samsung's recitation of irrelevant and out-of-Circuit case law, nor their inaccurate characterization of the facts. Keegan's stimulus conformed to the proper *Eveready* format and should not be excluded.

### D.    Keegan's Survey Measured Confusion

Lastly, Samsung argued that, allegedly, Keegan's "first substantive question does not follow the accepted *Eveready* format." Specifically, Samsung takes issues with Keegan's question "if you know, what company uses the name you saw?*"* in reference to the "S10" stimulus used in the survey. Defendant's Motion, ECF No. 111 at 19—22. Again, Samsung's mischaracterization of both the facts and the law make it clear that the Court should deny its motion.

### 1.    Question Format is not a Basis to Exclude in the Ninth Circuit

Even if correct (it is not), Samsung's complaint does not merit exclusion in the Ninth Circuit. *Fortune Dynamic*, 618 F.3d at 1036 ("technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility"); *Southland*, 108 F.3d at 1143

1  (question format goes "to the weight, and not the admissibility, of the survey").

2  Samsung instead relied on an academic article, *Fixing Ever- Ready: Repairing*

3  *and Standardizing the Traditional Survey Measure of Consumer Confusion,* noting that

4  "all variations had both a source referent ("who," "what company," etc.) *and* a

5  product/service referent ("this product," "these shoes," etc.)".  *See* 53 GA. L. REV.

6  613, 645—46 (2019); Defendant's Motion, ECF No. 111 at 21—22.  Samsung

7  incorrectly claims that the Keegan Survey lacked a product/service variant.  The

8  Keegan Survey's question of "if you know, which company uses the name you saw"

9  clearly refers to the services explicitly mentioned in the stimulus, so it satisfies this

10  requirement.  This article also notes several variations of the question, including "[w]ho

11  provides the home security system & service that you saw in the documents you just

12  reviewed?" and "[w]hich company offers the moving assistance services shown on

13  these trucks?", which were accepted by courts.  *Id*.  As this article notes, "no single,

14  uniform '*Ever-Ready* method' currently exists." *Id.* at 632.  Thus, the *Eveready* format

15  does not demand an inflexible approach that only utilizes the phrasing "makes or puts

16  out" (which would be an awkward way to discuss services, rather than products.)

17  Samsung further pointed to irrelevant case law in support of its arguments.  They

18  cite to *M2 Software,* 421 F.3d at 1083, a Ninth Circuit opinion, for the notion that

19  "evidence that a witness was reminded of plaintiff's mark when observing defendant's

20  ad was not sufficient evidence of confusion."  Defendants' Motion, ECF No. 111 at 21.

21  This case, however, dealt with the actual confusion of one witness, not likelihood of

22  confusion as measured by the responses of hundreds of participants in a survey, and

23  thus tells the Court little about how it should address any alleged issues in surveys.

24  And as Samsung has done throughout their motion, the remaining cases they cite

25  to are from out-of-Circuit.  Thus, these other cases are no basis to exclude this survey.

### 2. <u>Samsung is Wrong; this is an *Eveready* Question</u>

27  Samsung claim "[b]ecause the question makes reference only to the name S10,

28

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

a true and correct response to this question is quite literally 'Samsung' or 'Chevrolet,' exactly as several respondents answered." Defendant's Motion, ECF No. 111 at 20. This is incorrect as Samsung or Chevrolet are not "true and correct response[s]" because the question asks "if you know, what company uses the **name you saw**". (emphasis added). The "name you saw" refers to the stimulus that the respondents saw in a question preceding this one. This stimulus noted "[t]his name is used for a range of services related to music and entertainment…" The "name you saw" *clearly* refers to the stimulus, which includes a description of music entertainment services.

This argument is further undermined because only 6 of 334 respondents, less than 1.8%, mentioned Chevrolet or made reference to the Chevrolet S-10 pick-up truck. Defendant's Motion, ECF No. 111 at 5. Interestingly, there are no references made by any of the 334 respondents to the Lenovo "IdeaPad S10", a laptop, or the Canon PowerShot S10, a digital camera. If the word "use" truly was confusing, one would expect at least one person to refer to these other products that utilized the "S10 name".

Next, Samsung claimed that the verbatim responses make it clear that respondents answered the question literally. *Id*. at 20—21. This is similarly unconvincing. The very mention of the S10 smartphone made it clear that there was confusion. The question asked "which company uses the name you saw," referring to a stimulus that included a description of the music entertainment services that S10 Entertainment provides. The verbatim answers made it clear that the respondents assumed those services are affiliated with Samsung, as the question itself clearly referred to the name "S10" *in the context* of music entertainment services.

Further, Keegan asked "[i]f you know, what company uses the name you saw". "If you know" is essential, as it asks the respondent to provide an answer if they know, not to take a guess or answer with any association they can draw. The presence of the explanation of services in the stimulus and the qualifier "if you know" made it abundantly clear that respondents were not merely asked to recall any association they

could make with the name "S10" in a vacuum. Additionally, a "don't know/no opinion" option was also provided, further discouraging respondents from guessing. Keegan Report, ECF No. 111-2, ¶ 43, 59. That some respondents utilized this choice demonstrates that respondents were not guessing. *Id*. at ¶ 59.

Samsung continued their dubious claims when they pointed to the ███ consumer recognition data point from their own internal survey. Defendant's Motion, ECF No. 111 at 9, 21. However, this internal Samsung consumer recognition survey, which does not measure likelihood of confusion as the Keegan Survey does, is not a basis to exclude Keegan's Survey, for a number of reasons. *First*, there is no explanation of the methodology used in the Samsung survey. Samsung provides no notes on how it was done and no data on what occurred, making it difficult to judge the Samsung survey's reliability. *Second*, the data points from the previous months show how much consumer recognition apparently fluctuated. Exhibit E, Samsung Internal Consumer Recognition Survey Data.[2] In January 2022, consumer awareness for the S10 smartphone was apparently ███. In just the month prior, December 2021, consumer recognition was apparently ███, a difference of ███. *Third*, the ███ data point collected in January 2022 was four months before the Keegan Survey was conducted in May 2022. In February, 2022, Samsung released the S22 smartphone, the third generation to follow the S10 smartphone. Thus, if anything, consumer recognition at the time of the Keegan Survey would be much less than ███ for the S10 given Samsung was now pushing the S22.

The Court should give little weight to Samsung's attempt to connect this internal consumer recognition survey to the results of the Keegan Survey. As repeatedly noted,

---

[2] Exhibit E contains excerpts from a document produced by Samsung, SAMSUNG_00058432, which was filed under seal as "Perry Decl. Ex. G" in Defendant's Motion, ECF No. 111. *See* ECF No. 111-8. Highlights have been added to the relevant portions in Exhibit E.

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO
EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN

at best it is a cross-examination question that would go to the weight, but by no means is a basis to exclude his survey in the Ninth Circuit.

## IV.    DEFENDANTS FAILED TO CITE CONTROLLING CASES

Samsung's motion failed to cite, mention, or even discuss on-point, controlling Ninth Circuit cases.  "Failing to notify the Court of controlling, adverse authority [] violates California Rule of Professional Conduct 5-200(A)" and "ABA Model Rule 3.3(a)(2)."  *Nelson v. Patel*, No. CV 09-07722, 2010 U.S. Dist. LEXIS 44497, at *24—25 (C.D. Cal. Mar. 26, 2010) (discussing failure to cite adverse precedent).  Moreover, "[c]iting [] out of circuit case[s] that support[] [a party's] position, while disregarding the Ninth Circuit's explicit rejection of the very" same proposition those cases stand for also "violates that duty." *KT AMC Co. v. LWC Cap., LLC*, No. 2:17-CV-04289, 2017 WL 7171719, at *3 (C.D. Cal. Nov. 6, 2017).  These failures further demonstrate the futility of this motion and the lack of a proper basis for bringing it.

## V.    CONCLUSION

S10 Entertainment respectfully requests that the Court deny Samsung's motion to exclude the Keegan Survey and his testimony.

DATED:  January 3, 2023          Respectfully submitted,

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.**

By:*/s/ Michael R. Graif*
　　Andrew D. Skale (211096)
　　Matthew S. Hurley
　　(Admitted *Pro Hac Vice*)
　　Michael R. Graif
　　(Admitted *Pro Hac Vice* )
　　James J. Thomson
　　(Admitted *Pro Hac Vice*)
　　Oliver Ennis
　　(Admitted *Pro Hac Vice*)

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM MARK KEEGAN