Andrew D. Skale (SBN 211096)
adskale@mintz.com
Matthew S. Hurley (Admitted *Pro Hac Vice*)
mshurley@mintz.com
Michael R. Graif (Admitted *Pro Hac Vice*)
Mrgraif@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road
Suite 300
San Diego, CA 92130
(858) 314-1500

*Attorneys for Plaintiff*
*S10 Entertainment & Media LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC,<br><br>               Plaintiff,<br><br>   vs.<br><br>SAMSUNG ELECTRONICS CO., LTD.; and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>             Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 2:21-cv-2443-CAS-JPR

**REDACTED**

**PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM DOUG BANIA (ECF No. 109-1)**

Date: January 23, 2023
Time: 10:00 a.m.
Hon. Christina A. Snyder
Courtroom: 8D, 350 W. First Street

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ....................................................................................1

III.   APPLICABLE LEGAL STANDARD ....................................................2

IV.    ARGUMENT..........................................................................................3

       A.   Mr. Bania's Opinions on Apportionment Are Admissible and
            Should Not Be Excluded ..............................................................4

            i.    Mr. Bania's 5-Point Scoring Apportionment Methodology
                  is Reliable...........................................................................4

            ii.   Mr. Bania's Analysis and Opinions Considered the
                  Contribution of Factors Other Than the S10 Mark......................6

            iii.  Mr. Bania Affirmatively Disclosed One Quantitative
                  Apportionment Rate............................................................8

            iv.   Mr. Bania Set Forth His Qualitative Apportionment
                  Opinion and His Apportionment Analysis Should Not Be
                  Excluded ...........................................................................13

       B.   Mr. Bania Considered the Relevant Factual Circumstances...................14

       C.   Mr. Bania's Apportionment Opinion is Relevant and Will
            Assist, Not Confuse, the Jury.................................................15

V.     CONCLUSION .................................................................................16

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY FROM DOUG BANIA

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ............................................................................3

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ..........................................................................3

*D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*,
    No. CV 20-9770-MWF (KSX), 2022 WL 4596548 (C.D. Cal. Aug.
    26, 2022) ..........................................................................................................15

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ..............................................................................1, 3, 5

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ............................................................................4

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    2015 WL 12696109 (C.D. Cal. Nov. 5, 2015) ..................................................3

*Nintendo Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994) ............................................................................2

*Oddo v. Arocaire Air Conditioning & Heating*,
    No. 8:15-cv-01985-CAS, 2020 WL 5267917 (C.D. Cal. 2020) ......................15

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ............................................................................3

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    808 F. App'x 459 (9th Cir. 2020) ....................................................................16

*Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*,
    No. CV 20-9091 PA (ASX), 2021 WL 4813257 (C.D. Cal. Oct. 6,
    2021) ................................................................................................................15

*Vanguard Logistics Servs. United States Inc. v. Groupage Servs. of New
    England, LLC*,
    No. CV 18-0517 DSF, 2022 WL 17369626 (C.D. Cal. Oct. 4, 2022) ................4

ii

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017) ..................................................................................4

**Federal Statutes**

15 U.S.C.
    § 1117(a) ............................................................................................................1, 2

**Other Authorities**

Federal Rule of Evidence 702 .........................................................................................1, 3

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY FROM DOUG BANIA

## I.    INTRODUCTION

Plaintiff S10 Entertainment & Media LLC ("S10 Entertainment") respectfully submits this opposition to Defendants Samsung Electronics Co, Ltd. and Samsung Electronics America, Inc. (collectively "Samsung" or "Defendants") motion to exclude opinions and testimony from Plaintiff's damages expert, Doug Bania ("Mr. Bania"). Defendants—having failed to conduct their own apportionment analysis or provide their own apportionment methodology—are asking this Court to exclude the only expert in this case that did: Mr. Bania. Not only has Mr. Bania's apportionment methodology been used successfully many times in prior litigation, but the apportionment framework is published and the scoring methodology will be published later this year. Defendants suggest that Mr. Bania should have used a different methodology, but offer no alternatives or support for their critiques. In fact, Defendants' own damages expert, Christopher Bakewell ("Mr. Bakewell"), failed to offer an apportionment analysis or set forth a methodology of his own.

In sum, Defendants' meritless attack on the opinions and testimony of Mr. Bania is a thinly-veiled attempt to remedy the fact that they have failed to carry their own burden. Defendants seek to deprive this Court of Mr. Bania's apportionment methodology—the sole apportionment methodology provided in this case—which has been successful in prior litigation and will be completely peer reviewed by next year. Mr. Bania's opinions more than satisfy the requirements of Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and Ninth Circuit case law. Therefore, the Court should deny Defendants' motion.

## II.    BACKGROUND

The Lanham Act provides that if the defendant is found liable for trademark infringement, then "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales

1

only; defendant must prove all elements of cost or deduction claimed." *Id*. The defendant must "prove that sales were 'demonstrably not attributable' to the infringing mark" in a process known as apportionment. *Nintendo Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) (quoting *Wolfe v. National Lead Co.*, 272 F.2d 867, 872 (9th Cir. 1959)).  Although it is Defendants' burden to demonstrate which of its total sales are not attributable to the infringing mark, Defendants' damages expert, Mr. Bakewell, failed to provide an apportionment model. In fact, Mr. Bakewell offered no opinion on the appropriate amount of damages in this case, nor how the amount should be calculated. Unlike Mr. Bakewell, Mr. Bania opined on the amount of Defendants' profits that can be attributed to the infringement of the S10 Mark. Mr. Bania's apportionment opinion was based on a 17-factor apportionment test. To each factor, Mr. Bania assigned a score indicating the relative contribution of the S10 Mark and explicitly defined in his report what each score stood for. ECF No. 109-2 ("Bania Opening Report") at Schedule 4a. Mr. Bania then took the scores of each of the 17-factors and calculated a total score of 22, from which he determined that the S10 Mark contributed to 7.4% of the Defendants' profits. *Id*. Mr. Bania provided a detailed explanation on how he reached this 7.4% of profits number in his expert report and deposition.

## III.    APPLICABLE LEGAL STANDARD

Federal Rule of Evidence 702 permits the Court to admit as evidence the opinion of a qualified expert if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In *Daubert*, the Supreme Court held that expert testimony is admissible so long as it "rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. However, the reliability inquiry is "a flexible one." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)).

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM DOUG BANIA

*Daubert* requires that a district judge act as "a gatekeeper, not a fact finder" while scrutinizing the soundness of an expert's methodology, not the correctness of his conclusions. *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010), *as amended* (Apr. 27, 2010). In its gatekeeper role, the court is "to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). The district court's function is not to decide whether the expert is right or wrong, but only whether his testimony has substance that would be helpful to a jury. *Id*.

When an expert meets the Rule 702 threshold, the expert may testify and the jury should decide how much weight to give that testimony. *Id. See also, City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1047 (9th Cir. 2014) (holding that it is a question for the jury, not the court, to determine what weight to afford expert testimony, as *Daubert* "does not forbid admission" of a report where the weight of the conclusions are subject to challenge). In fact, even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564; *Kaneka Corp. v. SKC Kolon PI, Inc.*, 2015 WL 12696109, at *5 (C.D. Cal. Nov. 5, 2015).

## IV.    ARGUMENT

Defendants seek to strike the expert testimony of Mr. Bania on a number of unfounded grounds based on misunderstandings and mischaracterizations of Mr. Bania's opinions. Defendants' criticisms of Mr. Bania are meritless. Mr. Bania's opinions on apportionment are based on his review of the evidence, applicable legal standards, and the application of a methodology that, as detailed below, has been peer-reviewed, published, and successful in prior litigation. At most, Defendants' arguments go to the weight and not the admissibility of Mr. Bania's opinions.

### A. Mr. Bania's Opinions on Apportionment Are Admissible and Should Not Be Excluded

Defendants' assert that Mr. Bania's apportionment opinion is unreliable and unsupported. ECF No. 109-1 at 11. This argument ignores available evidence, and misses the mark.

### i. Mr. Bania's 5-Point Scoring Apportionment Methodology is Reliable

Mr. Bania's apportionment methodology is published. *See, e.g.*, Bania Opening Report at 12 n.64 and Schedule 4a. Specifically, Mr. Bania's apportionment framework was detailed in a chapter included in the publication "The Comprehensive Guide to Economic Damages," published by Business Valuation Resources, LLC, with editors Nancy Fannon and Jonathan M. Dunitz. *Id*. Mr. Bania has used this framework in litigation approximately a dozen times. Graif Decl., Ex. A (December 8, 2022 Deposition Transcript of Doug Bania) at 28:13-29:8. The 5-point scoring method, which Mr. Bania testified that he has always used, is included in a new chapter that will be published next year. *Id*. at 177:21-23; 185:24-186:4; 187:12-19. Notably, the Ninth Circuit has made clear that, while peer review is one of many relevant factors in assessing reliability, it is not a requirement, and an expert's methodology "may still be reliable . . . without peer review and publication." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1235 (9th Cir. 2017). Indeed, the Ninth Circuit has acknowledged "good reasons" that an expert's work may not be peer reviewed – for instance, it may be "too recent," or the subject matter may be of "insufficiently broad interest." *Daubert v. Merrell Dow Pharms., Inc*., 43 F.3d 1311, 1318 n.9 (9th Cir. 1995). Moreover, Mr. Bania's co-author has also used the 1-to-5 point system in a litigated trademark infringement case. Graif Decl., Ex. A (December 8, 2022 Deposition Transcript of Doug Bania) at 190:19-22. Mr. Bania applied the methodology that he and his co-author developed through their knowledge, skill, experience and training. *See, e.g.*, *Vanguard Logistics Servs. United States Inc. v. Groupage Servs. of New England, LLC*,

No. CV 18-0517 DSF (GJSx), 2022 WL 17369626, at *2 (C.D. Cal. Oct. 4, 2022) ("When the reliability of expert testimony depends heavily on the knowledge and experience of the expert, the *Daubert* factors of peer review, publication, potential error rate, etc. are not applicable."); *City of Pomona*, 750 F.3d at 1044 (explaining that expert testimony rests on a "reliable foundation" if it is rooted "in the knowledge and experience of the relevant discipline.").

Defendants' allegation that Mr. Bania did not explain why the scoring method is appropriate in this case is based on cherry-picked and unrepresentative snippets from his deposition.[1] ECF No. 109-1 at 12. Defendants egregiously mischaracterize Mr. Bania's testimony. In fact, after explaining that the matrix Mr. Bania used has been published a number of times, Mr. Bania explained that the new version, which includes the scoring method he utilized, is about to be published. Graif Decl., Ex. A (December 8, 2022 Deposition Transcript of Doug Bania) at 185:21-186:4. Mr. Bania then explained that "the reason why [the new draft chapter] talks about the scoring is just educating the reader more fully on how the process works." *Id*. 186:5-9.

Further, and contrary to Defendants' assertions, Mr. Bania adequately explained the 5-point scoring apportionment methodology. Schedule 4a of Mr. Bania's Report outlines the 1-to-5 scale:

**Score Legend**
1: No contribution to profits from the S10 Mark
2: Minimal or limited contribution to profits from the S10 Mark
3: S10 Mark contributes approximately the same level to profits as all other assets at the subject business
4: S10 Mark is substantial contributing factor to the Offering, and Subject Asset impacted profits
5: S10 Mark is equivalent to the Offering, profits depend entirely on the Subject Asset

Bania Opening Report at Schedule 4a. The "Score Legend" outlines the scale and provides what each number stands for.

---

[1] Defendants cite to Mr. Bania's deposition testimony at 169:7-17. The relevant discussion of the 5-point scoring method in Mr. Bania's deposition actually appears on 186:7-9.

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM DOUG BANIA

Defendants make a number of additional, unsupported arguments criticizing the methodology utilized by Mr. Bania. For example, Defendants take issue with Mr. Bania's methodology because it "does not allow for a determination of 0.1%, 1%, 5%, or 10% contribution for any given consideration, or anywhere in between." ECF No. 109-1 at 13. Not only do Defendants clearly misunderstand the methodology, but Defendants offer no support for any alternative. Defendants then attempt to discredit Mr. Bania's methodology by "considering . . . a 10-point alternative scale." ECF No. 109-1 at 16. Once again, Defendants offer no support for this alternative. As discussed, Mr. Bania used a 5-point scale because it has been successfully used in prior litigation, it will be published by next year, and it is testable. In fact, Mr. Bania's methodology is the *only* successful, repeatable, and documented methodology in this case.

Defendants also incorrectly assert that Mr. Bania's methodology is unrepeatable and untestable. ECF No. 109-1 at 11, 19. In his report, however, Mr. Bania clearly sets forth his process such that any qualified expert could duplicate it. Yet Defendants failed to have their rebuttal expert, Mr. Bakewell, *actually* test Mr. Bania's methodology, despite bearing the burden to prove which of its total sales are not attributable to the S10 Mark. Instead, Mr. Bakewell merely criticized the methodology. In sum, Mr. Bania's methodology is capable of being tested; Defendants simply chose not to do so.

    *ii.*    *Mr. Bania's Analysis and Opinions Considered the Contribution of Factors Other Than the S10 Mark*

Defendants incorrectly argue that Mr. Bania's analysis considered only the contribution to profits from the S10 Mark, not the contribution of any other factors to the profits. ECF No. 109-1 at 16. This argument reflects Defendants' misunderstanding of Mr. Bania's methodology and opinions.

As part of Mr. Bania's apportionment analysis, he stated:

> As the individual IP asset is rarely the sole asset or resource needed to produce revenues and profits, any IP asset cannot contribute 100% of the reported, product-level profits. In this Case, *the*

6

> *claimed infringement of the S10 Mark is not the only factor that*
> *contributed to sales and financial performance at Samsung.*

Bania Opening Report at 11 (emphasis added). Mr. Bania then summarizes his approach to apportionment:

> Therefore, economic damages related to Plaintiff's claims must
> consider *all the elements of Samsung's business, including those*
> *elements that are not alleged to have infringed the S10 Mark.* In
> other words, profit apportionment is relevant in calculating
> economic damages.

Bania Opening Report at 11 (emphasis added). Bania explicitly and correctly states that *factors other than the IP asset* contribute to the profits seeking to be disgorged. This is summarized at pages 11-13 of Mr. Bania's report and shown in greater detail in Schedule 4a to Mr. Bania's report. Accordingly, Mr. Bania identifies several factors that contributed to Defendants' profit other than the S10 Mark:

> Assets other than the S10 Mark such as: the Samsung 50+ year
> brand, relationships with large retailers (Apple, Best Buy, Verizon,
> etc.), social media presence, supplier relationships, and innovative
> product development team were also contributors to incremental
> profits at Samsung during the Damages Period.

Bania Opening Report at 13. In fact, in summarizing his calculations, Mr. Bania explained:

> The apportionment analysis at Schedules 4a and 4b indicates an
> unweighted score of 7.4% of the possible range of scores.
> *Therefore, the contribution to incremental profits made by the S10*
> *Mark and the portion of incremental profits that Samsung achieved*
> *from the infringing use of the S10 Mark should be 7.4%. The other*
> *assets and resources used by Samsung contributed the remainder*
> *of incremental profits.* Applying a profit apportionment rate of
> 7.4% to incremental profits indicates the amount of profits subject
> to disgorgement would be ███████ if only COGS were
> deducted and ███████ both COGS and all operating expenses

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY FROM DOUG BANIA

1    were deducted.

2    Bania Opening Report at 13 (emphasis added). As is clear, Mr. Bania did in fact

3    consider the other assets when rendering his apportionment opinion, and the Court

4    should reject Defendants' assertion that Mr. Bania only focused on revenues generated

5    from the S10 Mark, and not other factors, as simply incorrect based on the content of

6    Mr. Bania's report.

7    iii.    *Mr. Bania Affirmatively Disclosed One Quantitative Apportionment Rate*

8

9    Defendants erroneously complain that Mr. Bania's report reveals three different

10   opinions about the appropriate "apportionment rate" to be applied in this case based on

11   two typos in Mr. Bania's forty-page report. ECF No. 109-1 at 1, 18. This is simply

12   untrue. Mr. Bania offers one apportionment rate opinion: 7.4%. Mr. Bania confirmed

13   that 7.4% is his *only* apportionment rate opinion in his report and in his deposition. *See,*

14   *e.g.*, Bania Opening Report at 13, 14, Schedule 3, Schedule 4b; Graif Decl., Ex. A

15   (December 8, 2022 Deposition Transcript of Doug Bania) at 67:15-16 ("My opinion is

16   a total score of 22, which is 5 considerations, which is a 7.4 percent."). Despite all of

17   Defendants' attempts to suggest otherwise, the two typos in Mr. Bania's report remain

18   typos, and Mr. Bania confirmed this in his deposition. *See, e.g.*, Graif Decl., Ex. A

19   (December 8, 2022 Deposition Transcript of Doug Bania) at 67:10-12; 68:14-15;

20   73:21-74:2; 74:9-14.

21   Defendants focus on Mr. Bania's Schedule 4b, in which he disclosed the total

22   apportionment score of 22, the apportionment score as a percentage of possible score

23   range as 7.4%, and the apportionment rate of 7.4%. Bania Opening Report at Schedule

24   4b. Notably, the total apportionment score (22) matches with the apportionment rate

25   (7.4%). *Id*. Despite this, Defendants point to two typos in Schedule 4b: the

26   apportionment score listed as 21 and the number of 17 considerations with a score

27   above the minimum listed as 3. Based on these two typos, Defendants claim that Mr.

28

8

1  Bania was considering different and inconsistent opinions before selecting the biggest.
2  ECF No. 109-1 at 1. This conclusory allegation is unfounded.

3       Defendants attempt to support their assertion that the three different scores are
4  not "typos" by pointing to Mr. Bania's summary analysis of the factors he scored above
5  the minimum, which "provides detail on only three considerations." ECF No. 109-1 at
6  9. This is nonsensical. Mr. Bania's summary is just that – a summary. Mr. Bania makes
7  it clear that "5 of the 17 considerations score above the minimum possible score of 1"
8  and that the summary includes only 3 of those considerations. Bania Opening Report
9  at 13. Defendants essentially argue that if a summary does not include every detail of
10 an analysis, then that summary somehow undermines the analysis. This argument
11 strains logic.

12      When Defendants asked Mr. Bania about the typos, Mr. Bania confirmed that
13 (1) his opinion in this case is that five factors scored a 2, the total apportionment score
14 is 22, and the apportionment rate is 7.4%; and (2) the "3" and "21" Defendants
15 reference in Schedule 4b are typos:

16           Q. Okay. So in this case, am I right that there was a point where you
17           reached an opinion that the number of considerations that were
18           greater than the minimum were actually 3 and not 5? You did reach
             that opinion in this case, right, sir?

19           A. My opinion in this case, there were five factors that scored a 2.
20

21           Q. Right. But before you actually issued your written opinion, you
22           did arrive at an opinion that there were only 3 considerations that
             warranted a 2 as opposed to 5. Right, sir?

23           A. No.
24

25           Q. Prior to submitting your report, didn't you reach an opinion that
26           there were only 3 scores that had a 2, rather than 5?

27           ***

28

A. No.

Q. Well, sir, at any point in time in your analysis, did you ever reach a point where you had the opinion that there were 3 considerations that got a 2 as opposed to 5?

A. My opinion has never been that there are 3 as opposed to a 5.

Q. Have you ever reached a tentative opinion that there are only 3 considerations that have a 2 as opposed to 5?

A. My opinions are in my report that we're looking at and there are 5 considerations.

Q. Prior to writing your report, did you ever have an opinion that there were only 3?

A. No.

Q. Did you ever change your opinion from 3 considerations that have a 2 to 5 considerations that have a 2?

A. No. My final opinion is in my report and my matrix is in my report.

Q. Right. But did you ever have a preliminary opinion before you issued your final opinion where you believed that there were only 3 considerations that warranted a 2?

***

A. No.

Q. Did you ever even consider at some point that we may be in a situation where there are 3 considerations that warrant a 2 but not 5?

A. No.

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM DOUG BANIA

Graif Decl., Ex. A (December 8, 2022 Deposition Transcript of Doug Bania) at 64:23-66:22. Then, when reviewing Schedule 4b, Mr. Bania explained:

A. Well, the total score is a 22. And then if you look at 11 the analysis, there are five. So why that says 3 there must be a typo.

Q. Sir, a 3 -- a score of 3 is consistent with 4.4 percent, 14 not 7.4 percent. Correct?

A. My opinion is a total score of 22, which is 5 considerations, which is a 7.4 percent.

\*\*\*

A. Again, I see a 3 here, it's a typo. I apologize. There are 5 considerations.

\*\*\*

A. So again, as it relates to my methodology, if you look at Schedule 4a and you count up, I have five above. Therefore, the total score is a 22, which is 7.4 percent.

*Id.* at 67:10-16; 68:14-15; 68:20-23. And a few minutes later:

Q. On this Exhibit 292, you have a 3 that is consistent with 4.4 percent, a 21 that is consistent with 5.8 percent, and a 22 that is consistent with 7.4 percent. Is that reasonable?

A. Well, what appears to have happened if you go back to Schedule 4a, the first page, and add up the score, it is a 22 with 5 considerations with the apportionment rate of 7.4 percent.

Q. But am I right that you have on Exhibit 4b, a 3 that is consistent with 4.4 percent, a 21 that is consistent with 5.8 percent and a 22 that is consistent with 7.4 percent? Is that reasonable?

A. That's what it says on the paper. That's not what my final opinion is.

Q. All right.

11

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM DOUG BANIA

A. My final opinion is 7.4 percent with a Total Score of 22.

Q. Is the score of 22 a typo?

A. The score of 22 is not a typo.

Q. Is the score of 21 a typo?

A. Yes. It is.

Q. Is the score of 3 a typo?

A. Yes. It is.

*Id.* at 73:3-74:2. Mr. Bania could not have been any clearer. His opinion is, and always has been, that five factors scored a 2, the total apportionment score is 22, and the apportionment rate is 7.4%.

Contrary to Defendants' claim, Mr. Bania has only disclosed one apportionment rate in this case: 7.4%. As explained above, Mr. Bania confirmed this in his deposition. Mr. Bania also disclosed this rate in numerous points throughout his report. Bania Opening Report at 13, 14, Schedule 3, Schedule 4b. For example, on page 13 of his report, Mr. Bania explains:

> The apportionment analysis at Schedules 4a and 4b indicates an unweighted score of 7.4% of the possible range of scores. Therefore, the contribution to incremental profits made by the S10 Mark and the portion of incremental profits that Samsung achieved from the infringing use of the S10 Mark should be 7.4%. The other assets and resources used by Samsung contributed the remainder of incremental profits. Applying a profit apportionment rate of 7.4% to incremental profits indicates the amount of profits subject to disgorgement would be ▮▮▮▮▮ if only COGS were deducted and ▮▮▮▮▮ both COGS and all operating expenses were deducted.

*Id.* at 13. Additionally, Figure 5 of Mr. Bania's Report discloses the apportionment rate of 7.4%:

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY FROM DOUG BANIA



*Id*. at 13. Further, Schedule 3 of Mr. Bania's report discloses an apportionment rate of 7.4%:

*Id*. at Schedule 3. Thus, Mr. Bania consistently and solely disclosed an apportionment rate of 7.4% in this case.

In sum, Defendants harp on two typos in Mr. Bania's expert report, but ignore his deposition testimony clarifying the typo, as well as the telling consistencies that undermine their unfounded accusations.

### iv.    *Mr. Bania Set Forth His Qualitative Apportionment Opinion and His Apportionment Analysis Should Not Be Excluded*

Defendants erroneously argue that Mr. Bania "has not disclosed a qualitative opinion regarding the contribution of the S10 mark to Samsung's profits from sales of the Galaxy S10 smartphone." ECF No. 109-1 at 20.  To the contrary, Mr. Bania thoroughly analyzed the contribution of the S10 Mark to Defendants' profits as well as detailed the other factors that contributed.

Defendants' arguments reflects a misunderstanding of Mr. Bania's report and, again, Defendants mischaracterize Mr. Bania's deposition testimony. In his deposition, Mr. Bania explained that he ran the matrix for the Subject IP (S10) and that other factors were taken into consideration. Graif Decl., Ex. A (December 8, 2022 Deposition

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE EVIDENCE AND TESTIMONY FROM DOUG BANIA

Transcript of Doug Bania) at 157:11-23. Further, and contrary to Defendants' claim, Mr. Bania is in fact qualified to offer such an opinion. ECF No. 109-1 at 20. Indeed, in his deposition, Mr. Bania expressly explained that he has experience in the consumer electronics industry. Graif Decl., Ex. A (December 8, 2022 Deposition Transcript of Doug Bania) at 32:11-14. Mr. Bania has extensive experience in consumer goods and, in this case, he delved very carefully into all the factors that could influence consumer purchasing decisions. *See, e.g.*, Bania Opening Report at 12, 13, and Schedule 4a.

### B.    Mr. Bania Considered the Relevant Factual Circumstances

Defendants next contend that Mr. Bania allegedly failed to consider alternative evidence that, in Defendants' opinion, he should have included in his analysis. This argument fails, as Mr. Bania's opinion has sufficient factual underpinnings.

Both in his report and deposition, Mr. Bania detailed the facts and evidence that he considered and how he applied his experience and knowledge to these facts and evidence in evaluating the profits available for disgorgement. Mr. Bania based his opinion on ample evidence, including: (1) S10's First Amended Complaint, (2) Samsung's Fourth Supplemental Responses to Plaintiff's First Set of Interrogatories, (3) Deposition Transcript of Suzanna De Silva, (4) Deposition Transcript of BoWoo Park; (5) Deposition Transcript of Seungmok Lee, (6) Deposition Transcript of Emilio Cartier, and (7) numerous documents produced in the course of this litigation by both Plaintiff and Defendants. Bania Opening Report at Exhibit A. In Mr. Bania's Rebuttal Report, he relied on additional evidence, such as: (1) Opening Expert Report of Chris Bakewell, (2) Botner Expert Report and Exhibits, (3) Deposition of Jenn Song, and (4) Expert Report of Keegan. ECF No. 109-13 (Bania Rebuttal Report) at Exhibit A.

Defendants unsuccessfully attempt to cite facts that Mr. Bania may not have considered in his analysis. ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

14



Similarly, Defendants' assertion that Mr. Bania failed to consider "evidence bearing on smartphone consumer purchasing decisions" is plainly incorrect. ECF No. 109-1 at 23.

Defendants specifically point to a single document in all of discovery that Mr. Bania did not review, but disregard the reality that Mr. Bania reviewed and consider many documents pertaining to smartphone consumer purchasing decisions.

Moreover, these criticisms go to the weight of Mr. Bania's testimony and are not a proper basis for excluding his opinions. *Oddo v. Arocaire Air Conditioning & Heating*, No. 8:15-cv-01985-CAS, 2020 WL 5267917, at *15 (C.D. Cal. 2020) (Snyder, J.) ("Plaintiffs' argument is not a proper basis for excluding Schneyer's opinion, however. *See IceMOS Tech. Corp. v. Omron Corp.*, No. 17-cv- 02575-PH-JAT, 2019 U.S. Dist. LEXIS 198397, 2019 WL 6075361, at *4 (D. Ariz. Nov. 15, 2019) ('[D]isagreement over which facts an expert decided to rely on is not an appropriate ground for exclusion of expert testimony. Rather, any perceived fault in Bratic's methodology goes to weight, not admissibility.').").

### C.  Mr. Bania's Apportionment Opinion is Relevant and Will Assist, Not Confuse, the Jury

Defendants incorrectly assert that disgorgement damages are not available in this case because S10 Entertainment is only pursuing claims for reverse confusion, which is the same argument they set forth in their motion for summary judgement. ECF No. 109-1 at 24. However, disgorgement in the 9th Circuit is a remedy for reverse

15

confusion. *See, e.g., Thrive Nat. Care, Inc. v. Thrive Causemetics, Inc.*, No. CV 20-9091 PA (ASX), 2021 WL 4813257, at *14 (C.D. Cal. Oct. 6, 2021); *D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*, No. CV 20-9770-MWF (KSX), 2022 WL 4596548, at *12 (C.D. Cal. Aug. 26, 2022) (holding that, as a matter of law, "disgorgement of profits" is an available remedy in reverse confusion cases). Therefore, Mr. Bania's opinion and testimony is connected to a viable damages theory and legally relevant.

Defendants further argue that Mr. Bania's opinion should be excluded as factually irrelevant. ECF No. 109-1 at 24. This argument lacks merit. Mr. Bania's opinion is that Defendants have to disgorge their profits to the percent that the S10 Mark contributed to the sale of the Accused Products, which he opines is 7.4%. Defendants reliance on *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460 (9th Cir. 2020) for their assertion that "the Lanham Act does not entitle plaintiffs to windfalls" is misleading. ECF No. 109-1 at 25. The defendant in *Stone Creek, Inc.*, unlike Defendants in this case, "did not profit from the infringement" and, therefore, the Court found that disgorgement "would amount to an inequitable windfall." *Id*. at 461. That is not the case here.

Allowing Mr. Bania to testify about his apportionment analysis and scoring will be helpful to the jury. This is particularly true when, as here, Defendants have failed to offer their own apportionment methodology.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to exclude Mr. Bania's testimony should be denied.

DATED:  January 3, 2023                    Respectfully submitted,

**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY & POPEO, P.C.**

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY FROM DOUG BANIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:/s/ *Andrew D. Skale*
        Andrew D. Skale (211096)
        Matthew S. Hurley
        (Admitted *Pro Hac Vice*)
        Michael R. Graif
        (Admitted *Pro Hac Vice* )
        James J. Thomson
        (Admitted *Pro Hac Vice*)
        Oliver Ennis
        (Admitted *Pro Hac Vice*)

**Attorneys for Plaintiff**
**S10 Entertainment**

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
EVIDENCE AND TESTIMONY FROM DOUG BANIA

1

## **CERTIFICATE OF SERVICE**

2            I hereby certify that on January 3, 2023, a true and correct copy of the foregoing

3    was filed electronically using the Court's CM/ECF system, which shall send

4    notifications of such filing to all counsel of record.  Any counsel of record who has not

5    consented to electronic service through the Court's CM/ECF system will be served by

6    electronic mail.

7

8                            By:  /s/ *Andrew D. Skale*

9                                 Andrew D. Skale (SBN 211096)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF S10'S OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO EXCLUDE
501334281v.2          EVIDENCE AND TESTIMONY FROM DOUG BANIA