MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (SBN 211096)
adskale@mintz.com
Michael T. Renaud (*Pro Hac Vice Application Pending*)
mtrenaud@mintz.com
Matthew S. Hurley (Admitted *Pro Hac Vice*)
mshurley@mintz.com
Michael R. Graif (Admitted *Pro Hac Vice*)
Mrgraif@mintz.com
3580 Carmel Mountain Road
Suite 300
San Diego, CA 92130
(858) 314-1500

*Attorneys for Plaintiff*
*S10 Entertainment & Media LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| S10 ENTERTAINMENT & MEDIA LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG ELECTRONICS CO., LTD.; and SAMSUNG ELECTRONICS AMERICA, INC <br> Defendants. | Case No. 2:21-cv-2443-CAS-JPR <br><br> **PLAINTIFF S10'S NOTICE OF MOTION AND MOTION *IN LIMINE* (NO. 1) EXCLUDE TESTIMONY AND/OR EVIDENCE APPLYING THE RESULTS OF THIS PURCHASING SURVEY IN ANY DAMAGES ANALYSIS** <br><br> Date: Feburary 13, 2023 <br> Time: 11:00 a.m. <br> Hon. Christina A. Snyder <br> Courtroom: 8D, 350 W. First Street |

**TO THE COURT AND ALL PARTIES OF RECORD:**

PLEASE TAKE NOTICE that on February 13, 2023, at 11:00 a.m. in Courtroom 8D of the of the United States District Court for the Central District of California, located at 350 West First Street in Los Angeles, California, Plaintiff S10 Entertainment & Media LLC ("S10") will and hereby does move to exclude testimony and/or evidence applying the results of Samsung's purchasing survey to Samsung's profits or any damages calculations or suggesting that it can be used as an apportionment number in any damages calculations, on the grounds that 1) Samsung has not met its burden to show that using purchasing surveys to calculate damages is appropriate in trademark cases, 2) it is inappropriate to use the purchasing survey results to apportion profits in this case, and 3) Samsung has not established why a purchasing survey that purportedly measures consumers' reasons for purchasing the "S10" smartphone (years after the fact) is relevant to determining the amount of profit that Samsung earned because of its use of "S10" in the name.

This motion is based upon this Motion, the attached Memorandum of Points and Authorities, and all pleadings and papers on file in this matter, and oral argument.

This motion is made following a Local Rule 7-3 pre-filing conference of counsel held on December 30, 2022.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively "Samsung") engaged an expert to conduct a purchasing survey, which they intend to use to attempt to undermine S10 Entertainment's damages calculations.  This is improper and the Court should exclude testimony and/or evidence applying the results of this purchasing survey in any damages analysis in this case.

### II.    BACKGROUND

Samsung's survey expert, Dr. Keith Botner, conducted a purchasing survey ("Botner Survey") purportedly to determine how important various features of the S10 smartphone were to consumers' decision to have purchased it.[1] The survey asked respondents to allocate 100 points to 15 features (as well as a catch-all "another reason not listed above") that Dr. Botner chose after reviewing websites and deciding which ones he believed were the most salient to consumers. ECF 85 at 13—15. Dr. Botner concluded from the survey that respondents allocated 1.1 out of 100 importance points to the "S10 name". Expert Report of Dr. Keith A. Botner ("Botner Report"), ECF No. 85-2 at 20.

Samsung's damages expert, Chris Bakewell, then offered this value, 1.1 out of 100 points (1.1%), to counter the apportionment calculation provided by S10 Entertainment's damages expert, Doug Bania. Rebuttal Expert Report of W. Christopher Bakewell, ECF No. 84-3 at ¶ 100—102 & nn.161—165; *see* Opening Expert Report of W. Christopher Bakewell, ECF No. 84-2 at ¶ 47—48 (collectively "Bakewell Reports"). Notably, Samsung did not provide an affirmative damages calculation in this case.

---

[1] In addition to this motion *in limine*, S10 Entertainment also filed a *Daubert* motion, ECF No. 85, to exclude Dr. Botner's initial report and related testimony. The *Daubert* motion details the survey's numerous flaws, which should inform the Court's determination on the present motion.

### III.    APPLICABLE LEGAL STANDARD

"Evidence is relevant if: a) it has any tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the action". Federal Rule of Evidence ("FRE") 401. "Irrelevant evidence is not admissible." FRE 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury…." FRE 403.

As the Lanham Act notes, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C.A. § 1117(a). As such, the Ninth Circuit's Model Jury Instructions state: "[t]he defendant has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence." Model Civ. Jury Instr. 9th Cir. 15.29 (2022).

Samsung, therefore, must prove any apportionments they claim are appropriate. In order to prove any apportionments, they must prove that the framework the methodology uses to arrive at its apportionment is proper.

### IV.    ARGUMENT

The Court should exclude these survey results for three reasons. First, Samsung provides no support for using a purchasing survey in damages calculations in trademark cases. Second, it is inappropriate to use the purchasing survey results to apportion profits here. Third, Samsung presented no evidence that there is a "one-to-one" relationship between the results of the Botner Survey and Samsung's profits.

***First***, Samsung provides no support for using a purchasing survey in damages calculations in trademark cases. Neither the Botner Report nor the Bakewell Reports cite to any case law or academic literature to support this, much less on-point examples. Samsung asks the Court to rubber stamp a novel approach to calculating damages in trademark cases without providing any support for the method.

There is good reason for the Court to be wary of what Samsung is asking it to allow. In *Globefill Inc. v. Elements Spirits, Inc.*, the court declined to apportion profits based on a confusion survey. No. 2:10-cv-02034-CBM (PLAx), 2017 U.S. Dist. LEXIS 214359, at *6 (C.D. Cal. Sept. 8, 2017). The Court noted:

> Elements also argues its profits should be reduced by 60% based on testimony from Plaintiff's expert witness Dr. Isaacson, who opined that confusion specific to KAH's use of the skull shaped bottle among individuals surveyed was between 34% and 40%. [citation omitted] Dr. Isaacson's testimony does not show 60% of actual sales of KAH tequila were "demonstrably not attributable to the unlawful use of" Plaintiff's trade dress. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206, 62 S. Ct. 1022, 86 L. Ed. 1381, 1942 Dec. Comm'r Pat. 767 (1942). Accordingly, the Court declines to apportion profits based on Dr. Isaacson's testimony.

Here, Samsung has not shown how 98.9% (100 points minus 1.1 points=98.9%) of its sales or profits are "demonstrably not attributable to the unlawful use of" S10 Entertainment's trademark. *See Mishawaka*, 316 U.S. at 206 (1942). In fact, 51.7% of respondents in the same Botner Survey said they considered "the S10 name" when they decided to purchase the S10 smartphone (60.8% of 291 respondents in Q3=177; 177/342 total survey respondents=51.7). ECF No. 85 at 11.

**Second**, it is inappropriate to use the results of this purchasing survey to apportion profits here because a name is not a feature of a smartphone that affects a consumers' use and enjoyment of the phone, and therefore cannot be appropriately applied to damages calculations years after the purchase was made.

Here, Dr. Botner surveyed those who had already bought an S10 smartphone as far back as 2018. Asking purchasers to think back to the importance they placed on specific features when making their purchasing decisions, when there is no evidence provided that the consumers made their purchasing decisions by considering features in a mutually exclusive way, does not provide any relevant insight into whether that is actually how consumers made their decisions. There was no analysis done as to how

the presence or absence of "the S10 name" affected purchasing decisions.

Further, a product's name is different than its actual features. A name provides an ability to differentiate between products, so it is a necessary component to finding a product so it can be bought. It also makes consumers more open to advertising because "[t]he purpose of a brand [name] is to capture consumer attention and to convey the value proposition, or brand promise, to the consumer." ECF No. 85 at 23—24 (citing ECF No. 85-3 at ¶ 45). Lastly, the Botner Survey does not tell the Court anything of value because "the S10 name" is not a tangible feature that actually affects consumers' and enjoyment of the smartphone, but it is grouped in with features that do. The survey did not take into account the centrality of product name to product differentiation. ECF No. 85 at 24.

The relevant question isn't how many importance points consumers apply to "the S10 name" years after their purchases, with those importance points calculated by grouping the name in with tangible features of the phone, but rather whether "the S10 name" had any role in people buying the phone at all, which this survey does not accurately measure. If anything, the 51.7% of respondents who said they considered "the S10 name" when they decided to purchase the S10 smartphone is a much more relevant figure. ECF No. 85 at 11.

***Third***, even if the Court allows this novel method of apportionment (it should not), there is no evidence presented that there is a "one-to-one" relationship between the results of the Botner Survey and Samsung's profits. Neither the Botner Report nor the Bakewell Reports explain why the Botner Survey results should be taken as directly correlated to Samsung's profits.

In *Apple Inc. v. Samsung Elecs. Co.*, the court excluded the opinions of Samsung's expert about profit apportionment based on purchasing surveys in a design patent case concerning smartphone features. No. 11-CV-01846, 2018 U.S. Dist. LEXIS 57070, at *107—111 (N.D. Cal. Apr. 2, 2018). That design patent case is analogous

because Samsung, in the present case, has not provided any examples of purchasing surveys being used in a trademark case. In that case:

> the surveys upon which [the expert] relies do not directly or indirectly measure customers' willingness to pay for certain components or features. Rather, the [] surveys cover "factors that impact customer satisfaction," [citation omitted], and customers' reasons for choosing the phone that they purchased, [citation omitted]. Mr. Wagner does not explain how this data or "how the purchase driver percentage determined by the Nielsen survey" are related to Samsung's profits, nor does he explain the basis for his assumption that there is "a direct one-to one correlation" between the consumer preference survey results and Samsung's profits.

*Id.* at *107. While the Botner Survey purportedly measured customers' reasons for purchasing the S10 smartphone, Samsung similarly does not offer any explanation for how those results are related to its profits. The court further noted:

> [T]he percent of consumers that chooses any given feature as the most important factor in their purchasing decision ***could vary widely based on the number of features surveyed***...the amount of profits attributable to the same feature could vary significantly based on the design of the survey.

*Id.* at 110. [Emphasis added.] The Botner Survey suffers from the exact same issues – the 1.1% of profits that Samsung attempts to say are attributable to "the S10 name" would clearly vary significantly if more or fewer features had been included in the survey. ECF No. 85 at 12—16.

Samsung has failed to prove that using a purchasing survey generally, nor the Botner Survey specifically, for profit apportionment is appropriate in a trademark case, and therefore has not shown that the results have "any tendency to make a fact more or less probable than it would be without the evidence." FRE 401. This evidence is therefore irrelevant and inadmissible. FRE 402. Even if deemed relevant, it will cause unfair prejudice, confuse the issues, and mislead the jury. FRE 403.

1

## V.    CONCLUSION

2        S10 Entertainment respectfully requests that the Court exclude testimony and

3   evidence applying the results of Samsung's purchasing survey to its profits or

4   suggesting that it can be used as an apportionment number in damages calculations.

5

6   DATED: January 9, 2023        Respectfully submitted,

7                       **MINTZ, LEVIN, COHN, FERRIS**
                          **GLOVSKY & POPEO, P.C.**

8

9                 By: */s/ Michael R. Graif*

10                      Andrew D. Skale (211096)
                        Matthew S. Hurley

11                      (Admitted *Pro Hac Vice)*
                        Michael R. Graif

12                      (Admitted *Pro Hac Vice* )
                        James J. Thomson

13                      (Admitted *Pro Hac Vice*)
                        Oliver Ennis

14                      (Admitted *Pro Hac Vice*)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 3580 Carmel Mountain Road Suite 300 San Diego, CA 92130.  On January 9, 2023, I served the following documents:

**PLAINTIFF S10'S NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE APPLYING PURCHASING SURVEY RESULTS TO DAMAGES CALCULATIONS**

☒    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I personally electronically served from my electronic address SBaer@mintz.com  in "PDF" format, the document(s) described above to be transmitted to the person(s) at the e-mail addresses as indicated below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

**Counsel of record.**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on January 9, 2023, in Boston, MA.

*/s/ F. Stacey Baer*
F. Stacey Baer