UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings**     **[REDACTED]** (IN CHAMBERS):

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 91, filed on DECEMBER 23, 2022)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 115, filed on DECEMBER 23, 2022)

## I.    INTRODUCTION

Currently before the Court are the parties' cross-motions for summary judgment, Daubert motions to exclude expert testimony, and defendants' motion to strike the jury demand in plaintiff's first amended complaint.

On March 19, 2021, plaintiff S10 Entertainment & Media, LLC ("S10 Entertainment") brought suit against defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"). Dkt. 1. On July 20, 2021, plaintiff filed an amended complaint. Dkt. 37 ("FAC"). Plaintiff alleges claims against defendants for (1) trademark infringement under 15 U.S.C. § 1114; (2) trademark infringement under 15 U.S.C. § 1125(a); (3) contributory trademark infringement under 15 U.S.C. §§ 1114, 1124(a); (4) unfair competition under California state common law; and (5) unfair competition in violation of Cal. Bus. & Prof. Code, § 17200 *et seq.* Id. Plaintiff's claims are brought under a "reverse confusion" theory of infringement, which is set forth in greater detail below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

On August 3, 2021, defendants answered plaintiff's FAC, asserting among others the affirmative defenses of laches and equitable estoppel. Dkt. 45 ("Answer"). Defendants also filed a counterclaim against plaintiff, bringing a claim for trademark infringement under 15 U.S.C. § 1125(a) and seeking cancellation of plaintiff's federal trademark registration pursuant to 15 U.S.C. § 1119. Id.

This case arises out of plaintiff's and defendants' usage of the mark "S10." Plaintiff is a full-service talent management company and has registered a trademark in the S10 Mark under United States Trademark Registration No. 5,903,315. Defendants are an electronics company and its American subsidiary, and they use the label "S10" as a part of what they identify as the "family of marks" relating to their "Galaxy S" smartphone series.

On December 23, 2022, plaintiff filed a motion for partial summary judgment as to its three trademark infringement claims and defendants' affirmative defenses of laches and equitable estoppel. Dkt. 91 ("Pl.'s MSJ").[1] The same day, defendants filed a cross-motion for summary judgment as to all of plaintiff's claims for relief in its FAC. Dkt. 115 ("Defs.' MSJ").

On January 3, 2023, the parties filed their respective oppositions to the cross-motions. See dkt. 123 ("Defs.' Opp. to Pl.'s MSJ"), 135 ("Pl.'s Opp. to Defs.' MSJ").

On January 10, 2023, the parties filed their respective reply briefing in support of their motions. See dkts. 179 ("Defs.' MSJ Reply"), 186 ("Pl.'s MSJ Reply").

On January 23, 2023, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted.

---

[1] Additionally, defendants filed a motion to strike plaintiff's jury demand in its FAC, and the parties filed cross-motions to exclude testimony of expert witnesses. See Dkts. 84–87, 105, 111, 113. These motions are addressed by the Court in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

### A.    Plaintiff's business and its usage of "S10"

Plaintiff S10 Entertainment was created by Brandon Silverstein in 2017 as a "full-service talent management company" for the purposes of managing, promoting, publishing and producing the music of talented and emerging artists within the music industry. Dkt. 139, ¶¶ 32–33. ("Pl.'s Statement of Disputed Facts to Defs.' MSJ" or "Pl.'s SDF"). S10 operates in a music industry ecosystem involving multiple participants with varying roles, including talent managers, such as Silverstein; recording artists, such as S10 Entertainment clients Normani and Anitta; record labels (*e.g.*, Warner Music Group, Universal Music Group); and third parties such as music publishers (*e.g.*, Universal Music Publishing Group) and digital service/streaming providers (*e.g.*, Spotify, Apple Music). Id. ¶ 9. S10's current talent management clients are the artists Normani and Anitta, while past clients include Bazzi and Jacob Banks. Id. ¶¶ 37, 64, 66. S10 Entertainment's role in providing talent management services to its artists is to facilitate all aspects of its client's career by working with other businesses in the music industry, such as record labels, agents, publishers, publicists, and consumer brands. Id. ¶ 75. In providing talent management services, S10 Entertainment interacts (directly and indirectly) with consumer brands to secure partnerships on behalf of its artists, such as ████████████████████████. Id. ¶ 76.

On May 18, 2018, S10 Entertainment filed an application to register the mark "S10" in connection with the following goods and services:

Class 025: Clothing, namely, t-shirts, hooded pullovers and sweatshirts;

Class 035: Management of performing artists; Artist representation and artist management services, namely, management and administration of contract negotiation, and organization and execution of contract tours and appearances; Business marketing for recording and performing artists; and

Class 041: Entertainment services, namely, recording, production and post-production services in the field of music and music videos; organizing events featuring live musical performances, producing and distributing digital content in the field of music.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

Id. ¶ 81.  The trademark was registered to S10 Entertainment on November 12, 2019, as U.S. Reg. No. 5,909,315.  Id. ¶ 82.  Silverstein selected "S10" as the basis for the name of S10 Entertainment because his birthday is September 10th.  Dkt. 123-1, ¶ 2. ("Defs.' Statement of Disputed Facts to Pl.'s MSJ" or "Defs.' SDF").

When using its trademark on its internet homepage, S10 Entertainment's trademark appears in yellow sans serif font against a black background.  Id. ¶ 30.  It additionally uses the mark in connection with its social media marketing, including on its Instagram and Twitter account.  Id. ¶ 32.  Examples of S10 Entertainment's usage include the following:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |




### B.    Defendants' business and their usage of "S10"

Defendant Samsung Electronics Co., Ltd. ("SEC") is an electronics company that designs, manufactures, and distributes a range of consumer electronics, such as televisions, home appliances, and smartphones. Pl.'s SDF ¶ 1. Defendant Samsung Electronics America, Inc. ("SEA") is a U.S. subsidiary of SEC that sells consumer electronics products manufactured by SEC. Id. ¶ 2. Samsung sells mobile devices under the SAMSUNG and GALAXY brands, including the Galaxy S series, the Galaxy Z series, and the Galaxy A series. Id. ¶ 3.

Since introducing the original Galaxy S-series smartphone in 2010, Samsung has released twelve subsequent generations of Galaxy S smartphones in the United States, including the Galaxy SII, Galaxy SIII, Galaxy S4, Galaxy S5, Galaxy S6, Galaxy S7, Galaxy S8, Galaxy S9, Galaxy S10, Galaxy S20, Galaxy S21, and Galaxy S22. Id. ¶ 4. In 2015, Samsung set forth updated brand guidelines for its GALAXY line of phones, which introduced a new "Galaxy" and "Galaxy S" logo incorporating the Samsung Sharp Sans typeface, which Samsung used in connection with the Galaxy S6 smartphone and each subsequent generation of Galaxy S smartphone thereafter. Id. ¶¶ 5–7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |



Samsung began contemplating the name "Galaxy S10" for its tenth generation of Galaxy S smartphones as early as 2016, and ▇▇▇▇▇, Samsung's Global Brand Marketing Group approved and recommended "Galaxy S10." Id. ¶¶ 11–23. On February 20, 2019, Samsung announced the Galaxy S10 smartphone line – including the Galaxy S10e, Galaxy S10, Galaxy S10+, and Galaxy S10 5G, at its Unpacked Event in San Francisco. Id. ¶ 15. As with Samsung's prior Galaxy S smartphones, Samsung's Galaxy S10 smartphones were sold to consumers through various channels, including through wireless carriers such as AT&T, Verizon, and T-Mobile; retailers such as Best Buy; and online through Samsung's website Samsung.com. Id. ¶ 17.

Samsung has generally promoted its Galaxy S series smartphones, including the Galaxy S10, through a variety of media channels, including in-store marketing and advertisements through wireless carriers and retail stores, online through Samsung.com and various Samsung-owned social media channels, including corporate Facebook, Instagram, and YouTube webpages, traditional print and media advertisements, including television commercials and online video advertisements, product integrations, partnerships with select celebrities and influencers, and festivals and events. Pl.'s SDF ¶ 16. Samsung markets its Galaxy S series smartphones to anyone in the U.S. in the market for a smartphone. Id. ¶ 17. Consistent with Samsung's marketing campaigns for prior Galaxy S series devices, Samsung's marketing efforts specific to the Galaxy S10 were almost exclusively concentrated in 2019. Id. ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|----------|------------------------|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

Samsung launched specific Galaxy S10 advertising and promotional campaigns in 2019 when it released the new smartphone lineup. For instance, that year, it offered promotions with YouTube and Spotify whereby purchasers of Samsung mobile devices, such as Galaxy S10 or Galaxy Note 10 devices, could receive free introductory subscriptions to YouTube premium or Spotify. Id. ¶ 24. Samsung conducted a Samsung Experience Tour from March 8, 2019 through May 31, 2019, which consisted of pop-up locations in twelve markets across the United States at which consumers could interact with various Samsung devices. Id. ¶ 25. As part of the Samsung Experience Tour, Samsung hosted a pop-up location in Austin, Texas during the Music Festival ("SXSW"). Id. ¶ 26. Additionally, in 2019, Samsung promoted the Galaxy S10 smartphone at events hosted by Samsung, including an event in New York City called Happy Galaxy Day. Id. ¶ 28.

Examples of the Samsung's usage of "S10" in connection with the Galaxy S10, including its Samsung Experience Tour, are below:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |



Samsung has focused its sales and advertising efforts on subsequent iterations of the Galaxy smartphone series, including the Galaxy S20 in February 2020, and its most recent generation, the Galaxy S22.[2]  Pl.'s SDF ¶¶ 30–31.

---

[2] Samsung skipped 11–19 in its Galaxy S-series naming convention, going directly from the Galaxy S10 to the Galaxy S20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

### C.    S10 Entertainment and Samsung's business dealings with each other

The parties were introduced to each other in November 2018, at which time Samsung had become aware of S10 Entertainment.  Pl.'s SDF ¶¶ 88–89.
█████████████████████████████████████████████
████████████████ Id. ¶ 90. █████████████████████████ Normani to perform at Samsung's private Happy Galaxy Day event in 2019 as described above.  Id. ¶ 97. Normani promoted the Galaxy S10 in connection with the Happy Galaxy Day event, posting a photo from the event to her social media account using a Galaxy S10 smartphone with the hashtag "#teamgalaxy". ████████████████████████████
████████████████ Samsung's agency provided █████ with a list of acceptable hashtags for the post, including "#GalaxyS10," "#withGalaxy," and "#TeamGalaxy."  Id. ¶ 98.  S10 Entertainment received █████████████████ from Normani's performance at the happy Galaxy Day event in 2019.  Id. ¶ 99.

Additionally, in July 2019, the Brazilian music artist known as Anitta signed on with S10 Entertainment.  Anitta had worked with Samsung Brazil since 2015 for various promotional efforts on behalf of the company. █████████████████████████████
███████████████████████████████ to expand Anitta's preexisting relationship with Samsung into the United States.  Id. ¶¶ 95, 102–103.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

"conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

As stated above, plaintiff has filed a motion for partial summary judgment on its three trademark infringement claims and defendants' two affirmative defenses, while defendants have filed a motion for summary judgment as to all three of plaintiff's infringements as well as its two state law unfair competition claims. Although defendants have filed a counterclaim for trademark infringement, that counterclaim is not the subject of any of the now pending summary judgment motions. The Court first addresses plaintiff's trademark infringement claims.

To succeed on a claim for trademark infringement under the Lanham Act involving reverse confusion, the plaintiff must show that: "(1) [it] is the senior user; (2) of a valid trademark; (3) which the defendant is using in a way that is likely to confuse the plaintiff's customers into believing that they are dealing with the defendant." Moose Creek, Inc. v. Abercrombie & Fitch Co., 331 F. Supp. 2d 1214, 1221 (C.D. Cal. 2004) (citing Brookfield Comm., Inc. v. West Coast Ent. Corp., 174 F.3d 1036, 1047, 1053 (9th Cir. 1999)). Additionally, because claims "under the Lanham Act and unfair competition under California common law both share a single test: likelihood of confusion," the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | | Date | February 1, 2023 |
|---|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | | |

analysis for plaintiff's state law claims "is therefore identical to the analysis" of its trademark infringement claims. <u>Microsoft Corp. v. Buy More, Inc.</u>, 703 F. App'x 476, 479 (9th Cir. 2017); <u>see also Dreamwerks Production Group, Inc. v. SKG Studios</u>, 142 F.3d 1127, 1132 n.13 (9th Cir. 1998); <u>Walt Disney Prods. v. Air Pirates</u>, 581 F.2d 751, 760 (9th Cir. 1978).

### A.    Whether S10 Entertainment is the senior user of a valid trademark

"A party's ownership of a protectable mark is determined on the basis of priority of use in commerce.  That is, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." <u>S. California Darts Ass'n v. Zaffina</u>, 762 F.3d 921, 930 (9th Cir. 2014).  Federal registration of a mark is prima facie evidence of a party's ownership of that mark. <u>Dep't of Parks & Recreation</u>, 448 F.3d at 1124.

In its motion for partial summary judgment, plaintiff argues that it is the senior user of the S10 Mark because there is no dispute that it registered the mark first, and that it was the first to use the mark in commerce since 2017, whereas Samsung's first use was in 2019.  Pl.'s MSJ at 11.

In opposition, Samsung argues that its usage of S10 as part of its "Galaxy S" smartphone series falls within its "family of marks" for the Galaxy S.  Defs.' Opp. to Pl.'s MSJ at 5.  "A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." <u>J & J Snack Foods Corp. v. McDonald's Corp.</u>, 932 F.2d 1460, 1463 (Fed. Cir. 1991).  Specifically, Samsung contends that it is undisputed that "[s]ince introducing the original Galaxy S-series smartphone in 2010, Samsung has released twelve generations of Galaxy S-series smartphones using its sequentially-increasing naming convention."  Defs.' Opp. to Pl.'s MSJ at 5.  On this basis, and given the mass sale and marketing efforts of the Galaxy S-series, Samsung argues that there is a genuine dispute of material fact as to S10 Entertainment's priority and ownership of the asserted S10 mark.  <u>Id.</u> at 5–7.

In reply, S10 Entertainment argues that Samsung has not sufficiently set forth evidence to establish a family of marks because Samsung's "future yet-unannounced" plan to use S10 as the next iteration of the Galaxy S-series does not change the fact that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

S10 Entertainment had already been using the mark in commerce before Samsung launched the Galaxy S10 lineup. Pl.'s MSJ Reply at 3–4. Additionally, at oral argument, counsel for S10 Entertainment emphasized that there are disputed questions of fact as to whether Samsung has a family of marks at all for the Galaxy S-series, and that even if it does, whether that protection applies within the music industry space that S10 Entertainment occupies.

"Whether a family of marks exists is a question of fact based on the family formative's distinctiveness, and the nature of the use, advertising and promotion in which the alleged family marks appear." 4 McCarthy on Trademarks and Unfair Competition § 23:61 (5th ed.). To establish a family of marks, the proponent of the family must show that "recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods." J & J v. McDonald's, 932 F.2d at 1462.

At this juncture, the Court finds that it would be inappropriate to rule as a matter of law that Samsung has a family of marks, and that this family precludes plaintiff from bringing its infringement claims in this case. While the Court is skeptical of plaintiff's contentions against Samsung's proposed family marks, this question of fact may be better decided on a Rule 50 motion following trial, when the Court has heard all of the evidence. See, e.g., Icon Desert Logistics v. City of Blythe Police Dep't, No. 520CV02225CASJCX, 2022 WL 1155359, at *9 (C.D. Cal. Apr. 18, 2022), reconsideration denied 2022 WL 3013059 (C.D. Cal. May 4, 2022)

### B.    Whether there is a likelihood of confusion

To assess likelihood of confusion in a "reverse confusion" case, the Court must ask "whether consumers doing business with [S10 Entertainment] might mistakenly believe that they are dealing with [Samsung]." Lodestar Anstalt v. Bacardi & Co. Ltd., 31 F.4th 1228, 1252 (9th Cir.), cert. denied sub nom. Anstalt v. Bacardi & Co. Ltd., 143 S. Ct. 428 (2022) (internal quotation omitted). Specifically, "[w]hen assessing reverse confusion on summary judgment, [the Court asks] whether a reasonable jury could conclude that consumers would believe [Samsung] is the source of, or a sponsor of," S10 Entertainment's *services*. Id. (quoting Ironhawk Techs., Inc. v. Dropbox, Inc., 2 F.4th 1150, 1160 (9th Cir. 2021)). To do so, the Court employs the following test:

The eight-factor Sleekcraft test is used in the Ninth Circuit to analyze the likelihood of confusion question in all trademark infringement cases, both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

competitive and non-competitive. The eight factors are as follows: (1) the strength of the mark; (2) the proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines.

<u>Dr. Seuss Enterprises v. Penguin Books USA, Inc.</u>, 109 F.3d 1394, 1404 (9th Cir. 1997) (citing <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348–49 (9th Cir. 1979)). While the <u>Sleekcraft</u> factors are considered in reaching a decision on the issue of likelihood of confusion, "no mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which the likelihood of confusion must be determined." <u>Id.</u> "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the <u>Sleekcraft</u> likelihood of confusion test." <u>Entrepreneur Media,</u> 279 F.3d at 1140. "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." <u>Id.</u>

Whereas "forward confusion" is concerned with a junior user's attempts to profit off of the senior user's mark, in a "reverse confusion" case, "the junior user saturates the market and overwhelms the senior user." 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed.). The resulting harm is that the "senior user loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets." <u>Id.</u> (internal citation omitted). Given this purpose, "[r]everse confusion will not be likely if the goods or services of the parties are not competitive, the respective markets are separated, and the advertising of the parties is directed at different types of purchasers." <u>Id.</u>

      1.      Strength of the Mark

A mark's strength is based on its conceptual strength and strength in the marketplace. <u>See</u> <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1207 (9th Cir. 2000). In reverse confusion cases, courts compare the conceptual strength of the senior user's mark with the commercial strength of the junior user's mark. <u>See</u> <u>Moose Creek</u>, 331 F. Supp. 2d at 1224. This is because the issue in a reverse confusion case "is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

whether the junior mark is so strong as to overtake the senior mark." Walter v. Mattel, Inc., 210 F.3d 1108, 1111 n.2 (9th Cir. 2000).

Here, it is undisputed by the parties that "S10," as used by both parties, is considered an arbitrary mark, and that Samsung's usage of the mark is commercially strong. See Pl.'s MSJ at 13–14; Defs.' MSJ at 20–21. However, the parties dispute the extent to which this factor should weigh within the Sleekcraft analysis.

S10 Entertainment argues that because it is undisputed that S10 is an arbitrary mark and that Samsung's usage of it is commercially strong, this factor "heavily" weighs in favor a likelihood of confusion on this basis alone. Pl.'s Opp. to Defs.' MSJ at 10–11.

By contrast, Samsung argues S10 Entertainment fails to appropriately weigh this factor in light of the fact S10 Entertainment and Samsung do not offer competing services to an overlapping consumer base. Specifically, Samsung contends that this factor is of "limited importance where, as here, the parties are not competitors and do not produce complementary goods." Defs.' Opp. to Pl.'s MSJ at 10 (citing Machine Head v. Dewey Global Holdings, Inc., No. C-99-04326 CW, 2001 WL 1747180, at *12 (N.D. Cal. Dec. 13, 2001) (finding this factor "of only limited assistance in determining likelihood of confusion" and noting that "[w]here the products at issue are unrelated, the use of identical names does not constitute infringement").

Because it is undisputed by the parties that the S10 mark in this case is arbitrary and that Samsung's usage of "S10" is "commercially robust," this factor would typically weigh in favor of likelihood of confusion. However, as explained in further detail below, there are several disputed questions of fact with respect to the "proximity of products and service" and "type of goods" factors. It is therefore more appropriate for the jury, rather than the Court, to decide whether this factor—strength of the mark—is "of only limited assistance in determining likelihood of confusion," Machine Head v. Dewey Global Holdings, Inc., 2001 WL 1747180, at *12. Put another way, a jury could ultimately determine that this factor is "overwhelmingly offset by" the other Sleekcraft factors in its overall evaluation. Lodestar v. Bacardi, 31 F.4th at 1261.

        2.    Proximity of the Goods or Services

The Court next considers the proximity or relatedness of the goods or services at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

> Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods. [T]he danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. The proximity of goods is measured by whether the products are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function.

Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1150 (9th Cir. 2011) (citations and quotation marks omitted).

S10 Entertainment argues that this factor weighs in favor of likelihood of confusion because the convergence of the parties' marketing and promotional efforts—specifically within the music industry—makes their products and services "related" and creates an actionable risk of confusion. Pl.'s MSJ at 11–12. Plaintiff argues that this convergence is especially probative of a likelihood of confusion in a situation where a "consumer device company (Samsung) advertis[es] its products using musicians (like those represented by S10 Entertainment), where the parties' goods and services are often seen together in promotions." Pl.'s Opp. to Defs.' MSJ at 11–12. S10 Entertainment argues that "[f]rom the outset, Samsung emphasized music in its advertising for the S10 phone, as well as its music related features." Pl.'s MSJ at 15. In particular, S10 Entertainment highlights Samsung's sale of the Galaxy S10 phone with preloaded apps and introductory subscription offers of the streaming platforms Spotify and YouTube Premium. According to plaintiff, "this connection alone was highly likely to confuse potential S10 Entertainment customers, as S10 Entertainment's artists are featured on Spotify." Id. at 15–16.

In opposition, Samsung argues that plaintiff focuses on irrelevant and insufficient comparisons between the parties, because the inquiry in a reverse confusion case is whether S10 Entertainment's consumers are likely to associate S10 Entertainment's services with Samsung. Defs.' Opp. to Pl.'s MSJ at 10. First, Samsung argues that S10 Entertainment's assertions that "smartphones and music now go-hand-in-hand" is "superficial analysis." Id. at 11. Samsung cites to Machine Head v. Dewey Global Holdings Inc., in which a court in the Northern District of California explained that the "fact that both products could broadly be described as relating to music is not sufficient to find that the products have a similar use or function." Mach. Head v. Dewey Glob. Holdings Inc., No. C 99-04326 CW, 2001 WL 1747180, at *6 (N.D. Cal. Dec. 13, 2001)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | | Date | February 1, 2023 |
|---|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | | |

(finding that defendant's sound design services sold for use in television, film, and music were not materially related to plaintiff's heavy metal rock band music and merchandising sold to fans and the public).

Second, Samsung also distinguishes S10 Entertainment's reliance on the Ninth Circuit's opinion in Dreamwerks Prod. Grp., Inc. v. SKG Studio, which reversed the district court's grant of summary judgment dismissing the trademark infringement claims of plaintiff, a science fiction convention organizer, against defendant, a movie studio. The Ninth Circuit found a genuine dispute of material fact as to the relatedness of the parties' goods and services because both movie studios and entertainment conventions offer overlapping movie-themed merchandise. Samsung argues that there is no similar overlap between S10 Entertainment and Samsung's respective goods and services: "the 'use and function' of Samsung's Galaxy S10 smartphones and S10 Entertainment's specialized services to their respective consumers are entirely different—a multipurpose consumer electronic device compared to specialized services [in the music industry]." Defs.' Opp. to Pl.'s MSJ at 11.

The Court finds that this factor—the proximity of goods and services—creates triable issues of fact. Although Samsung raises several arguments that plaintiff overstates the relatedness of the parties' products, it is nonetheless possible that a rational jury could conclude that the proximity of S10 Entertainment's services and Samsung's smartphones as marketed within the music industry helps contribute to a likelihood of reverse confusion. More crucially, because "no mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which the likelihood of confusion must be determined," the Court cannot rule as a matter of law that this factor could not weigh in favor of likelihood of confusion. Dr. Seuss Enterprises, 109 F.3d at 1404.

3.    Similarity of the Marks

"Similarity of the marks is tested on three levels: sight, sound, and meaning, and each must be considered as they are encountered in the marketplace." Lodestar v. Bacardi, 31 F.4th at 1260 (internal citation omitted). Specifically, "in assessing this factor, the mark must be viewed *as a whole*, as it appears in the marketplace." Id. (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | | Date | February 1, 2023 |
|----------|------------------------|---|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | | |

Plaintiff argues that this factor weighs in favor of likelihood of confusion. Plaintiff notes that the parties use an identical word mark, "S10," and that the designs of the logos themselves are "strikingly similar." Pl.'s MSJ at 17. In support of this contention, plaintiff compares an image of its own website logo, in which the background is black and the mark is displayed in a yellow sans-serif font, and the "same colorway on the packaging of some S10 phones, which were sold abroad but displayed and reviewed on YouTube channels available to U.S. consumers." Id.



In opposition, Samsung argues that S10 Entertainment improperly "dissects" the marks, particularly Samsung's mark, instead of "comparing [them] in their entirety" as they appear in the marketplace. Defs.' Opp. to Pl.'s MSJ at 12 (quoting Matrix Motor, 290 F. Supp. 2d at 1093). Additionally, Samsung contends that S10 Entertainment's reliance upon the yellow-black packaging of the Galaxy S10 is foreclosed because the product was not sold in the United States and there is no proffered evidence that any U.S. consumer viewed the YouTube video from which the image was taken. Id.

Instead, Samsung argues that its usage of "S10" is consistent with its brand architecture that consists of a housebrand ("Samsung"), sub-brand ("Galaxy") and a model designation ("S10"). Defs.' MSJ at 14. Additionally, Samsung contends that no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### REDACTED CIVIL MINUTES – GENERAL                      'O'

| Case No. | 2:21-cv-02443-CAS-JPRx | | Date | February 1, 2023 |
|---|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | | |

reasonable factfinder could find that the parties' marks are encountered and understood by consumers in the marketplace in a materially similar way.  In support of this argument, Samsung compares different examples of its U.S. packaging and marketing with S10 Entertainment's website and social media posts:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |








UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | | Date | February 1, 2023 |
|---|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | | |






The Court concludes that the evidence in the record relating to the similarity of parties' marks raises triable issues. As Samsung has repeatedly noted, only confusion within the United States is relevant, and S10 Entertainment makes no meaningful showing that Samsung's Galaxy S10 yellow–black packaging for units sold abroad is relevant to confusion here in the United States. Nonetheless, there are strong material similarities between the parties' marks, specifically the usage of "S10" and a similar sans-serif font. And while Samsung argues that its use of the S10 forms part of its "brand architecture" of "Samsung" and "Galaxy," plaintiff accurately notes that the examples in the record do not display a consistent labelling of this brand architecture—indeed, in one

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

image of Samsung's own proffered evidence, "S10" is featured on the image by itself. While the jury may make its own determination as to any potential significance of the similarities parties' marks, the Court cannot rule as a matter of law that the marks are not similar.

        4.    <u>Evidence of Confusion</u>

"Actual confusion is not necessary to a finding of likelihood of confusion under the Lanham Act," <u>Network Automation</u>, 638 F.3d at 1151, but sufficient evidence of confusion "constitutes strong support for a 'likelihood of confusion' finding," <u>Rearden</u>, 683 F.3d at 1210. "In the Ninth Circuit, district courts often rely on three types of evidence to demonstrate actual confusion: (1) evidence of actual instances of confusion; (2) survey evidence; and (3) inferences arising from judicial comparison of the conflicting marks and the context of their use in the marketplace." <u>HM Elecs. v. R.F. Techs.</u>, No. 12- CV-2884-MMA (WMC), 2013 WL 120074966, at *5 (S.D. Cal. Oct. 3, 2013).

S10 Entertainment argues that there is "overwhelming evidence of actual confusion." First, S10 Entertainment cites to a survey conducted by its expert Mark Keegan, which plaintiff contends "showed a 26.7% confusion rate" in which the "surveyed population associated the S10 Mark with Samsung." <u>Id.</u>; Defs.' SDF at ¶ 35. Second, plaintiff argues that "witnesses [Tim Blacksmith and Joshua Klein] have testified that they saw Samsung's advertisements and assumed that S10 Entertainment had entered into a partnership with Samsung." Pl.'s MSJ at 18. Third, plaintiff contend that there are examples that show "consumers wrongly associating Samsung products with S10 Entertainment's social media posts, and responding in ways that evidence ongoing confusion in the marketplace." <u>Id.</u>

In opposition, Samsung argues that Keegan's survey "did not actually survey confusion involving the services S10 Entertainment puts out under the S10 Mark," because it instead "simply asked 'what company uses the [S10] name you saw?' " Additionally, Samsung contends that because Blacksmith and Klein are friends of S10 Entertainment's CEO Brandon Silverstein, their testimony cannot help to establish evidence of confusion. Defs.' Opp. to Pl.'s MSJ at 14–15 (citing <u>Walter v. Mattel</u>, 210 F.3d at 1111 ("[T]he district court correctly found plaintiff's evidence of actual confusion from acquaintances, friends, and family insufficient."). Samsung also argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

plaintiff's proffered social media posts are unavailing as evidence of confusion because courts have "repeatedly found unverified, unauthenticated social media posts not materially probative of confusion." See Defs.' MSJ at 18–19 (collecting cases). More crucially, Samsung argues that many of these social media posts state on their face that the users originate or created the posts outside of the United States, and that the relevant standard is "confusion by consumers in the Untied States." See id. at 19 (citing Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd., No. CV2010220CBMJEMX, 2021 WL 2497928, at *4 n.9 (C.D. Cal. May 19, 2021). Finally, Samsung points to undisputed evidence that ████████████████████████████████████████ were not confused by Samsung's Galaxy S10. Defs.' Opp. to Pl.'s MSJ at 16.

The Court concludes that while it is skeptical that plaintiff's survey and testimony are, as plaintiff claims, "overwhelming" evidence of actual confusion, this is ultimately a question for the jury. Samsung raises strong arguments against plaintiff's proffered evidence, but these determinations, *e.g.*, the usefulness of plaintiff's survey in light of its design, are essentially questions of evidentiary weight and credibility.[3] The Court declines to substitute its own opinion at this juncture for that of the factfinder.

5.  Marketing Channels Used

This factor considers "how and to whom the respective parties' goods are sold," including the "locations of potential buyers, the price ranges of the goods and services, and the types of advertising used." Stonefire, 987 F. Supp. 2d at 1054. "Convergent marketing channels increase the likelihood of confusion." Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 606 (9th Cir. 1987).

S10 Entertainment argues that this factor weighs in favor of likelihood of confusion because each company "uses its own website and social media accounts to market its products and services," and that because Samsung "targets all consumers

---

[3] Specifically, in a motion to exclude the expert testimony and evidence of Mark Keegan, Samsung objects to the admission of Keegan's survey in its entirety, see dkt. 111. For the reasons set forth in a separate order, the Court denies Samsung's motion. Additionally, Samsung has filed a motion in limine to exclude the social media posts and Youtube video evidence proffered by plaintiff, see dkt. 160, which the Court addresses in a forthcoming order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

indiscriminately," Samsung's targeted consumers include S10 Entertainments as a
"subset." Pl.'s MSJ at 19. Additionally, S10 Entertainment argues that both companies
market "in the music space." Id. at 15, 19.

In opposition, Samsung argues that these similarities are "superficial," noting that
S10 Entertainment's marketing expert acknowledges that the two companies "use [their
social media pages] differently presumable because . . . one is marketing electronics [and
the] other is marketing services and products they have in the music industry." Defs.'
MSJ at 13 (citing Pl.'s SDF ¶ 70). Samsung also points to the additional "paid media
outlets, events, and sponsorships" which it, and not S10 Entertainment, utilizes. Id.
Additionally, Samsung contends that there are crucial differences between how the
parties respective goods and services are sold: "Samsung sells its Galaxy S10
smartphones through carriers, retailers, and online, whereas S10 Entertainment clients are
obtained through personal relationships and one-on-one interactions." Defs.' MSJ at 13.

The Court finds that that there is a genuine dispute of material fact as to whether
the parties share marketing channels such to support a likelihood of confusion when
evaluated alongside the rest of the Sleekcraft factors. Although Samsung emphasizes the
many different spaces in which the parties do not use overlapping marketing channels,
the parties do both market their products and services within the music industry,
including online and through social media. The question of whether similarities between
Samsung and S10 Entertainment's music industry marketing are material is more
appropriately resolved by a jury.

6.      Type of Goods and Degree of Purchaser Care

As stated above, because this is a reverse confusion case, plaintiff must establish
"whether consumers doing business with [S10 Entertainment] might mistakenly believe
that they are dealing with [Samsung]." Lodestar v. Bacardi, 31 F.4th at 1252. As part of
this determination, the Sleekcraft test examines the parties' types of goods and the
relevant degree of purchaser care. "In analyzing the degree of care that a consumer might
exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent
consumer' would take the time to distinguish between the two product lines." Surfvivor
Media, 406 F.3d at 634 (citing Brookfield Commc'ns, 174 F.3d at 1060). Courts look
both to the "relative sophistication of the relevant consumer," Fortune Dynamic, 618 F.3d
at 1038, and the cost of the item, Brookfield Commc'ns, 174 F.3d at 1060, in determining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | | Date | February 1, 2023 |
|----------|------------------------|---|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | | |

the degree of care likely to be exercised by the purchaser. Generally, a more discerning buyer exercising a higher degree of care is less easily confused, while customers of commonplace and inexpensive services and products exercise a lower degree of care and are more likely to be confused. Id. Additionally, the Ninth Circuit has held that "non-consumer confusion can bear on the 'likelihood of confusion' inquiry insofar as non-consumer confusion can contribute to consumer confusion." Rearden, 683 F.3d at 1216.

Here, the parties dispute both the appropriate characterization of plaintiff's consumer base and the relevance of non-consumers for the purposes of evaluating whether this factor weighs in favor of likelihood of confusion. S10 Entertainment argues expansively that its "consumer base consists of musical artists, potential artists, music writers, and others involved in the music industry who may wish to collaborate *and the consumers of popular music*." Pl's MSJ at 19–20 (emphasis added). Plaintiff contends that a "reasonable customer may assume that Samsung has formed a partnership with S10 Entertainment (given Samsung's use of artists to promote its products) and/or producing music (given Samsung's use of music streaming platforms and music events to promote its products)." Id. at 20. Additionally, S10 Entertainment claims that "non-consumers of popular music are relevant to the evaluation of likelihood of confusion" because "the listening public heavily influences the music industry and fans have a tremendous amount of power over artist' decision-making." Pl.'s Opp. to Defs.' MSJ at 19–20; Petrey Rebuttal Report ¶ 41.

In opposition, Samsung argues that S10 Entertainment's characterization of its consumer base is overly broad and unsubstantiated. Specifically, because S10 Entertainment's ███████████████████████████████████████████████ ███████████████████████████████████████████ Defs.' Opp. to Pl.'s MSJ at 16–17. Rather, Samsung contends that the evidence in the record shows that S10 Entertainment's current and former clients, as well as the third party music publishing and recording business individuals it engages in business with, are highly sophisticated music-industry participants. Id.; Defs.' MSJ at 12–13.

Additionally, Samsung argues that plaintiff's attempt to define S10 Entertainment's consumer base to encompass "consumers of popular music" is inconsistent with plaintiff's own expert witness specifically characterized consumers of popular music as "non-consumers" for the purpose of likelihood of confusion trademark

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|----------|------------------------|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

infringement analysis. Defs.' MSJ Reply at 9–10.[4]  According to Samsung, "as nonconsumers, any confusion on the part of the music listening public is not probative of actual confusion among S10 Entertainment's more sophisticated consumers." Id.

Finally, Samsung argues that plaintiff fails to acknowledge the respective costs of the parties' goods and services as part of the required inquiry.  Defs.' Opp. to Pl.'s MSJ at 16–17.  Here, Samsung points out that it sells its smartphones directly to consumers and to retailers at fixed prices, while S10 Entertainment is compensated for its services ██████████████████████████████

The Court finds that this factor contains several disputed questions of fact as to who may properly be characterized as S10 Entertainment's consumer base and as to the degree of care exercised by those consumers.  "Whoever's right, the difficulty of trying to determine with any degree of confidence the level of [consumer sophistication] only confirms the need for this case to be heard by a jury."  Fortune Dynamic, 618 F.3d at 1038.  Moreover, even assuming that general public is appropriately characterized as a non-consumer of S10 Entertainment's services, counsel for plaintiff emphasized at oral argument the principle that "non-consumer confusion can bear on the 'likelihood of confusion' inquiry insofar as non-consumer confusion can contribute to consumer confusion."  Rearden, 683 F.3d at 1216.  While the Court recognizes that "confusion on

---

[4] Specifically, plaintiff's expert states:

> In the music industry, and within the services offered by S10 Entertainment, there are multiple forms of non-consumers, including: (1) potential consumers in the form of current artists, who are not currently represented by S10 Entertainment, and future artists, who are unrepresented and may not have even entered the music industry yet; (2) non-consumers who may or may not ever purchase the services of S10 Entertainment, but show the confusion taking place on social media; and (3) non-consumers, who purchase or consume either the music made by S10 Entertainment's represented artists or writers or music made by potential clients of S10 Entertainment, that influence purchasing consumers' decision to purchase S10 Entertainment's services.

Petrey Rebuttal Report ¶ 41.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|---|---|---|---|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

the part of a non-sophisticated non-consumer may shed little or no light on whether a
sophisticated consumer [of S10 Entertainment's services] would likewise be confused,"
id. at 1214–16, the Court concludes that it is for the jury to determine what weight to
attribute the importance of any non-consumer confusion in this case.

       7.   Samsung's Intent in Selecting the Mark

For a reverse confusion case, the junior user's relevant intent in selecting the senior
user's mark "may be shown 'by evidence that, for example, the defendant knew of the
mark, should have known of the mark, intended to copy the plaintiff, failed to conduct a
reasonably adequate trademark search, or otherwise culpably disregarded the risk of
reverse confusion.' " Lodestar v. Bacardi, 31 F.4th at 1260 (citing Marketquest Grp., Inc.
v. BIC Corp., 862 F.3d 927, 934-5 (9th Cir. 2017)).

S10 Entertainment argues that this factor weighs in favor of likelihood of
confusion. Because "Samsung admits that it first became aware of S10 Entertainment on
or around November 2018, three months prior to the launch of the S10 phone, Samsung
knew about or had reason to know about the S10 Mark prior to its launch of the phone."
Pl.'s MSJ at 21. Additionally, to the extent Samsung maintains it conducted trademark
searches that did not turn up plaintiff's mark, S10 Entertainment argues that these
searches must have "failed to adequately clear its use in complete disregard of the risk of
reverse confusion in this case." Pl.'s MSJ Reply at 15.

In opposition, Samsung argues that it began contemplating the name "Galaxy S10"
for its tenth generation of Galaxy S smartphone in 2016, and that its Galaxy S10
smartphone followed the same sequential naming convention and branding used by
Samsung beginning with the original Galaxy S in 2010 and continuing through the
Galaxy S9 in 2018. Def.'s MSJ at 15. Crucially, Samsung contends, the company made
the official recommendation to use the Galaxy S10 name ███████████████████
█████████████████████████████████ Id. at 15-16. As to the
adequacy of its trademark searches, Samsung points out that S10 Entertainment has not
registered its mark for Class 9, consumer electronics products. Defs.' MSJ Reply at 20.
Instead, as described above, S10 Entertainment instead registered it for music
entertainment services, management of performing artists, and clothing merchandising.

Again, the Court finds that this factor encompasses disputed factual questions.
While it appears likely that Samsung decided to transition from the Galaxy S9 to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**                      **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|----------|------------------------|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

Galaxy S10 on a simple sequential basis, the Ninth Circuit has explained that the "tenor of the intent inquiry shifts when considering reverse confusion due to the shift in the theory of confusion, . . . and the importance of intent and evidence presented will vary by case." Marketquest Grp., Inc. v. BIC Corp., 862 F.3d 927, 935 (9th Cir. 2017). A rational jury could find that Samsung's knowledge of S10 Entertainment before it publicly released its Galaxy S10 could help support, even slightly, a likelihood of reverse confusion when evaluating all of the Sleekcraft factors.

8.     Likelihood of Expansion of the Product Lines

The parties agree that this factor is irrelevant because "at present [S10 Entertainment] does not intend to enter the consumer device space." Pl.'s MSJ at 21; see also Defs.' MSJ at 20. Therefore, this factor does not affect the Court's Sleekcraft analysis in this case.

9.     Conclusion

As described above, there are triable issues of fact as to plaintiff's trademark infringement claims. Therefore, the Court **DENIES** both parties' motions for summary judgment as to these claims.

**C.     State Law Claims**

As stated above, Samsung seeks summary judgment in its favor as to S10 Entertainment's claims brought under S10 under California state law, one for unfair competition under California state common law and the other for unfair competition in violation of Cal. Bus. & Prof. Code, § 17200 et seq. ("UCL"). "The test for false designation under the Lanham Act, as well as the common-law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.' " Walter v. Mattel, 210 F.3d at 1111. Therefore, because the Court has already concluded that there are triable issues of facts as to plaintiff's Lanham Act claims, the Court similarly **DENIES** Samsung's motion for summary judgment as to plaintiff's state law claims.

**D.     Defendants' Affirmative Defenses**

Plaintiff seeks summary judgment in its favor as to defendants' affirmative defenses of laches and equitable estoppel. The affirmative defense of laches requires proof that "(1) [plaintiff's] delay in filing suit was unreasonable, and (2) [defendants]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|----------|------------------------|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

would suffer prejudice caused by the delay if the suit were to continue." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 838 (9th Cir. 2002). "Because the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000).

Additionally, affirmative defense of equitable estoppel requires that "(1) the party to be estopped must know of the facts; (2) it must intend that its conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the facts; and (4) it must rely on the former's conduct to his injury." Avery Dennison Corp. v. Acco Brands, Inc., No. CV99-1877DT(MCX), 1999 WL 33117262, at *8 (C.D. Cal. Oct. 12, 1999) (citation omitted). Similar to laches, "[e]quitable estoppel ordinarily presents a question of fact unless only one reasonable conclusion can be drawn from undisputed facts." Shamrock Dev. Co. v. City of Concord, 656 F.2d 1380, 1386 (9th Cir. 1981).

Here, defendants' affirmative defenses of laches and equitable estoppel share the same underlying factual allegations. As set forth above, plaintiff began using "S10" in 2017, the parties ███████████████████████████████████████████ ██████████████████████████████████ promotion of the Galaxy S10—according to Samsung, it would therefore be inequitable for S10 Entertainment to now be able to bring suit for infringement. See Defs.' Opp. to Pl.'s MSJ at 20 ("But here, S10 Entertainment did not just sit back, it actively took steps ████████████████████ the accused products that it now alleges so damaged its brand and business opportunities that Samsung's profits should be disgorged and given to it. This is not reasonable and suggests bad faith."); id. at 24–25 ("[B]ecause parties have a duty to police use of their marks, Samsung could reasonably expect that given the parties' extensive, direct discussions, including involving use of Galaxy S10 branding, if S10 Entertainment took any issue with Samsung's Galaxy S10 branding, it would have said so."). Samsung raises strong arguments based on the record from which a factfinder could reasonably find in favor of Samsung. Accordingly, these are triable issues to be presented to the jury, and plaintiff is not entitled to summary judgment as to Samsung's affirmative defenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**REDACTED CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-02443-CAS-JPRx | Date | February 1, 2023 |
|----------|------------------------|------|------------------|
| Title | S10 ENTERTAINMENT & MEDIA LLC v. SAMSUNG ELECTRONICS CO., LTD., ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion for summary judgment, dkt. 115, and **DENIES** plaintiff's motion for summary judgment, dkt. 91.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |